**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GIFFORDS<br>P.O. Box 51196<br>Washington, DC 20091,<br><div align="right">Plaintiff,</div><br><div align="center">v.</div><br>FEDERAL ELECTION COMMISSION<br>1050 First St. NE<br>Washington, DC 20463,<br><div align="right">Defendant.</div> | Civil Action No. _____ |

Over the past nine months, Plaintiff Giffords filed four separate administrative complaints with the Federal Election Commission. Plaintiff's complaints demonstrate that the National Rifle Association ("NRA") violated the Federal Election Campaign Act by using a complex network of shell corporations to unlawfully coordinate expenditures with the campaigns of at least seven candidates for federal office, thereby making millions of dollars of illegal, unreported, and excessive in-kind contributions, including up to $25 million in illegal contributions to now President Donald J. Trump. The Supreme Court has long recognized that large campaign contributions create the risk of actual or apparent corruption, and so has repeatedly upheld limits on direct contributions to political candidates. For the 2019-20 cycle, the limit is $2,800. The Supreme Court has nonetheless permitted unlimited *independent* political spending by groups like the NRA, on the theory that independent spending does not pose the same risk of corruption as direct contributions. But expenditures coordinated with a candidate are not considered independent because they are "as useful to the candidate as cash." Thus, coordinated expenditures are treated as contributions under federal law, subject to contribution limits, prohibitions, and reporting requirements. Here, while the NRA has held itself out as independent of the campaigns and

candidates it supports, in fact it has been anything but. The organization has engaged in a complicated scheme to coordinate its spending with those same candidates, while taking steps to conceal its coordination.

Plaintiff Giffords provided evidence that the NRA has committed campaign finance violations of dramatic scale. The illegal contributions to the Trump campaign alone are up to 9,259 times the limit set by Congress. Yet the Commission has taken no action on Plaintiff's complaints. In light of this unlawful and unreasonable delay, Plaintiff files this action to compel the FEC to comply with its statutory duty to act.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(1)     This is an action under the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30109(a)(8)(A). Plaintiff seeks injunctive and declaratory relief to compel Defendant Federal Election Commission ("FEC") to act on Plaintiff's administrative complaints regarding millions of dollars of illegal, unreported, and excessive political contributions.

(2)     On July 16, 2018, Campaign Legal Center ("CLC") filed with the FEC an administrative complaint showing that two NRA entities, the National Rifle Association of America Political Victory Fund ("NRA-PVF") and the National Rifle Institute for Legislative Action ("NRA-ILA"), made illegal, unreported, and excessive in-kind contributions to the Thom Tillis Committee, Cotton for Senate, Cory Gardner for Senate, and Ron Johnson for Senate in the form of coordinated communications, 11 C.F.R. § 109.21, in violation of FECA's source prohibitions, reporting requirements, and contribution limits. *See* FEC Matter Under Review

("MUR") No. 7427 ("Tillis, et al. Complaint").[1] On August 16, 2018, an Amended Complaint was filed adding Plaintiff Giffords as a complainant. *Id.*

(3)     On September 17, 2018, CLC and Plaintiff Giffords jointly filed with the FEC an administrative complaint showing that the NRA-PVF and the NRA-ILA made illegal, unreported, and excessive in-kind contributions to Matt Rosendale for Montana in the form of coordinated communications, 11 C.F.R. § 109.21, in violation of FECA's source prohibitions, reporting requirements, and contribution limits. *See* MUR No. 7497 ("Rosendale Complaint").[2] On February 8, 2019, Plaintiff filed a supplement to the Rosendale Complaint, alleging additional facts relevant to MUR No. 7497. *See Rosendale Suppl.*, MUR No. 7497 (Feb. 7, 2019) ("Rosendale Suppl.").[3]

(4)     On October 22, 2018, CLC and Plaintiff Giffords jointly filed with the FEC an administrative complaint showing that the NRA-PVF and the NRA-ILA made illegal, unreported, and excessive in-kind contributions to Josh Hawley for Senate in the form of coordinated communications, 11 C.F.R. § 109.21, in violation of FECA's source prohibitions, reporting requirements, and contribution limits. *See* MUR No. 7524 ("Hawley Complaint").[4]

(5)     On December 7, 2018, CLC and Plaintiff Giffords jointly filed with the FEC an administrative complaint showing that the NRA-PVF and the NRA-ILA made illegal, unreported, and excessive in-kind contributions to Donald J. Trump for President, Inc. in the form of coordinated communications, 11 C.F.R. § 109.21, in violation of FECA's source prohibitions,

---

[1]     *See* Complaint (July 16, 2018), https://campaignlegal.org/sites/default/files/2018-07/CLC%20Complaint%20Against%20the%20NRA.pdf.

