UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GIFFORDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 19-1192 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | MOTION TO DISMISS OR FOR |
| | ) | SUMMARY JUDGMENT |
| Defendant. | ) | |
| | ) | |

### FEDERAL ELECTION COMMISSION'S MOTION TO DISMISS, OR
### IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, the Federal Election

Commission ("FEC" or "Commission") hereby moves to dismiss plaintiff's complaint

challenging the Commission's alleged failure to act upon a series of administrative complaints

filed with the agency under the Federal Election Campaign Act, 52 U.S.C. § 30109(a)(8)(A).

Even accepting the allegations of the complaint as true, the Commission would not have

unreasonably delayed in handling the administrative complaints at issue here.  Plaintiff thus fails

to state a claim upon which relief can be granted.  In the alternative, the Commission moves for

summary judgment ██████████████████████████████████████████

████████████████████████████████████████████████ There are no material

facts in genuine dispute and the Commission is entitled to judgment as a matter of law.  A

supporting memorandum of points and authorities, a statement of material facts not in genuine

dispute, and a proposed order accompany this motion.[1]

---

[1]     This July 1, 2019 motion is hereby re-filed pursuant to the Court's October 9, 2019 and November 20, 2019
Minute Orders.  The Commission notes the following clarification and correction. ████████████████████
█████████████████████████████████████████████████████████████████████████

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)       Harry J. Summers
Acting General Counsel                        Assistant General Counsel
lstevenson@fec.gov                            hsummers@fec.gov

Kevin Deeley                                  /s/ Benjamin A. Streeter III
Associate General Counsel                     Benjamin A. Streeter III
kdeeley@fec.gov                               Attorney
                                              bstreeter@fec.gov

July 1, 2019                                  FEDERAL ELECTION COMMISSION
Re-filed December 6, 2019                     1050 First Street NE
                                              Washington, DC  20463
                                              (202) 694-1650

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GIFFORDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 19-1192 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MOTION TO DISMISS OR FOR |
| | ) | SUMMARY JUDGMENT |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
FEDERAL ELECTION COMMISSION'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

Benjamin A. Streeter III
Attorney
bstreeter@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
(202) 694-1650

July 1, 2019
Re-filed December 6, 2019

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

**TABLE OF CONTENTS**

Page

I.   BACKGROUND ...........................................................................................2

    A.   Parties ...........................................................................................2

        1.   The Federal Election Commission ........................................2

        2.   Giffords ................................................................................2

    B.   FECA's Administrative Enforcement Process ....................................3

    C.   FECA Imposes Restrictions on Expenditures Coordinated with Candidates and Reporting Obligations ........................................................................5

        1.   Source and Amount Limitations .............................................5

        2.   Coordinated Expenditures ....................................................6

        3.   Reporting Requirements .......................................................7

    D.   Judicial Review Under FECA ...........................................................8

    E.   Plaintiff Giffords's Administrative and Court Complaints ................8

    ██████████████████████████████████████████████████ 10

ARGUMENT ............................................................................................12

I.   THIS CASE SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE THE ALLEGATIONS IN THE COMPLAINT DO NOT STATE A CLAIM FOR UNLAWFUL DELAY ..................................................................................12

    A.   Standards for Evaluating Motions to Dismiss for Failure to State a Claim and Claims of Delay Under FECA ........................................................13

    B.   The Circumstances Plaintiff's Complaint Describe Are Not Arbitrary and Capricious Delay ............................................................................14

        1.   The Time That Has Passed in the Administrative Matters That Plaintiff Has Put Before the Agency Has Not Been Unreasonable ...............................15

2.   The Four Enforcement Matters That Plaintiff Describes Are Legally and Factually Complex ..................................................................................16

3.   The FEC Has Considerable Discretion to Allocate Its Enforcement Resources, and Public Data Shows That the Agency Has Faced a Heavy Enforcement Workload During the Short Time in Which These Matters Have Been Pending ...............................................................................................18

II.    SUMMARY JUDGMENT SHOULD BE GRANTED ██████████████
███████████████████████████████████████████████...............22

A.    Summary Judgment Standard ...........................................................23

B.    ████████████████████████████████████████
██████████████████....................................................24

III.   CONCLUSION.............................................................................................26

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

## TABLE OF AUTHORITIES

**Cases**                                                                                                                  **Page**

*Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052 (D.C. Cir. 2007) ............................................19

*Adickes v. S,H. Kress & Co.*, 398 U.S. 144 (1970)...................................................................23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).............................................................23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).....................................................................13

*Bradley v. Vox Media, Inc.*, 320 F. Supp. 3d 178 (D.D.C. 2018) ............................................19

*Buckley v. Valeo*, 424 U.S. 1 (1976) ..........................................................................................5

*Cannon v. District of Columbia*, 717 F.3d 200 (D.C. Cir. 2013) ............................................19

*Carik v. Dep't of Health & Human Svcs.*, 4 F. Supp. 3d 41 (D.D.C. 2013) ............................19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................23

*Common Cause v. FEC*, 489 F. Supp. 738 (D.D.C. 1980) ............................................13, 14, 23

*Common Cause v. FEC*, 842 F.2d 436 (D.C. Cir. 1988) .............................................................4

*Defs. of Wildlife v. Dep't of Agric.,* 311 F. Supp. 2d. 44, 53 (D.D.C. 2004) ..........................23

*Democratic Senatorial Campaign Comm. v. FEC*, No. 95-0349,
   1996 WL 34301203 (D.D.C. Apr. 17, 1996) .......................................................................18

*Diamond v. Atwood*, 43 F.3d 1538 (D.C. Cir. 1995) ...............................................................23

*FEC v. Rose,*
   806 F.2d 1081 (D.C. Cir. 1986) ...................................................................8, 14, 15, 18, 23

*In re Barr Labs., Inc.*, 930 F.2d 72 (D.C. Cir. 1991)................................................................18

*In re Federal Election Campaign Act Litigation*, 474 F. Supp. 1044 (D.D.C. 1979)..............17

*In re Nat'l Cong. Club v. FEC*, Nos. 84-5701, 84-57,
   1984 WL 148396 (D.C. Cir. Oct. 24, 1984)..................................13, 14, 15, 17, 22, 23

*Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996)............................................................................15

**UNDER SEAL**
**CONFIDENTIAL 30109(a)(12)(A) MATERIAL**

*Rose v. FEC*, 608 F. Supp. 1 (D.D.C. 1984) .....................................................................14, 22