[2]     *See* Complaint (Sept. 17, 2018), https://campaignlegal.org/sites/default/files/2018-09/CLC%20Complaint%20to%20FEC%20Against%20Rosendale%20%2B%20NRA.pdf.

[3]     *See* Supplemental Letter (Feb. 8, 2019), https://campaignlegal.org/sites/default/files/2019-02/Additional%20Facts%20NRA%20and%20Rosendale.pdf.

[4]     *See* Complaint (Oct. 22, 2018), https://campaignlegal.org/sites/default/files/2018-10/10-22-18%20NRA%20Hawley%20Complaint%20%28final%29.pdf.

reporting requirements, and contribution limits. *See* MUR No. 7553 ("Trump Complaint").[5] (Collectively, the Tillis, Rosendale, Hawley, and Trump Complaints are referred to herein as the "Administrative Complaints," or the "Complaints.")

(6)     FECA provides administrative complainants with a right of action against the FEC if the FEC fails to act on a complaint within 120 days. More than 250 days have passed since Plaintiff joined the amended Tillis, et al. Complaint; 220 days have passed since Plaintiff filed the Rosendale Complaint; more than 180 days have passed since Plaintiff filed the Hawley Complaint; and more than 130 days have passed since Plaintiff filed the Trump Complaint. There is no indication that the FEC has acted on any of these matters.

## JURISDICTION AND VENUE

(7)     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

## PARTIES

(8)     Plaintiff Giffords is a nonpartisan, nonprofit 501(c)(4) organization headquartered in Washington, D.C.[6] Founded and led by former Congresswoman Gabrielle Giffords, the organization researches, writes, and proposes policies designed to reduce gun violence and mobilizes voters and lawmakers in support of safer gun laws. Giffords educates political candidates about issues and policies related to gun violence, and endorses candidate for local, state,

---

[5]     *See* Complaint (Dec. 7, 2018), https://campaignlegal.org/sites/default/files/2018-12/12-07-18%20Trump%20NRA%20complaint%20%28final%29.pdf.

[6] Giffords was founded in 2013 under the name Americans for Responsible Solutions, and was renamed Giffords in October 2017.

and federal office who support strong gun-violence-prevention laws.[7] Many candidates supported by Giffords are opposed by the NRA-PVF and the NRA-ILA. Giffords opposed candidate Trump in his 2016 campaign, and supported the opponents of Tillis, Gardner, and Johnson. Congresswoman Giffords endorsed candidate Trump's general election opponent in 2016.

(9)    Defendant Federal Election Commission is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106.

## BACKGROUND

### *Introduction*

(10)    Since 2014, the NRA-PVF and the NRA-ILA have made millions of dollars in excessive, corporate, and unreported contributions to candidates for federal office, including Thom Tillis, Tom Cotton, and Cory Gardner in 2014, Ron Johnson and Donald Trump in 2016, and Matt Rosendale and Josh Hawley in 2018. In what appears to be a deliberate effort to circumvent the Commission's common vendor coordination rules, the NRA coordinated political ad spending and placement with these candidates' campaigns using a network of shell corporations, effectively evading federal contribution limits and shielding millions of dollars of political spending from public and government scrutiny in violation of FECA. In so doing, the NRA engaged in two complex schemes. The graphic below illustrates how these schemes worked for the 2016 and 2018 cycles:

---

[7] Giffords has a sister organization, Giffords Law Center to Prevent Gun Violence, a nonprofit, nonpartisan 501(c)(3) based in San Francisco that works to research, write, enact, and defend laws, policies, and programs proven to reduce gun violence and save lives. Giffords' political action committee, Giffords PAC, works to support candidates and elected officials who promote policies to reduce gun violence and oppose the influence of the gun industry and the NRA, including by making political contributions and independent expenditures.