*Sierra Club v. Jackson*, 648 F.3d. 848 (D.C. Cir. 2011) .........................................................13

*Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ........14

**Statutes and Regulations**

26 U.S.C. § 501(c)(4) ...................................................................................................................8

52 U.S.C. § 30101(17)(A) ...........................................................................................................7

52 U.S.C. § 30104(a) ...................................................................................................................7

52 U.S.C. § 30104(c) ...................................................................................................................7

52 U.S.C. § 30104(f) ....................................................................................................................7

52 U.S.C. § 30106 - 107 ..............................................................................................................2

52 U.S.C. § 30106(b)(1) ..............................................................................................................2

52 U.S.C. §§ 30106(c) ..............................................................................................................4, 5

 52 U.S.C. § 30107(a)(1) ..............................................................................................................4

52 U.S.C. § 30107(a)(2) ...............................................................................................................4

52 U.S.C. § 30107(a)(3) ...............................................................................................................4

52 U.S.C. § 30107(a)(4) ...............................................................................................................4

52 U.S.C. § 30107(a)(5) ...............................................................................................................4

52 U.S.C. § 30109(a)(1) ...........................................................................................................2, 3

52 U.S.C. § 30109(a)(2) .....................................................................................................2, 4, 17

52 U.S.C. § 30109(a)(3) ...........................................................................................................4, 5

52 U.S.C. § 30109(a)(4)(A)(i) .....................................................................................................5

52 U.S.C. § 30109(a)(6) ...............................................................................................................2

52 U.S.C. § 30109(a)(6)(A) .........................................................................................................5

52 U.S.C. § 30109(a)(8) ........................................................................................................22

52 U.S.C. § 30109(a)(8)(A) ..................................................................................................1, 8

52 U.S.C. § 30109(a)(8)(C) ..........................................................................................8, 12, 23

52 U.S.C. §30109(a)(12) .........................................................................................................4

52 U.S.C. § 30116(a) ...............................................................................................................5

52 U.S.C. § 30116(a)(1)(A) .....................................................................................................6

52 U.S.C. § 30116(a)(1)(C) .....................................................................................................c

2 U.S.C. § 30116(a)(7)(B)(i) ...................................................................................................6

2 U.S.C. § 30118 .....................................................................................................................5

52 U.S.C. §30119 ....................................................................................................................5

52 U.S.C. § 30118(a) ...............................................................................................................6

52 U.S.C. § 30118(b)(2)(c) ......................................................................................................8

52 U.S.C. § 30121 ...................................................................................................................5

11 C.F.R. § 109.20 ...................................................................................................................6

11 C.F.R. § 109.20(a) ..............................................................................................................6

11 C.F.R. § 109.21 ...................................................................................................................6

11 CFR § 109.21(c)(3) .............................................................................................................7

11 CFR § 109.21 (c)(5) ............................................................................................................7

11 CFR § 109.21(d)(4)(i) .........................................................................................................7

11 CFR § 109.21(d)(4)(ii) ........................................................................................................7

11 CFR § 109.21(d)(4)(iii) .......................................................................................................7

11 C.F.R. § 111.4 .....................................................................................................................3

11 C.F.R. § 111.5 .....................................................................................................................3

11 C.F.R. § 111.6(a) ...................................................................................................3

11 C.F.R. § 111.6(b) ...................................................................................................3

11 C.F.R. § 111.7 ........................................................................................................4

11 C.F.R. § 111.9(a) ...................................................................................................4

11 C.F.R. § 111.10 ......................................................................................................4

11 C.F.R. § 111.11 ......................................................................................................4

11 C.F.R. § 111.12 ......................................................................................................4

11 C.F.R. § 111.13 ......................................................................................................4

11 C.F.R. § 111.14 ......................................................................................................4

11 C.F.R. § 111.15(a) .................................................................................................4

11 C.F.R. § 111.16(a) .................................................................................................5

11 C.F.R. § 111.16(c) .................................................................................................5

11 C.F.R. § 111.16(d) .................................................................................................5

11 C.F.R. § 111.21 ......................................................................................................4

**Miscellaneous**

FEC, *Agency Procedure Following the Submission of Probable Cause Beliefs by the Office of General Counsel*, 76 Fed. Reg. 63570 (Oct. 13, 2011)…………………………..5

FEC, *Amendment of Agency Procedures for Probable Cause Hearings*, 74 Fed. Reg. 55443 (Oct. 28, 2009)…………………………………………………………………………5

FEC, *Guidebook for Complainants and Respondents on the FEC Enforcement Process* ("Enforcement Guidebook") (May 2012), https://www.fec.gov/em/respondent_guide.pdf........................................................ 3, 23

FEC, *Status of Enforcement — Fiscal Year 2018, First Quarter (10/01/17 – 12/31/17)* "FY 2018 First Quarter Status of Enforcement")  (Feb. 5, 2018), https://www.fec.gov/resources/cms-content/documents/Status_of_Enforcement_for_First_Quarter_of_FY_2018_-_Public_Version.pdf;........................................................................................................19

FEC, *Status of Enforcement — Fiscal Year 2019, First Quarter (10/1/2018 – 12/31/18)*, 1 (Mar. 8, 2019) https://www.fec.gov/resources/cms-content/documents/Status_of_Enforcement__FY2019_1stQtr.pdf...........................................20

FEC, *Status of Enforcement — Fiscal Year 2018 (10/01/17 – 09/30/18)* ("FY 2018 Status of Enforcement")  (Nov. 7, 2018), https://www.fec.gov/resources/cms-content/documents/status_of_enforcement_FY2018.pdf...........................................19

FEC, *Responses to Questions from the Committee on House Administration ("FEC Responses to House Committee")* (May 1, 2019), https://www.fec.gov/resources/cms-content/documents/FEC_Response_to_House_Admin.pdf.........................................4

*Price Index Adjustments for Contribution and Expenditure Limitations and Lobbyist Bundling Disclosure Threshold*, 84 Fed. Reg. 2504 (Feb. 7, 2019)……..………….……………… 6

FEC, *Agency Procedure Following the Submission of Probable Cause Briefs by the Office of Gen. Counsel*, 76 Fed. Reg. 63570 (Oct. 13, 2011)………………………………………..5

FEC, *Supplemental Statistics for Fiscal Years 2009 – 2010*,  (Oct. 1, 2010), https://transition.fec.gov/em/enfpro/enforcestatsfy09-10.pdf................................................20

Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process., 72 Fed. Reg. 12545 (March 16, 2007)...........................................26

Fed. R. Civ. P. 12(b)(6)…......................................................................................................13

FEC, *Fiscal Year 2020 Cong. Budget Justification*, (Mar. 18, 2019), https://www.fec.gov/resources/cms-content/documents/FY20_congressional_budget_justification.pdf (explaining the budget climate)....................................................................................................................20

*Fiscal Year 2020 Cong. Budget Justification*, (Mar. 18, 2019), https://www.fec.gov/resources/cms-content/documents/FY20_congressional_budget_justification.pdf ..................................…16

FEC, *Fiscal Year 2019 Cong. Budget Justification* (Feb. 12, 2018), https://www.fec.gov/resources/cms-content/documents/FEC_FY_2019_Congressional_Budget_Justification.pdf (requesting a budget built on an assumption of a reduction from 345 to 335 in full-time equivalent staff positions)…………………………………………………………………………..20

*OGC Enforcement Statistics for Fiscal Years 2003-2008* ("FY 2003-08 Enforcement Statistics"), (updated Jan. 13, 2009), https://transition.fec.gov/em/enfpro/enforcestatsfy03-08.pdf.....20

**UNDER SEAL**
**CONFIDENTIAL 30109(a)(12)(A) MATERIAL**

*Financial Services and General Government Appropriations Act, 2019,* Pub. L. No. 116-6, Div. D, title V, 133 Stat. 13, 166 (Feb. 15, 2019) (awarding the requested amount)…………..20

Responses to Questions from the House Committee on Administration (May 1, 2019), https://www.fec.gov/resources/cms-content/documents/FEC_Response_to_House_Admin.pdf....................................................

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

The claim of plaintiff Giffords that defendant Federal Election Commission ("Commission" or "FEC") has unlawfully failed to act on four administrative complaints pursuant to 52 U.S.C. § 30109(a)(8)(A) of the Federal Election Campaign Act ("FECA") must be dismissed.  Plaintiff has failed to state a claim upon which relief can be granted because no claim of delay could succeed based on the facts alleged in the court complaint, which itself shows the recency of the administrative complaints, as well as the factual and legal complexity of the matters at issue.  In the alternative, summary judgment is appropriate ███████████

███████████████████████████████████████████████████████

███████████████████████████

According to the court complaint, Giffords filed four administrative complaints with the Commission in the second half of 2018.  Each administrative complaint alleged, according to plaintiff, that two entities associated with the National Rifle Association of America ("NRA"), the NRA Political Victory Fund ("NRA-PVF") and the NRA Institute for Legislative Action ("NRA-ILA"), made unlawful contributions to a presidential campaign and a large number of Senate campaigns.  (Compl. ¶¶ 10-54.)  In particular, plaintiff claims that these NRA entities used common vendors in a complex, concealed manner to make millions of dollars of ostensibly independent expenditures that were in fact coordinated with the campaigns that benefited, during the 2014, 2016, and 2018 election cycles.  (*Id*.)

In this court case, Giffords asserts that the Commission has unlawfully failed to act on its administrative complaints in violation of 52 U.S.C. § 30109(a)(8)(A).  (Compl. ¶ 66.)  But this case must be dismissed under the applicable standards for evaluating such claims, which accord the Commission deference and impose no specific deadlines for the handling of such matters.  Plaintiff fails to state a claim for unlawful delay in light of the time required to conduct the

FEC's statutorily required administrative process, which provides for responses from those against whom allegations are made; the agency's heavy current enforcement workload; and the nature of the allegations, which plaintiff itself describes as a "complicated scheme."  (Compl. at 2.)

Alternatively, the FEC is entitled to summary judgment ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████

## I.      BACKGROUND

### B.      Parties

#### 1.      The Federal Election Commission

The FEC is a six-member independent agency of the United States government with exclusive jurisdiction to administer, interpret, and civilly enforce FECA.  *See generally* 52 U.S.C. §§ 30106-07.  Congress authorized the Commission, *inter alia*, to investigate possible violations of FECA, *id*. § 30109(a)(1)-(2), and granted the Commission exclusive jurisdiction to initiate civil enforcement actions for violations of FECA in the United States district courts, *id*., §§ 30106(b)(1), 30109(a)(6).

#### 2.      Giffords

Giffords identifies itself as a section 501(c)(4) organization headquartered in Washington, D.C. that researches and proposes policies, as well as mobilizes voters and

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

lawmakers, in support of safer gun laws. (Compl. ¶ 8.) It is founded and led by former

Congresswoman Gabrielle Giffords. (*Id.*)

### B. FECA's Administrative Enforcement Process

FECA permits any person to file an administrative complaint with the Commission

alleging a violation. 52 U.S.C. § 30109(a)(1); 11 C.F.R. § 111.4. The FEC's Office of General

Counsel reviews filed complaints for compliance with technical requirements and sends

notification letters within five days. 52 U.S.C. § 30109(a)(1); 11 C.F.R. § 111.5.

Respondents whose conduct is at issue are afforded fifteen days to demonstrate in writing

that no action should be taken on the administrative complaint. 52 U.S.C. § 30109(a)(1); 11

C.F.R. § 111.6(a). The Commission may take no action on a complaint other than dismissal until

the fifteen-day period has elapsed. 52 U.S.C. § 30109(a)(1); 11 C.F.R. § 111.6(b). Extensions

beyond fifteen days may be obtained and the Commission similarly takes no action on the

complaint until after the new deadline if an extension is granted.[1]

After the response period has elapsed, the Commission's Office of General Counsel

evaluates the complaint and any responses under the agency's Enforcement Priority System.

Enforcement Guidebook at 11. Depending on their priority and other criteria, matters may then

be referred to the agency's Alternative Dispute Resolution Office, Administrative Fine Program,

or recommended for dismissal. *Id.* Matters that are of relatively higher priority are assigned to

the agency's Enforcement Division and processed under FECA's general enforcement

procedures. *Id.*

---

[1]     FEC, *Guidebook for Complainants and Respondents on the FEC Enforcement Process*
("Enforcement Guidebook"), 10 - 11 (May 2012),
https://www.fec.gov/em/respondent_guide.pdf.