(11)    At the center of the first scheme is political consulting firm OnMessage. OnMessage has performed contracting work for dozens of campaigns and political committees.

(12)    A second corporate entity, Starboard Strategic, Inc. ("Starboard"), is linked to OnMessage through shared addresses, shared board members and staff, and public statements and reporting.[8]

---

[8] Another group associated with OnMessage, First Tuesday: The Ballot Initiative Group, was incorporated in Virginia in August 2016. Since its inception, First Tuesday has shared four of its five board members with Starboard and OnMessage. First Tuesday also shares a registered agent with Starboard and OnMessage. At least one campaign reported making payments to First Tuesday at the 705 Melvin Ave. #105 address in Annapolis used by both Starboard and OnMessage. Though Maryland corporate records do not show any results for registered corporations under the name "First Tuesday," Virginia State Corporation Commission records show that First Tuesday is located at 817 Slaters Lane in Alexandria, the Virginia office address used by both OnMessage and Starboard.

(13)    At the center of the second scheme is National Media Research, Planning & Placement, LLC ("National Media"), a media and political strategy firm. Two additional corporate entities are linked to National Media: Red Eagle Media ("Red Eagle") and American Media & Advocacy Group ("AMAG").

(14)    The Virginia State Corporation Commission lists the principle office for OnMessage as 815 Slaters Lane in Alexandria, Virginia. The OnMessage website lists its Virginia address as 817 Slaters Lane in Alexandria. 815 and 817 Slaters Lane consist of a pair of adjacent brick buildings that share a parking lot. OnMessage has an additional office in Annapolis, Maryland, located at 705 Melvin Avenue #105.

(15)    According to FEC records, the NRA-PVF and the NRA-ILA paid Starboard at OnMessage's Alexandria and Annapolis addresses.

(16)    Meanwhile, according to the Virginia State Corporation Commission, National Media has a principal office at 815 Slaters Lane. A business entity search on the Virginia State Corporation Commission website for either Red Eagle or AMAG redirects to the National Media Page listing the 815 Slaters Lane address. The National Media website lists an office address of 817 Slaters Lane.

(17)    Within these entities, the same individuals develop advertising content and place ads for both the NRA and the candidates. For example, OnMessage Founding Partner and Starboard Director Bradley Todd has been described in news reports as a media strategist for Thom Tillis, and as an ad or media consultant for Cory Gardner, Tom Cotton, Ron Johnson, and Josh Hawley. NRA employees reported seeing Todd around their office and described him as a consultant whom Cox relied on for issues deemed "controversial."

(18)    Similarly, at least four National Media employees who placed ads for the NRA-ILA and the NRA-PVF as Red Eagle also placed ads as AMAG for the candidates supported by the NRA-ILA and the NRA-PVF.

(19)    OnMessage, together with Starboard, acts as a single common vendor for advertising content development and media strategy. Similarly, National Media, together with Red Eagle and AMAG, acts as a single common vendor for advertising placement and strategy. Using the OnMessage/Starboard common vendor scheme and the National Media/Red Eagle/AMAG common vendor scheme, the NRA has attempted to hide up to $35 million in advertising expenditures that were coordinated with at least seven candidates for federal office.

*A.   The Starboard Scheme*

(20)    Under the first scheme, the NRA-PVF and the NRA-ILA pay Starboard for independent advertising expenditures in support of a candidate for federal office, while the candidate pays OnMessage for its own advertising expenditures.

(21)    OnMessage and Starboard are functionally indistinguishable — they are led by the same people and located at the same address, and no internal separation or firewall exists between the staff who work for each entity. The websites for OnMessage and Starboard use the same or highly similar language to describe their services. OnMessage has been nominated for, and won, industry awards for NRA-PVF and NRA-ILA ads contracted through Starboard.

(22)    Prior to Starboard's incorporation, the NRA-PVF paid OnMessage millions of dollars for federal independent expenditures related to television and radio advertising during the 2010 and 2012 election cycles. The NRA-ILA paid OnMessage over $3.5 million for independent expenditures described as advertising expenses during the 2012 election cycle.