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

Matters that have been assigned to the Enforcement Division are activated and assigned to staff attorneys for preparation of a recommendation to Commissioners as staff are available and in consideration of case priority.[2]  The Office of General Counsel sends a report to the Commission recommending whether it should find that there is "reason to believe" that FECA has been violated and whether it should dismiss the matter.  11 C.F.R. § 111.7.  If at least four of the FEC's Commissioners vote to find such reason to believe, the agency must notify respondents by letter of the alleged violations and factual basis.  52 U.S.C. § 30109(a)(2); 11 C.F.R. § 111.9(a).  If the Commission finds no reason to believe or otherwise terminates its proceedings, an explanation of the Commission's reasons is required to enable potential judicial review.  *See Common Cause v. FEC*, 842 F.2d 436, 449 (D.C. Cir. 1988).

If the Commission finds reason to believe a violation has occurred, it may investigate the alleged violation.  52 U.S.C. §§ 30106(c), 30109(a)(2); 11 C.F.R. § 111.10.  The Commission is authorized to employ compulsory methods during such an investigation, including written questions, document subpoenas, and depositions.  *Id.* § 30107(a)(1)-(5); 11 C.F.R. §§ 111.10-111.14.  Persons subpoenaed may file motions to quash with the Commission.  11 C.F.R. § 111.15(a).  Absent waiver by the respondent, any complaint, notification, finding, or investigation is confidential until the administrative process is complete.  *Id*. § 30109(a)(12); 11 C.F.R. § 111.21.

If an investigation has been conducted, the FEC must then determine whether there is "probable cause" to believe that FECA has been violated.  The Office of General Counsel prepares a brief with a recommendation to the Commission.  52 U.S.C. § 30109(a)(3); 11 C.F.R.

---

[2]      FEC, Responses to Questions from the Committee on House Administration ("FEC Responses to House Committee") at 16 (May 1, 2019), https://www.fec.gov/resources/cms-content/documents/FEC_Response_to_House_Admin.pdf.

§ 111.16(a).  Respondents may file a brief within 15 days.  52 U.S.C. § 30109(a)(3); 11 C.F.R. §

111.16(c).  The Office of General Counsel then sends the Commission a written notice advising

whether it intends to proceed or withdraw its recommendation.  11 C.F.R. § 111.16(d).  Under

certain circumstances, respondents may request within five days and be granted permission by

the Commission to file a supplemental reply brief up to 10 days later.[3]  Respondents have the

option to request a transcribed oral hearing before the Commission regarding whether there is

probable cause to believe violations occurred.[4]

Like a reason-to-believe finding, a determination to find probable cause to believe that a

violation has occurred requires an affirmative vote of four Commissioners.  If at least four

Commissioners so vote, the agency is generally required by statute to spend a minimum of 30

days trying to remedy the apparent violation informally and try to reach a conciliation agreement

with the respondent.  52 U.S.C. §§ 30106(c), 30109(a)(4)(A)(i).  If the Commission is unable to

reach a conciliation agreement, the Act authorizes the agency to institute a de novo civil

enforcement action in federal district court.  *Id.* § 30109(a)(6)(A).

## C.  FECA Imposes Restrictions on Expenditures Coordinated with Candidates and Reporting Obligations

### 1.  Source and Amount Limitations

FECA contains requirements to regulate the financing of federal election campaigns.  The

dollar amounts and sources of contributions to the campaign committees of federal candidates

are limited.  52 U.S.C. §§ 30116(a), 30118-19, 30121.  Most "political committees," groups

which *inter alia* have the major purpose of electing federal candidates, *Buckley v. Valeo*, 424

---

[3]      *See* FEC, *Agency Procedure Following the Submission of Probable Cause Briefs by the Office of Gen. Counsel*, 76 Fed. Reg. 63570 (Oct. 13, 2011).
[4]      *See* FEC, *Amendment of Agency Procedures for Probable Cause Hearings*, 74 Fed. Reg. 55443 (Oct. 28, 2009).

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

U.S. 1, 79 (1976) (per curiam), may contribute $5,000 per year to federal candidates.  Most other

persons are currently limited to contributions to a candidate totaling $2,800 per election.  52

U.S.C. § 30116(a)(1)(A), (C); *see* FEC, Price Index Adjustments for Contribution and

Expenditure Limitations and Lobbyist Bundling Disclosure Threshold, 84 Fed. Reg. 2504 (Feb.

7, 2019) (establishing the inflation-adjusted contribution limits for the current two-year election

cycle).  Funds from corporate treasuries may not be contributed to federal candidates, although

corporations may establish separate segregated funds that receive voluntary contributions to do

so.  *See* 52 U.S.C. § 30118(a).  One of the NRA entities, NRA-PVF, is registered with the

Commission as such a separate segregated fund, a type of political committee, connected to the

NRA.

### 2.      Coordinated Expenditures

Expenditures made by a person in coordination with a candidate are generally considered

in-kind contributions to that candidate's campaign, and they are therefore limited in the same

way as direct monetary contributions are, because the campaign receives the same benefit from

having money spent at its direction as it would by having money contributed to it directly.  52

U.S.C. § 30116(a)(7)(B)(i).

The specific standards for determining whether an expenditure has been coordinated with

a candidate or political committee are set forth in FEC regulations.  11 C.F.R. §§ 109.20, 109.21.

Section 109.20 defines coordinated acts as those "(a) made in cooperation, consultation or

concert with, or at the request or suggestion of, a candidate, a candidate's authorized committee,

or a political party committee." 11 C.F.R. §§ 109.20(a).  Section 109.21 defines a

communication as being coordinated with a candidate or committee when it is 1) "paid for, in

whole or in part, by a person other than that candidate" or committee; 2) "[s]atisfies at least one

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

of the content standards" specified in the regulation; and 3) satisfies at least one conduct standard also found in the regulation.  11 C.F.R. §§ 109.21(a). The content standard can be satisfied if the communication meets one of five tests, including whether the communication expressly advocates the election or defeat of a clearly identified federal candidate, or if the public communication is aired within 90 days of a clearly identified candidate's federal election.  11 C.F.R. § 109.21(c)(3), (c)(5).  The conduct standard for coordination can be met by the activities of a common vendor if the communication maker hires the vendor to create, produce or disseminate a communication, 11 C.F.R. § 109.21(d)(4)(i), and the vendor has supplied specified services to a candidate within the previous 120 days, such as developing a media strategy, developing the content of communications, or producing communications, 11 C.F.R. § 109.21(d)(4)(ii).  In addition, the vendor must use or convey to the communication maker information about the candidate or candidate's opponent that is material to the new communication, unless that information derives from public sources.  11 C.F.R. § 109.21(d)(4)(iii).