(23)    Once Starboard was incorporated, the NRA-PVF and the NRA-ILA stopped making payments to OnMessage, and began making payments to Starboard. In the 2014 cycle, the NRA-PVF and the NRA-ILA reported payments to Starboard of approximately $20.5 million combined for independent expenditures and other disbursement related to television, radio, and digital advertising. In the 2016 cycle, the NRA-PVF and the NRA-ILA together reported payments to Starboard of approximately $40.7 million in independent expenditures and other disbursements related to television, radio, and digital advertising. In the 2018 cycle, the NRA-PVF and the NRA-ILA reported payments to Starboard of approximately $10.6 million for expenditures and disbursements related to advertising.[9] During these election cycles, the candidates in support of whom the NRA-PVF and the NRA-ILA paid Starboard millions of dollars all made significant payments to OnMessage for their own advertising.

(24)    Aside from less than $20,000 in business with the National Republican Congressional Committee, the NRA is Starboard's only federal election client, according to FEC records.

B.    *The National Media Scheme*

(25)    Under the second scheme, the NRA-PVF and the NRA-ILA use National Media, doing business as Red Eagle, to place their advertisements in support of a candidate. At the same time, the candidate uses National Media affiliate AMAG to place its own advertisements.

(26)    National Media describes itself as "a nationally recognized leader in media research, planning, and placement for issue advocacy, corporate, and political campaigns."

---

[9] National Rifle Association of America Political Victory Fund & National Rifle Association Institute of Legislative Action, Independent Expenditures to Starboard Strategic, Inc. (regularly scheduled reports), 2017-18, FEC.gov, https://bit.ly/2V2ysyL (last visited Mar. 18, 2019); National Rifle Association of America Political Victory Fund, Disbursements to Starboard Strategic, Inc., 2017-18, FEC.gov, https://bit.ly/2GwKp7B (last visited Mar. 18, 2019).

National Media does business under the name Red Eagle. AMAG is an affiliate of National Media, and the two entities share a registered agent. According to Virginia state records, all three entities share an address at 815 Slaters Lane in Alexandria. National Media also lists 817 Slaters Lane as its office address — the same Virginia address as OnMessage/Starboard. National Media employees have signed FCC filings on behalf of both Red Eagle and American Media.

### Summary of the Law

(27)    Federal law limits the amount of a contribution a candidate may receive from a political committee or individual donor, and prohibits a candidate from accepting a contribution from a corporation. 52 U.S.C §§ 30116(a)(1), 30118(a). In the 2014 cycle, the individual contribution limit was $2,600; in the 2016 and 2018 cycles, $2,700. The limit on contributions from political committees in each cycle was $5,000 per calendar year. 52 U.S.C. § 30116(a)(1)(C).

(28)    In contrast with contributions, expenditures are generally not subject to limits. A corporation like the NRA-ILA, or political committee like the NRA-PVF, may make unlimited expenditures on advertising communications that expressly advocate for the election of a candidate, or the defeat of his opponent, provided that those expenditures are made independently of that candidate. However, any expenditure made in coordination with a candidate, including for a "coordinated communication," is an in-kind contribution to the candidate, subject to contribution limits and the corporate contribution ban, 52 U.S.C. § 30116(a)(7)(B)(i); 11 C.F.R. § 109.20, and must be reported as a contribution to that candidate by the person that made the payment, 11 C.F.R. § 109.21(b).[10]

---

[10]    Contributions in the form of "coordinated communications" resulting from conduct described in 11 C.F.R. § 109.21(d)(4) ("common vendor") need not be reported as received by the campaign committee with which the communication is "coordinated," absent other conduct. *Id*. § 109.21(b)(2).

(29)     FEC regulations provide that a person makes a "coordinated communication" when the communication (1) is paid for, in whole or in part, by a person other than the candidate or committee; (2) "expressly advocates . . . the election or defeat of a clearly identified candidate for Federal office;" and (3) satisfies at least one of the "conduct standards" in the regulation, such as the use of a "common vendor." 11 C.F.R. § 109.21(a). In turn, the common vendor "conduct" prong is satisfied when (a) the person paying for the communication contracts with a commercial vendor that (b) during the previous 120 days also provided services to the candidate, such as media strategy, advertising content and placement, or other political or media related advice; and (c) the vendor uses or conveys information about the candidates' strategies, plans, activities and needs, and that information is material to the "creation, production, or distribution" of the communications in support of that candidate. 11 C.F.R. § 109.21.