### 3.    Reporting Requirements

FECA also requires political committees to report detailed information to the Commission on a regular basis regardless of their specific activities.  *See* 52 U.S.C. § 30104(a). By contrast, groups that are not deemed to be political committees are required to file event-driven reports with the FEC if they engage in certain election-related spending such as independent expenditures, 52 U.S.C. § 30104(c), or electioneering communications, 52 U.S.C. § 30104(f).  An independent expenditure is a communication made without coordination with a candidate, campaign, or political party that "expressly advocat[es] the election or defeat of a clearly identified candidate."  52 U.S.C. § 30101(17)(A).

### D.    Judicial Review Under FECA

Administrative complainants may challenge in federal court the FEC's handling of their complaints in two limited situations.  52 U.S.C. § 30109(a)(8)(A).  First, after 120 days have elapsed since the complaint has been filed, a party who has filed an administrative complaint may bring a claim against the Commission alleging "a failure of the Commission to act on [the administrative] complaint."  *Id*.; *FEC v. Rose*, 806 F.2d 1081, 1092 (D.C. Cir. 1986).  The second situation in which an administrative complainant may file suit is where the Commission decides to dismiss the administrative complaint.  In that event, FECA allows the complainant to challenge the dismissal in court.  52 U.S.C. § 30109(a)(8)(A).  In either type of suit, the plaintiff must establish that the FEC has acted "contrary to law."  52 U.S.C. ¶ 30109(a)(8)(c).

### E.    Plaintiff Giffords's Administrative and Court Complaints

Plaintiff's court complaint alleges that on July 16, 2018, the Campaign Legal Center ("CLC") filed the first of four administrative complaints at issue with the FEC.  (Compl. ¶ 2.) Plaintiff alleges that this was designated by the Commission as Matter Under Review ("MUR") 7427.  (Compl. ¶ 56.)

NRA-PVF is alleged to be registered with the Commission as a separate segregated fund connected to the NRA that makes contributions to federal candidates and political committees and makes independent expenditures through a separate account.  Compl. ¶ 28; 52 U.S.C. ¶ 30118(b)(2).  The NRA-ILA is alleged to be an incorporated tax-exempt organization under Section 501(c)(4) of the Internal Revenue Code.  Compl. ¶ 28; 26 U.S.C. ¶ 501(c)(4).

In the first administrative complaint, CLC alleged that these two NRA entities made illegal, unreported and excessive contributions to certain political candidates in the form of coordinated communications using common vendors.  (Compl. ¶ 55.)  A month later, on August

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

16, 2018, this administrative complaint was amended to add Giffords as a complainant.  (Compl. ¶ 55.)  Plaintiff states that the second administrative complaint, designated as MUR 7497, was filed jointly by Giffords and CLC on September 14, 2018, alleging that the same NRA entities had made coordinated contributions to another Senate candidate.  (Compl. ¶¶ 3, 57-58.)  Giffords and CLC alleged in a third administrative complaint filed on October 22, 2018 (and designated MUR 7524) that the same NRA entities had made additional coordinated contributions to yet another Senate candidate.  (Compl. ¶¶ 60-61.)  Finally, according to the court complaint, Giffords and CLC alleged in a fourth administrative complaint filed on December 7, 2018 (designated MUR 7553) that the same NRA entities had pursued a similar scheme to make improper contributions to the Donald J. Trump for President, Inc. committee.  (Compl. ¶¶ 5, 62-63).

According to the court complaint, the basic facts that Giffords alleges in support of these legal claims are that in the 2014, 2016, and 2018 election cycles, the NRA entities made millions of dollars in excessive, prohibited corporate, and unlawfully unreported contributions to federal candidates by coordinating political ad spending through the use of common vendors operating through a network of corporate shells.  (Compl. ¶ 10.)  In particular, plaintiff alleges that OnMessage was an advertising consultant and vendor used previously by the NRA entities in the 2010 and 2012 election cycles.  (Compl. ¶ 22.)  Beginning with the 2014 election cycle, the NRA entities allegedly directed their communication expenditures through a new but functionally indistinguishable vendor, Starboard, while candidates the NRA supported utilized OnMessage. (Compl. ¶ 23.)  According to the court complaint, the NRA entities made multiple expenditures through Starboard, while U.S. Senate candidates they supported placed ads with OnMessage in the 2014 election cycle (Compl. ¶¶ 34-37) and the 2016 election cycle (Compl. ¶¶ 38-45),

including expenditures made on behalf of Trump for President, and also coordinated ad spending for Senate candidates in the 2018 election cycle (Compl. ¶¶ 46-51).

Giffords also alleges that National Media, another advertising consultant and vendor, did business under the name Red Eagle and also operated an affiliate by the name of America Media Advocacy Group.  (Compl. ¶ 26.)  Red Eagle and AMAG constituted the second common vendor scheme, plaintiff alleges, with the NRA entities purchasing advertisements through Red Eagle while NRA-supported Senate candidates and the Trump presidential campaign placed advertisements through AMAG.  (Compl. ¶¶ 42-44, 48.)

On April 24, 2019, Giffords filed this suit seeking declaratory and injunctive relief against the FEC for allegedly failing to act on the four administrative matters Giffords had initiated in the latter half of 2018.  (Compl. ¶¶ 55-63.)  Giffords asks the Court to declare that the FEC's purported failure to act on its administrative complaints within 120 days was contrary to law under 52 U.S.C. § 30109(a)(8)(A).  (Compl. ¶ 66.)  Plaintiff also asks the Court to order the FEC to conform with the declaration it seeks within thirty days after the entry of the Court's declaration.  (Compl., Requested Relief ¶ 2.)

**UNDER SEAL**
**CONFIDENTIAL 30109(a)(12)(A) MATERIAL**

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

**ARGUMENT**

**I.     THIS CASE SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE THE
ALLEGATIONS IN THE COMPLAINT DO NOT STATE A CLAIM FOR
UNLAWFUL DELAY**

In this case, Giffords claims that the NRA entities have "engaged in a complicated

scheme" to commit "campaign finance violations of dramatic scale," but that the Commission

has engaged in "unlawful and unreasonable delay" in addressing four administrative matters

about that activity.  (Compl. at 2.)  Accepting all the allegations in the complaint as true,

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

however, Giffords does not state a claim that the Commission's actions in addressing plaintiff's

claims were unreasonable or otherwise "contrary to law." 52 U.S.C. § 30109(a)(8)(C). Nothing

in the law requires the FEC to complete work on administrative complaints within the statutory

120-day period for filing court complaints. And as explained below, the situation described in

the court complaint does not constitute a violation of the contrary-to-law standard of section

30109(a)(8) for a number of reasons, including the minimal passage of time since plaintiff made

the allegations and the complex scenarios alleged in the administrative complaints, as well as

matters of which the court may take judicial notice, particularly the FEC's heavy current

workload and its statutorily required administrative process.