(30)     The FEC has found reason to believe that a person made unreported coordinated communications, and opened an investigation, when the first two parts of the common vendor test have been satisfied, *i.e.* where a vendor provides services to both the campaign and political committee. MUR 5546 (Progress for America Voter Fund), Notification with Factual and Legal Analysis at 9 (Jul. 5, 2005); *see also* MUR 5502 (Martinez for Senate), Notification with Factual and Legal Analysis at 8 (May 18, 2005). The FEC has stressed that "a commercial vendor may qualify as a common vendor under 11 C.F.R. § 109.21(d)(4) even after reorganizing or shifting personnel . . . [the rules] focus on the use or conveyance of information used by a vendor, including its owners, officers, and employees, in providing services to a candidate [or committee], rather than the particular structure of the vendor." Explanation & Justification, 68 Fed. Reg. 421, 435 (Jan. 3, 2003).

(31)    An outside group that makes coordinated expenditures must report them as a contribution to the candidate, subject to the contribution limits and source restrictions discussed above. Corporations are prohibited from making such in-kind contributions, while in-kind contributions from political committees are subject to the $2,700 contribution limit. 52 U.S.C §§ 30116(a)(1), 30118(a).

### Facts

(32)    Since at least the 2014 election cycle, the NRA-PFV and the NRA-ILA have coordinated with candidate campaigns to develop advertisements through a common vendor, using a shell company associated with political consulting firm OnMessage. Since at least the 2016 election cycle, the NRA-PVF and the NRA-ILA have coordinated with candidate campaigns to place advertisements in complementary fashion, including on the same stations and programs, using shell companies associated with media strategy firm National Media.

(33)    By coordinating their advertising strategy in this manner, the NRA-PVF and the NRA-ILA have made up to $35 million in contributions to candidate campaigns since the 2014 election, in excess of the contribution limits, in violation of the source restrictions, and without the disclosure required under federal law. This includes up to $25 million in coordinated, illegal contributions to the Trump campaign in 2016.

### A.    2014 Election Cycle

(34)    The NRA-PVF and the NRA-ILA reported paying approximately $20.5 million to Starboard for "independent" expenditures and other disbursements related to advertising for the 2014 cycle. Among its other expenditures for the cycle, the NRA-PVF reported independent expenditures on behalf of 2014 Republican Senate challengers Tom Cotton in Arkansas, Cory Gardner in North Carolina, and Thom Tillis in North Carolina. The NRA-ILA also reported independent expenditures on behalf of Gardner and Tillis. The NRA-PVF and the NRA-ILA

contracted with Starboard for these expenditures, while at the same time Cotton, Gardner, and Tillis contracted with OnMessage for advertising and media consulting. During this time, OnMessage founder and Starboard Director Brad Todd served as a "media strategist" or "consultant" for Tillis, Cotton, and Gardner.

(35)    The NRA-PVF paid $2.3 million and the NRA-ILA paid $812,658 to Starboard for "independent" expenditures supporting Tillis or opposing his opponent during the 2014 cycle. Tillis's authorized campaign committee, the Thom Tillis Committee, reported paying OnMessage $6.6 million during the same cycle for advertising and media consulting. The Thom Tillis Committee reported disbursements to OnMessage at the 705 Melvin Ave. #105 address in Annapolis, Maryland. The NRA-PVF reported disbursements to Starboard at this same address.

(36)    The NRA-PVF paid $1.6 million to Starboard for "independent" expenditures supporting Cotton or opposing his opponent during the 2014 cycle. Cotton's authorized campaign committee, Cotton for Senate, reported paying OnMessage $5.3 million during the same cycle for media and polling services. Cotton for Senate reported disbursements to OnMessage at its Annapolis, Maryland address. The NRA-PVF reported its disbursements to Starboard at that same address.