A.     **Standards for Evaluating Motions to Dismiss for Failure to State a Claim and Claims of Delay Under FECA**

Dismissal of a claim is appropriate where, accepting the factual allegations in the court

complaint as true and drawing all reasonable inferences in the plaintiff's favor, the allegations

fail as a matter of law to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6);

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sierra Club v. Jackson*, 648 F.3d. 848, 854 (D.C.

Cir. 2011). A claim must be dismissed "when the allegations in a complaint, however true, could

not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

In the context of a claim of "failure to act" under section 30109(a)(8), FECA's contrary-

to-law standard means "action which is arbitrary and capricious." *Common Cause v. FEC*, 489

F. Supp. 738, 744 (D.D.C. 1980). The Court of Appeals has explained that "in using the

language 'contrary to law,' Congress appears to have intended that the unreasonableness of the

Commission's delay in completing its task be tested under standards generally applicable to

review of agency inaction." *In re Nat'l Cong. Club*, 1984 WL 148396, at *1 (D.C. Cir. Oct. 24,

1984) *(per curiam).* To make this determination, the Court of Appeals has instructed district

courts to consider the four factors used in *Common Cause* — "'[1] the credibility of the

allegation, [2] the nature of the threat posed, [3] the resources available to the agency, and [4] the

information available to it, as well as the novelty of the issues involved.'"  *Id.* (quoting *Common*

*Cause*, 489 F. Supp. at 744).  In addition, administrative delay cases are evaluated by reference

to the six factors announced in *Telecommunications Research & Action Center v. FCC*:

> (1) the time agencies take to make decisions must be governed by a
> rule of reason; (2) where Congress has provided a timetable or
> other indication of the speed with which it expects the agency to
> proceed in the enabling statute, that statutory scheme may supply
> content for this rule of reason; (3) delays that might be reasonable
> in the sphere of economic regulation are less tolerable when human
> health and welfare are at stake; (4) the court should consider the
> effect of expediting delayed action on agency activities of a higher
> or competing priority; (5) the court should also take into account
> the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency
> lassitude in order to hold that agency action is unreasonably
> delayed.

750 F.2d 70, 80 (D.C. Cir. 1984) (citations and internal quotation marks omitted) ("*TRAC*").

> **B.**     **The Circumstances Plaintiff's Complaint Describe Are Not Arbitrary and
>               Capricious Delay**

Under the standards above, Giffords's allegations regarding the Commission's handling

of the underlying MURs at issue here do not constitute unreasonable delay.  Plaintiff pleads that

it initiated four administrative matters in the latter half of 2018 alleging what it terms a

"complicated scheme" to violate the common vendor rules, including a large number of actors

who would have rights as respondents under FECA's mandatory administrative enforcement

procedure.  At the same time, publicly available data shows the Commission's heavy workload

during the short period these complaints have allegedly been pending, a period that included the

35-day government shutdown of 2018-2019.  Yet plaintiffs filed this delay suit in April 2019.

Applying the *Common Cause* and *TRAC* standards, there is no basis to find that the FEC's

actions in handling the four administrative matters described in the complaint here were other than "substantially justified." *Rose,* 806 F.2d at 1091 n.17.

### 4.   The Time That Has Passed in the Administrative Matters That Plaintiff Has Put Before the Agency Has Not Been Unreasonable

At the time Giffords filed this suit, the final administrative complaints had been pending for approximately five to eight months, an obviously reasonable amount of time not to have concluded all of the FECA-required administrative proceedings.  The specific amounts of elapsed time were 251 days (MUR 7427, after an amended complaint), 219 days (MUR 7497), 184 days (MUR 7524), and 138 days (MUR 7553).  As the caselaw demonstrates, the Commission has not acted contrary to law.

There is no specific time frame governing how quickly the Commission must act on administrative enforcement complaints.  The Court of Appeals has made clear that, despite section 30109(a)(8)(A)'s reference to a failure to act upon an administrative complaint within 120 days, FECA does *not* impose any particular time period within which FEC administrative enforcement matters must be resolved.  *Rose*, 806 F.2d at 1091-92.  The *Rose* court emphasized that the 120-day period is simply a basic jurisdictional threshold before which a delay suit cannot be filed, and the court unequivocally rejected the argument that FECA requires the FEC to act on an administrative complaint within 120 days, or even within a two-year election cycle.  *Id*. at 1092.  The court recognized that the Commission "[l]ike the federal courts…appears to have more than one case on its docket" and that "[i]t is not for the judiciary to ride roughshod over agency procedures or sit as a board of superintend[e]nce" because "[we] are not here to run the agencies." *Id*. at 1091 & n.17.  Likewise, in *National Congressional Club*, 1984 WL 148396, at *1, the D.C. Circuit summarily reversed a district court's contrary-to-law finding where it was based on the incorrect presumption that administrative complaints must be resolved "within the

two-year period between elections"; *accord Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996)

*(per curiam)* (explaining that section 30109(a)(8) is "designed to ensure fairness not only to

complainants but also to respondents" and that it reflected Congressional understanding that

some complaints would not be investigated or reviewed by the judiciary until after the election at

issue).

Thus, controlling precedent makes clear that there is no set timetable for the

Commission's handling of administrative complaints (the second factor to be considered under

the *TRAC* case) and that a reasonable amount of time in the context of FEC enforcement activity

(the first *TRAC* factor) is reviewed with regard to the particular circumstances of each matter

under a deferential standard.

The five to eight months during which the administrative complaints are alleged to have

been pending are plainly not unreasonable periods.  The agency's own goal, which has been

explained to Congress repeatedly over a number of years, is to resolve half of the enforcement

matters it resolves each year within 15 months of the date of receipt.[5]  That goal reflects the

inclusion of lower priority, less complex allegations than those at issue here and assumes that

many more complex matters will not be resolved within 15 months.  Even setting aside

complaint amendments and counting from the original complaint filing date in each matter, the

agency's 15-month benchmark is more than three months away.