(37)    The NRA-PVF paid $2.6 million and the NRA-ILA paid $529,186 to Starboard for "independent" expenditures supporting Gardner or opposing his opponent during the 2014 cycle. Gardner's authorized campaign committee, Cory Gardner for Senate, reported paying OnMessage $8 million during the same cycle for media and web related services. Cory Gardner for Senate reported disbursements to OnMessage at its Alexandria, Virginia offices. The NRA-ILA reported its disbursements to Starboard at that same address.

B.      *2016 Election Cycle*

(38)     The NRA-PVF and the NRA-ILA reported paying approximately $40.7 million to Starboard for "independent" expenditures and other disbursements related to advertising for the 2016 cycle.

(39)     The NRA-PVF paid $315,066 and the NRA-ILA paid $48,537 to Starboard for "independent" expenditures supporting Republican Senate Candidate Ron Johnson or opposing his opponent during the 2016 cycle. Johnson's authorized campaign committee, Ron Johnson for Senate, Inc., reported paying OnMessage $3.8 million during the same cycle for media, strategy, and advertising expenses. Ron Johnson for Senate reported disbursements to OnMessage at its Annapolis, Maryland address. The NRA-PVF reported its disbursements to Starboard at that same address.

(40)     During the 2016 cycle, the NRA-PVF and the NRA-ILA reported paying over $25 million to Starboard on "independent" expenditures supporting Donald J. Trump, or opposing his opponent. The NRA-PVF paid Starboard at OnMessage's Alexandria address, 817 Slaters Lane, while the NRA-ILA paid Starboard at OnMessages's Annapolis address. Records on file with the Federal Communications Commission ("FCC") indicate that National Media, doing business as Red Eagle, placed the NRA-PVF and NRA-ILA ads supporting Trump or attacking his opponent, Hillary Clinton, using the 815 Slaters Lane address in Alexandria.

(41)     President Trump's authorized campaign committee, Donald J. Trump for President, Inc., paid $74.2 million to National Media affiliate AMAG for ad placement during the 2016 cycle, and records filed with the FCC show that AMAG placed the Trump campaign's 2016 ads.

(42)     The pattern of ad placement by National Media for both the NRA entities and the Trump campaign indicates a high level of coordination. Red Eagle placed the NRA-PVF's first 2016 presidential ad campaign at the end of June, which newspaper reports described as "coming

14

to the rescue" and "provid[ing] air cover" for the Trump campaign. Red Eagle employees continued to place pro-Trump and anti-Clinton ads for the NRA-PVF throughout July and August. These ads were described as "buoy[ing]" the Trump Campaign, which did not make its first ad placement until late August.

(43)     According to reports filed with the FCC, at least four National Media employees placed pro-Trump ads for the NRA-PVF and the NRA-ILA as Red Eagle, and also placed Donald J. Trump for President Inc.'s ads as AMAG. Between mid-September and Election Day, the same four National Media employees regularly alternated between placing pro-Trump/anti-Clinton ads for the NRA-PVF and the NRA-ILA as Red Eagle, and placing ads for Donald J. Trump for President, Inc. as AMAG.

(44)     For example, five AMAG-placed Trump campaign ads and five Red Eagle-placed NRA-ILA ads were scheduled for same afternoons, on the same stations, during the same five college football games. As *Mother Jones/The Trace* reported:

> The purchases were mirror images of each other. In five of the games, both the NRA and Trump bought ads. When the NRA ran two spots either attacking Clinton or promoting Trump, the Trump campaign ran just one. And when the Trump campaign ran two spots, the NRA ran one. The pattern even persisted when there was no direct overlap: In the two games the Trump campaign sat out, the NRA ran two ads. And in the one game where the NRA didn't buy time, Trump bought two slots.[11]

(45)     In the wake of the 2016 Election, OnMessage was nominated for and won several industry awards for NRA-PVF and NRA-ILA advertisements supporting Trump or opposing Clinton that were contracted through Starboard and placed using Red Eagle.

---

[11] Mike Spies, *Documents Point to Illegal Campaign Coordination Between Trump and the NRA*, MOTHER JONES (Dec. 6, 2018), https://www.motherjones.com/politics/2018/12/nra-trump-2016-campaign-coordination-political-advertising/.