**2.      The Four Enforcement Matters That Plaintiff Describes Are Legally and
Factually Complex**

---

[5]      *See, e.g.,* FEC, *Fiscal Year 2020 Cong. Budget Justification*, 34 (Mar. 18, 2019),
https://www.fec.gov/resources/cms-
content/documents/FY20_congressional_budget_justification.pdf (explaining the budget
climate).

It is undisputed that plaintiff makes allegations that describe numerous complicated campaign finance law matters.  Giffords itself repeatedly emphasizes the complexity and opaqueness of the common vendor scheme through which it alleges the administrative respondents violated FECA.  Plaintiff points to a "complex network of shell corporations" (Compl. at 1) allegedly engaging in an "elaborate scheme" (Compl. at 17) and a "complicated scheme to coordinate" leading to "campaign finance violations of dramatic scale" (Compl. at 2).  At the same time, the legal rules governing coordinated expenditures under FECA, which were designed to be targeted and sensitive to First Amendment concerns, are complex.  *See* supra p. __.  And the D.C. Circuit has confirmed that the "novelty of the issues involved" is a key factor in evaluating allegations of agency delay.  *See In re Nat. Cong. Club*, 1984 WL 148396, at *1 (quoting *Common Cause*, 489 F. Supp. at 744).

Moreover, even assuming that the detailed allegations made by Giffords had credibility, another factor the D.C. Circuit has cited, "the Commission may not rely solely on the facts presented by the sworn complaint when deciding whether to investigate."  *In re Fed. Election Campaign Act Litig.*, 474 F. Supp. 1044, 1046 (D.D.C. 1979).  Careful agency consideration is required, and information received from administrative respondents may cast an apparently persuasive complaint in a different light.  Indeed, it is important to stress the extensive procedural requirements in FECA that safeguard the interests of respondents, including their right to respond to each processed administrative complaint, such as those at issue here — the last of which was not even filed until December 2018.  *See* 52 U.S.C. § 30109(a)(2).  As explained above, the Commission's administrative enforcement process is largely mandated by statute and takes time.

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

In addition, although Giffords makes claims encompassing many actors over three federal election cycles, these claims all raise economic (and political) issues common to many FEC matters, not human safety or welfare issues.  Because no immediate issues of safety or wellness are at stake in these alleged violations of campaign finance restrictions, the third *TRAC* factor clearly weighs against any finding that the Commission's handling of the matters could be deemed unlawful.

3.    **The FEC Has Considerable Discretion to Allocate Its Enforcement Resources, and Public Data Shows That the Agency Has Faced a Heavy Enforcement Workload During the Short Time in Which These Matters Have Been Pending**

The Commission's significant discretion to allocate its resources in discharging its enforcement responsibilities is another factor demonstrating the insufficiency of Giffords's complaint.  And the agency's current budgetary and workload context further demonstrate that allegations of the agency having complex matters pending for five to eight months do not state a claim for unlawful delay.

As a general matter, the "FEC is clearly entitled to deference in the allocation of its resources to meet its statutory obligations."  *Democratic Senatorial Campaign Comm. v. FEC*, No. 95-0349, 1996 WL 34301203, at *5 (D.D.C. Apr. 17, 1996).  "[R]espect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities."  *In re Barr Labs., Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991).  Courts have repeatedly refused to reorder agency priorities by ordering a particular case to be expedited ahead of others.  The effect of such relief is to put a plaintiff "at the head of the queue[, which] simply moves all others back one space and produces no net gain."  *Id.* at 75.  Moreover, courts lack any "basis for reordering agency priorities.  The agency is in a unique — and authoritative — position to view its projects as a whole, estimate the

prospects for each, and allocate its resources in the optimal way. Such budget flexibility as Congress has allowed the agency is not for [the courts] to hijack." *Id.* at 76.

Judicial review of the agency's handling of administrative complaints is thus deferential. *Rose*, 806 F.2d at 1092. Indeed, the discretion to mobilize the internal resources, especially staff time, to determine whether and how to investigate the "complicated scheme" Giffords alleges is at the heart of the resource considerations that underlie the third *Common Cause* factor (available agency resources) and the fourth *TRAC* factor (potential effects on other agency activities). Not only must the Commission identify resources available to work on new matters, it must also consider the impact of staffing decisions upon other matters under consideration. Even assuming the allegations raised here are serious ones, the FEC regularly evaluates many important and complex allegations in its enforcement role.

Publicly available data shows that the Commission has experienced a heavy workload and staffing pressures during the short period that plaintiff's matters have been pending, particularly in light of the lengthy federal government shutdown of 2018-2019.[6] In fiscal year 2018, the Commission received 258 cases, a historically very high number.[7] By comparison, the totals in fiscal years 2003-17 averaged 156 cases received and never exceeded 235.[8]

---

[6]     Because this data is all available on the Commission's website at www.fec.gov and not subject to reasonable dispute, the court may take judicial notice of it in ruling on this motion to dismiss, even though the data is not found in the pleadings of this case. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *Bradley v. Vox Media, Inc.*, 320 F. Supp. 3d 178, 181 (D.D.C. 2018). Indeed, courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies. *See, e.g.*, *Cannon v. District of Columbia*, 717 F.3d 200, n.2 (D.C. Cir. 2013) (District of Columbia's Retirement Board); *Carik v. Dep't of Health & Human Svcs.*, 4 F. Supp. 3d 41, 48 n.4 (D.D.C. 2013) (FDA).

[7]     *See* FEC, *Status of Enforcement — Fiscal Year 2018 (10/01/17 – 09/30/18)* ("FY 2018 Status of Enforcement"), 3 (Nov. 7, 2018), https://www.fec.gov/resources/cms-content/documents/status_of_enforcement_FY2018.pdf.