C.      *2018 Election Cycle*

(46)    At a July 18, 2018 fundraiser in Washington DC, Montana Senate candidate Matt Rosendale stated that the NRA-ILA's political director, Chris Cox, had told him that the group would be making expenditures supporting Rosendale, and Rosendale accurately described both the content and timing of the NRA-ILA's pro-Rosendale advertisements, despite the fact that the ads were not disseminated until weeks later. Rosendale's favorable reference to the planned spending on his behalf provides reason to believe that he knew of and agreed to Cox's plan.

(47)    The NRA-ILA then paid Starboard $383,196 for "independent" expenditures related to advertising attacking Rosendale's opponent. At the same time, Rosendale's authorized campaign committee, Matt Rosendale for Montana, contracted with OnMessage and reported $445,367 in disbursements for media and strategy consulting.

(48)    The NRA-ILA advertisements opposing Rosendale's opponent were placed by Red Eagle. At the same time, Matt Rosendale for Montana placed its own communications using National Media and National Media affiliate AMAG.  In at least one instance, the same National Media employee placed advertisements for both the NRA-ILA and Matt Rosendale for Montana with the same Montana TV station. The NRA-PVF also contracted with Starboard for independent expenditures in the Montana Senate race, which were placed by National Media doing business as Red Eagle, at the same time that Matt Rosendale for Senate continued to pay OnMessage and place advertisements using National Media and AMAG.

(49)    During the 2018 cycle, founding member of OnMessage and Starboard Director Brad Todd served as a consultant for Josh Hawley's run for Senate. Todd previously served as a consultant for Hawley's attorney general campaign in 2016. Todd's role included speaking on behalf of the Hawley campaign throughout the 2018 general election.

16

(50)     The NRA-PVF endorsed Hawley's Senate campaign in September of 2018.  During October 2018, the NRA-PVF reported almost $1 million in payments to Starboard for "independent" expenditures either supporting Hawley or opposing his opponent. Also in October, the NRA-ILA issued a press release about the NRA-PVF's "seven-figure ad campaign." At the same time, Josh Hawley's authorized campaign committee, Josh Hawley for Senate, reported paying $2.2 million to OnMessage for media, advertising, and strategy consulting. Josh Hawley for Senate also reported an additional $98,967 in payments to First Tuesday[12] for communications consulting and travel. The payments by NRA-PVF to Starboard, and by Josh Hawley for Senate to OnMessage and First Tuesday were all reported at the 705 Melvin Ave. #105 address in Annapolis, Maryland.

(51)     The NRA-PVF placed its Hawley ads on Missouri broadcast stations using Red Eagle. At the same time, Josh Hawley for Senate paid National Media $45,000 for digital consulting and placed ads on Missouri broadcast stations with AMAG. On at least one occasion, the same National Media employee placed advertisements on behalf of NRA-PVF as Red Eagle and on behalf of Josh Hawley for Senate as AMAG on the same Missouri TV station on the same day.

### Summary of the Scheme

(52)     Taken together, these facts demonstrate an elaborate scheme for the NRA to unlawfully coordinate with the candidates it supports for federal office, including Donald J. Trump, Thom Tillis, Cory Gardner, Tom Cotton, Ron Johnson, Matt Rosendale, and Josh Hawley, while evading detection of its violations of federal law concerning the coordination of advertising communications through common vendors.

---

[12] *See supra* n. 3.

(53)    These facts, and this pattern of activity, provide reason to believe that Starboard/OnMessage and National Media used or conveyed to the NRA-PVF and the NRA-ILA information about these candidates' advertising plans and needs, which informed the creation and placement of communications made by the NRA-affiliated entities in support of the candidates.

(54)    Accordingly, there is reason to believe that the NRA-PVF and the NRA-ILA coordinated their communications in support of Donald J. Trump, Thom Tillis, Tom Cotton, Cory Gardner, Ron Johnson, Matt Rosendale, and Josh Hawley through a common vendor with those candidates, and that therefore the NRA-PVF and the NRA-ILA made millions of dollars of in-kind contributions to these candidates in excess of FECA's contribution limits, and in violation of FECA's source prohibitions and reporting requirements.