[8]     *See* FEC, *Status of Enforcement — Fiscal Year 2018, First Quarter (10/01/17 – 12/31/17)* "FY 2018 First Quarter Status of Enforcement"), 3 (Feb. 5, 2018),

The agency has had to manage this burgeoning docket during the recent period with comparatively fewer resources.  Recognizing the current "challenging Federal budget conditions" in its last several budget requests, the Commission sought and was appropriated a budget for the current fiscal year, 2019, that assumed ten fewer full-time equivalent staff positions than in the preceding fiscal year.[9]

The agency has done more with less over time.  The average number of days to close a matter has decreased from a peak of 790 days or 26.3 months in fiscal year 2004 to 436 days or approximately 14.5 months in fiscal year 2018.[10]

Despite these efforts, the increasing workload has strained agency resources and contributed to the agency's efficiency gains potentially getting outpaced.  The total pending load of cases with the agency's Enforcement Division increased from 241 matters at the end of December 2017 to 320 matters at the end of December 2018.[11]  Available data for the time

---

https://www.fec.gov/resources/cms-content/documents/Status_of_Enforcement_for_First_Quarter_of_FY_2018_-_Public_Version.pdf; FEC, Supplemental Statistics for Fiscal Years 2009 – 2010, 2 (Oct. 1, 2010), https://transition.fec.gov/em/enfpro/enforcestatsfy09-10.pdf; FEC, *OGC Enforcement Statistics for Fiscal Years 2003-2008* ("FY 2003-08 Enforcement Statistics"), 2 (updated Jan. 13, 2009), https://transition.fec.gov/em/enfpro/enforcestatsfy03-08.pdf.

[9]      FEC, *Fiscal Year 2020 Cong. Budget Justification*, 2 (Mar. 18, 2019), https://www.fec.gov/resources/cms-content/documents/FY20_congressional_budget_justification.pdf (explaining the budget climate);  FEC, *Fiscal Year 2019 Cong. Budget Justification*, 2 (Feb. 12, 2018), https://www.fec.gov/resources/cms-content/documents/FEC_FY_2019_Congressional_Budget_Justification.pdf (requesting a budget built on an assumption of a reduction from 345 to 335 in full-time equivalent staff positions); *See Financial Services and General Government Appropriations Act, 2019,* Pub. L. No. 116-6, Div. D, title V, 133 Stat. 13, 166 (Feb. 15, 2019) (awarding the requested amount).

[10]      FY 2018 Status of Enforcement at 4; FY 2003-08 Enforcement Statistics at 2.

[11]      FEC, *Status of Enforcement — Fiscal Year 2019, First Quarter (10/1/2018 – 12/31/18)*, 1 (Mar. 8, 2019) https://www.fec.gov/resources/cms-content/documents/Status_of_Enforcement__FY2019_1stQtr.pdf*;* FY 2018 First Quarter Status of Enforcement at 1.

during which plaintiff's administrative complaints were filed thus show a very high-volume

period for enforcement matters as the budgeted size of the agency's staff has decreased.

Another major factor weighing against a finding that the Commission has acted contrary

to law is the impact of the partial government shutdown of 2018-2019.  This interruption of

operations completely closed the doors of some federal agencies, including the FEC, throughout

the lapse of funding, which began on December 22, 2018 and lasted until January 25, 2019, a

period of 35 days.  (FEC Facts ¶¶ 37, 57, 77, 92.)  All four of the Giffords administrative

complaints alleged to have initiated matters in the court complaint had been filed by then, so the

shutdown completely halted any work that FEC staff may have been performing on those and all

other FEC enforcement matters, since staffed were legally barred from working on them.  (FEC

Facts ¶¶ 37, 57, 77, 92.)  The interruption substantially diminished the amount of time that FEC

staff has had to work on those administrative complaints.  In fact, at the time plaintiff filed this

suit, the FEC had actually had less than the 120-day period in 52 U.S.C. § 30109(a)(8) in which

to work on the fourth administrative complaint (MUR 7553) because only 103 non-shutdown

days had passed between the filing of that complaint on December 7, 2018 and the date this suit

was filed on April 24, 2019.

This workload data means that the fourth *TRAC* factor and the third *Common Cause*

factor, which focus on the availability of agency resources, reinforce the failure of the complaint

to plead unlawful delay.  With a busier docket, the Commission has harder choices to make when

allocating scarce resources to address pending matters that may have comparable importance.

In sum, all of these circumstances combine to establish that plaintiff's allegations do not

state a claim that the Commission has acted unlawfully in handling plaintiff's recent

administrative complaints, which allege a legally and factually complex scheme of FECA

violations over several election cycles.  Plaintiff's case should be dismissed.

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED ███████████████

### A.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). The court must view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of a genuine issue of material fact. *Defs. of Wildlife v. Dep't of Agric.,* 311 F. Supp. 2d. 44, 53 (D.D.C. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 – 59 (1970)). "To determine which facts are 'material,' a court must look to the substantive law on which each claim rests." *Id.* (citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986)). "A 'genuine issue' is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Id.* (citing *Celotex,* 477 U.S. at 322, and *Anderson*, 477 U.S. at 248).

---

12



███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████

## III.    CONCLUSION

For all the foregoing reasons, plaintiff Giffords has failed to state a claim on which relief

can be granted, and the Complaint should be dismissed. ████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)      Harry J. Summers
Acting General Counsel                       Assistant General Counsel
lstevenson@fec.gov                           hsummers@fec.gov

Kevin Deeley                                 /s/ Benjamin A. Streeter III
Associate General Counsel                    Benjamin A. Streeter III
kdeeley@fec.gov                              Attorney
                                             bstreeter@fec.gov

July 1, 2019                                 FEDERAL ELECTION COMMISSION
Re-filed December 6, 2019                    1050 First Street NE
                                             Washington, DC  20463
                                             (202) 694-1650

**UNDER SEAL**
**CONFIDENTIAL 30109(a)(12)(A) MATERIAL**

**CERTIFICATE OF SERVICE**

I, Benjamin A. Streeter III, an attorney of record, hereby certify that I caused a copy of the foregoing Motion and Memorandum in Support of Defendant Federal Election Commission's Motion to Dismiss, or in the Alternative, for Summary Judgment to be re-filed, both under seal and via redacted copy with the Clerk of the Court via its ECF system this 6th of December, 2019. I also certify that I served a copy of the unredacted version of this motion to counsel for the plaintiff via electronic mail delivery this date pursuant to their consent to such service.

/s/ Benjamin A. Streeter III
Benjamin A. Streeter III

UNDER SEAL
CONFIDENTIAL 30109(a)(12)(A) MATERIAL

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GIFFORDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 19-1192 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | PROPOSED ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

**[PROPOSED] ORDER**

Upon consideration of defendant Federal Election Commission's Motion to Dismiss, or in the Alternative, for Summary Judgment, and any opposition filed by plaintiff Giffords, it is hereby ORDERED that the Federal Election Commission's Motion to Dismiss is GRANTED, and plaintiff's Complaint is DISMISSED WITH PREJUDICE.

Dated: _____, 2019          _____
                                        The Honorable Emmet G. Sullivan
                                        United States District Judge