### ADMINISTRATIVE PROCEEDINGS

(55)    On July 16, 2018, CLC and an individual, Sandhya Bathija, filed a complaint with the FEC against the NRA-PVF and the NRA-ILA seeking enforcement against illegal, unreported, and excessive in-kind contributions to the Thom Tillis Committee, Cotton for Senate, Cory Gardner for Senate, and Ron Johnson for Senate in the form of coordinated communications, 11 C.F.R. § 109.21. On August 16, 2018, an Amended Complaint was filed adding Plaintiff Giffords as a complainant.

(56)    On July 20, 2018, the FEC sent CLC and Bathija a letter acknowledging receipt of the Tillis Complaint, and designating it Matter Under Review ("MUR") 7427.

(57)    On September 14, 2018, CLC and Giffords jointly filed with the FEC an administrative complaint showing reason to believe that the NRA-PVF made illegal, unreported, and excessive in-kind contributions to Matt Rosendale for Montana in the form of coordinated communications, 11 C.F.R. § 109.21.

(58)    On September 21, 2018, the FEC sent CLC and Giffords a letter acknowledging receipt of the Rosendale Complaint, and designating it MUR 7497.

(59)    On February 8, 2019, CLC and Giffords supplemented the Rosendale Complaint by providing additional evidence of illegal contributions and further information as to the nature of the second layer of the coordination scheme, namely that the NRA-ILA's pro-Rosendale communications were distributed and placed by National Media employees under the trade name Red Eagle, while Matt Rosendale for Montana placed its own communications using National Media or its affiliate AMAG.

(60)    On October 22, 2018, CLC and Giffords jointly filed with the FEC an administrative complaint showing that the NRA-PVF made illegal, unreported, and excessive in-kind contributions to Josh Hawley for Senate in the form of coordinated communications, 11 C.F.R. § 109.21.

(61)    On October 29, 2018, the FEC sent CLC and Giffords a letter acknowledging receipt of the Hawley Complaint, and designating it MUR 7524.

(62)    On December 7, 2018, CLC and Giffords jointly filed with the FEC an administrative complaint showing that the NRA-PVF made illegal, unreported, and excessive in-kind contributions to Donald J. Trump for President, Inc. in the form of coordinated communications, 11 C.F.R. § 109.21.

(63)    On December 13, 2018, the FEC sent CLC and Giffords a letter acknowledging receipt of the Trump Complaint, and designating it MUR 7553.

(64)    On information and belief, the FEC has failed to act on Plaintiff's Administrative Complaints to date.

## CAUSE OF ACTION

### FECA, 52 U.S.C. § 30109(a)(8)(A)

(65)    Plaintiff repeats and realleges paragraphs 1-64.

(66)    Defendant's failure to act on Plaintiff's Administrative Complaints within 120 days of the Complaints being filed is contrary to law under 52 U.S.C. § 30109(a)(8)(A), which provides Plaintiff a cause of action for "a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed."

### REQUESTED RELIEF

WHEREFORE, Plaintiff requests that this Court:

(1)    Declare that the FEC's failure to act on Plaintiff's Administrative Complaints is contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2)    Order the FEC to conform with this declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3)    Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

(4)    Grant such other relief the Court may deem just and proper.


Dated: April 24, 2019                          Respectfully Submitted,

                                               /s/ Adav Noti
J. ADAM SKAGGS*                                ADAV NOTI (DC Bar No. 490714)
DAVID PUCINO*                                  MARK P. GABER (DC Bar No. 988077)
Giffords Law Center to                         MOLLY E. DANAHY*†
Prevent Gun Violence                           Campaign Legal Center Action
223 West 38th St. #90                          1101 14th Street NW, Suite 400
New York, NY 10018                             Washington, DC 20005
(917) 680-3473                                 (202) 736-2200
askaggs@giffords.org                           anoti@campaignlegal.org
dpucino@giffords.org                           mgaber@campaignlegal.org
                                               mdanahy@campaignlegal.org

*Counsel for Plaintiff*

\* *Motion for admission* pro hac vice
*forthcoming*

†DC Bar Registration Number Pending;
D.D.C. Bar Membership Application
Submitted