## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GIFFORDS, |  |
| Plaintiff, |  |
| v. | Civil Action No. 1:19-cv-1192 (EGS) |
| FEDERAL ELECTION COMMISSION, | **REDACTED[1]** |
| Defendant. |  |

### PLAINTIFF'S *REDACTED* CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff hereby moves for summary judgment because the undisputed material facts reveal that Defendant's failure to act on Plaintiff's administrative complaints is contrary to law. *See* 52 U.S.C. § 30109(a)(8)(A). There are no material facts in genuine dispute and Plaintiff is entitled to judgment as a matter of law. A supporting memorandum of points and authorities, a statement of material facts not in genuine dispute, a counter-statement of facts as to which there is a genuine dispute, supporting exhibits, and a proposed order accompany this motion.

---

[1] This Motion, the Memorandum of Points and Authorities in Support, and the accompanying exhibits contain information covered by the Protective Order in this case, Doc. 16, which Plaintiff has redacted, pursuant to this Court's order, *see* Dec. 23, 2019 Minute Order.

December 20, 2019

J. ADAM SKAGGS*
DAVID PUCINO*
Giffords Law Center to
Prevent Gun Violence
223 West 38th St. #90
New York, NY 10018
(917) 680-3473
askaggs@giffords.org
dpucino@giffords.org
* Admitted *Pro Hac Vice*

Respectfully submitted,

/s/ Adav Noti
ADAV NOTI (DC Bar No. 490714)
MARK P. GABER (DC Bar No. 988077)
MOLLY E. DANAHY (DC Bar No.
1643411)
Campaign Legal Center Action
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200
anoti@campaignlegal.org
mgaber@campainglegal.org
mdanahy@campaignlegal.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GIFFORDS, | |
| Plaintiff, | Civil Action No. 1:19-cv-1192 (EGS) |
| v. | REDACTED |
| FEDERAL ELECTION COMMISSION, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

J. Adam Skaggs*
David Pucino*
GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
223 West 38th St. #90
New York, NY 10018
(917) 680-3473
askaggs@giffords.org
dpucino@giffords.org

*Admitted *Pro Hac Vice*

Adav Noti (DC Bar No. 490714)
Mark P. Gaber (DC Bar No. 988077)
Molly E. Danahy (DC Bar No. 1643411)
CAMPAIGN LEGAL CENTER ACTION
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200
anoti@campaignlegal.org
mgaber@campaignlegal.org
mdanahy@campaignlegal.org

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INDEX OF EXHIBITS ............................................................................................... iv

INTRODUCTION ....................................................................................................... 1

FACTUAL AND PROCEDURAL HISTORY ............................................................ 2

LEGAL STANDARDS .............................................................................................. 5

   I.   Summary Judgment Standard ....................................................................... 5

   II.  Contrary to Law Standard ............................................................................ 6

ARGUMENT .............................................................................................................. 7

   I.   The Commission Has Failed to Act Expeditiously To Determine Whether ████ ████ FECA Was Violated. .......................................................... 7

      A.  Plaintiff's Administrative Complaints Are Credible. ................................. 8

      B.  The Allegations that the NRA Made Millions of Dollars of Illegal, Unreported, Excessive In-Kind Contributions to Candidates for Federal Office Constitute a Substantial and Ongoing Threat. ............................... 11

      C.  The Commission's Failure ████████████████████ ████████ Is Not Excused by Resource Constraints, Competing Priorities, or Lack of Available Information. ............................................ 12

      D.  The Underlying Complaints Do Not Raise Novel Issues. .......................... 17

      E.  The Commission's Delay Violates the "Rule of Reason," and Runs Contrary to Congress's Intent that the Commission Act Expeditiously. ...................................... 19

      F.  The Commission's Delay Prejudices Plaintiff and Gives Rise to the Appearance of Impropriety. ........................................................................ 20

   II.  Congress Created a Private Right of Action to Address Delay in Cases Like This. ......... 21

CONCLUSION............................................................................................................ 22

i

# TABLE OF AUTHORITIES

**Cases**

*Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 917 F. Supp. 2d 1 (D.D.C. 2012) .........23

*Autor v. Pritzker*, 740 F.3d 176 (D.C. Cir. 2014) ................................................................5

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) ...............................5

*Bowman v. Iddon*, 848 F.3d 1034 (D.C. Cir. 2017) ............................................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................5, 6

*Citizens for Percy '84 v. FEC*, Civ. A No. 84-2653,
    1984 WL 6601 (D.D.C. 1984) ...........................................................8, 9, 11, 14, 16, 17

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) ..........................................................22

*Common Cause v. FEC*, 489 F. Supp. 738 (D.D.C. 1980) ............................................6, 18

*\*DSCC v. FEC*, No. CIV.A. 95-0349-JHG,
    1996 WL 34301203 (D.D.C. Apr. 17, 1996) ........................................................ *passim*

*FEC v. Rose*, 806 F. 2d 1081 (D.C. Cir. 1986) ................................................................19

*In re Am. Rivers & Idaho Rivers United*, 372 F. 3d 413 (D.C. Cir. 2004) .......................19

*Kessenich v. Commodity Futures Trading Comm'n*, 684 F.2d 88 (D.C. Cir. 1982) .........20

*McCutcheon v. FEC*, 572 U.S. 185 (2014) .......................................................................12

*Potomac Electric Power Co. v. I.C.C.*, 702 F.2d 1026 (D.C. Cir. 1983) ............................8

*Shays v. FEC*, 424 F. Supp. 2d 100 (D.D.C. 2006) ........................................................5, 6

*\*Telecommunications Research & Action Center v. F.C.C.*,
    750 F. 2d 70 (D.C. Cir. 1984) ("*TRAC*") ..........................................................6, 7, 22

**Statutes**

52 U.S.C. § 30106(c) ............................................................................................................1

52 U.S.C. § 30107(a)(1) .......................................................................................................1

52 U.S.C. § 30107(a)(2) .......................................................................................................1

52 U.S.C. § 30107(a)(3) .......................................................................................................1

52 U.S.C. § 30107(a)(4) .......................................................................................................1

52 U.S.C. § 30107(a)(5) .......................................................................................................1

52 U.S.C. § 30109(a) ...........................................................................................................1

52 U.S.C. § 30109(a)(1) .......................................................................................................1

52 U.S.C. § 30109(a)(2) .................................................................................................1, 4, 5

52 U.S.C. § 30109(a)(3) .......................................................................................................1

52 U.S.C. § 30109(a)(4) .......................................................................................................1

52 U.S.C. § 30109(a)(4)(A)(i) ...................................................................1

52 U.S.C. § 30109(a)(6)...........................................................................2

*52 U.S.C. § 30109(a)(8)(A) ...............................................................2, 19

52 U.S.C. § 30109(a)(8)(C) .................................................................6, 21

**Rules Regulations**

Fed. R. Civ. P. 56(c) ...............................................................................6

11 C.F.R. § 111.9(a).................................................................................4

11 C.F.R. § 111.10-14..............................................................................1

**Other Authorities**

FEC, *Nat'l Rifle Ass'n Inst. for Legislative Action*,
   https://www.fec.gov/data/committee/C90013301/ ......................................11

FEC, *Press Release: Matthew Petersen to Depart Federal Election Commission*,
   https://www.fec.gov/
   updates/matthew-petersen-depart-federal-election-commission/ ..................4

Holtzman Vogel Josefiak Torchinsky PLLC, *Former FEC Chairman Matt Petersen Joins
   Holtzman Vogel Josefiak Torchinsky*, https://hvjt.law/news/former-fec-chairman-matt-
   petersen-joins-holtzman-vogel-josefiak-torchinsky/ .....................................4

MUR 7432 (John James for Senate), First General Counsel's Report (Mar. 18, 2019),
   https://eqs.fec.gov/eqsdocsMUR/19044473374.pdf...................................18

MUR 7167 (Blunt), First General Counsel's Report (June 2, 2017),
   https://eqs.fec.gov/eqsdocsMUR/18044441527.pdf...................................18

MUR 7124 (Katie McGinty for Senate), First General Counsel's Report (Mar. 1, 2017),
   https://eqs.fec.gov/eqsdocsMUR/17044414289.pdf...................................18

# INDEX OF EXHIBITS

Exhibit 1: Tillis, et al., Complaint

Exhibit 2: Tillis, et al., Amended Complaint

Exhibit 3: Rosendale Complaint

Exhibit 4: Rosendale Complaint Supplement

Exhibit 5: Hawley Complaint

Exhibit 6: Trump Complaint

Exhibit 7: Weintraub Statement

Exhibit 8: Q3 2019 Statistics

Exhibit 9: C. Kitcher Deposition Transcript Excerpts (30(b)(6) Representative)

Exhibit 10: J. Peterson Deposition Transcript Excerpts

**INTRODUCTION**

Almost 500 days ago, Plaintiff Giffords filed the first of four administrative complaints with the Federal Election Commission ("FEC" or "Commission"). Collectively, these complaints demonstrate with substantial evidence that the National Rifle Association ("NRA") violated federal law by illegally coordinating expenditures with candidates for federal office, thereby making millions of dollars of illegal, unreported, and excessive in-kind contributions, including up to $25 million in illegal contributions to the campaign of now-President Donald J. Trump.

There are four stages of enforcement under the Federal Election Campaign Act ("FECA") for complaints such as those filed by Plaintiff. *See* 52 U.S.C. § 30109(a); FEC Br. at 3-5. In the first stage, after the respondents are notified and given an opportunity to present written arguments, the FEC's Commissioners vote on whether the complaint provides reason to believe the law has been violated. 52 U.S.C. § 30109(a)(1)-(2). If at least four Commissioners vote to find that there is reason to believe a violation has occurred, the matter proceeds to the second stage of enforcement.[2] 52 U.S.C. § 30109(a)(2); *see also* FEC Br. at 4.

In the second stage, the FEC investigates the claims, including through subpoenaed documents and testimony. 52 U.S.C. §§ 30106(c), 30107(a)(1)-(5), 30109(a)(2), 11 C.F.R. § 111.10-14. Based on the evidence gathered and additional submissions from the respondents, the Commissioners vote to determine whether there is probable cause to believe a violation occurred. 52 U.S.C. 30109(a)(3)-(4); *see also* FEC Br. at 4-5. If probable cause is found, the Commission proceeds to the third stage of enforcement, which is an attempt to conciliate the matter with the respondents. 52 U.S.C. 30109(a)(4)(A)(i); *see also* FEC Br. at 5. Finally, if the respondents are

---

[2] Alternatively, the Commission may dismiss the case or determine there is no reason to believe a violation has occurred. *See* 52 U.S.C. § 30109(a)(1)-(2).

1

unwilling to conciliate, the Commission proceeds to the fourth stage of enforcement, which is to file a civil enforcement action in federal court. 52 U.S.C. § 30109(a)(6); *see also* FEC Br. at 5.

To ensure the FEC moves enforcement matters through these stages in a timely matter, Congress has provided that a complainant may seek relief from this Court if the FEC fails to act on a complaint within 120 days. 52 U.S.C. § 30109(a)(8)(A). Here, nearly 500 days have elapsed since Plaintiff filed its first administrative complaint, and the Commission has not ███████████ ████████████████████████████████████████████████████████████ ████████████████████████. The undisputed facts show that this delay is almost entirely attributable to ████████████████████████████████████████████. ███ ██████ to do so is contrary to law.

## FACTUAL AND PROCEDURAL HISTORY

Between August 16 and December 7, 2018, Plaintiff Giffords filed with the FEC four administrative complaints. Exs. 1-6 (Administrative Complaints). These complaints demonstrate that the NRA violated FECA by unlawfully coordinating expenditures with candidates for federal office by using a common vendor for advertising, thereby making millions of dollars of illegal, unreported, and excessive in-kind contributions, including up to $25 million in illegal contributions to now-President Donald J. Trump. *Id.* On April 24, 2019, 130 days after the filing of the last administrative complaint, and over 250 days after joining the initial complaint, Giffords filed this action against the Commission for unreasonably delaying action on the complaints in violation of 52 U.S.C. § 30109(a)(8)(A).

███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████. Kitcher Dep. 117:2-9. ███████████████████



████████████████████████████████████████████████████[3]

Peterson Decl. MUR 7427 ¶ 39. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████. Peterson Dep. 96:17-97:2.

█████████████████████████████████████████████████

████████.” Peterson Dep. 97:13-22. ████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████. Peterson Dep. 100:6-17. ██████████████████████████

█████████████████████████████████████████████████

██████.” Peterson Dep. 101:9-102:2. ███████████████████████. Kitcher

Dep. 126:9-22.

████████████████████████████████████████████████

████████████████████████████████████████████. Peterson

Dep. 91:22-92:13. ████████████████████████████████████

██████████████████████████. Peterson Dep. 110:8-17. █████████████

██████████████████. Peterson Dep. 108:17. ███████████████████

█████████████████████████████████████████████. Peterson Dep.

---

[3] A FGCR analyzes the legal and factual underpinnings of the complaint and the respondents' responses, and provides the enforcement division's recommendations as to whether the Commission should find reason to believe a violation has occurred. FEC Br. at 11-12, 25; Peterson Dep. 58:6-16. Once an FGCR is circulated to the Commission, the Commissioners conduct an electronic "tally vote" to either approve the FGCR's recommendations or to set them for consideration at a meeting of the Commissioners in executive session. Peterson Dep. at 67:24-68:12.

113:10-114:5. ██████████████████████████████████████████

██████████████████████████. Peterson Dep. 113:10-114:5. ██████████████

████████. Peterson Dep. 114:9-11.



████████████████.[4] *See* Peterson Dep. at 116:17-117:25; Kitcher Dep. at 143:22-144:2.

Commissioner Petersen ██████████ announced in August that he was leaving the FEC at the

end of that month, and in September it was announced that he had become a partner at the law firm

Holtzman, Vogel, Josefiak, Torchinsky PLLC, ████████████████████████████

██████████████. *See* FEC, *Press Release: Matthew Petersen to Depart Federal Election*

*Commission*, https://www.fec.gov/updates/matthew-petersen-depart-federal-election-

commission/ (last visited Dec. 20, 2019); Holtzman Vogel Josefiak Torchinsky PLLC, *Former*

*FEC Chairman Matt Petersen Joins Holtzman Vogel Josefiak Torchinsky*,

https://hvjt.law/news/former-fec-chairman-matt-petersen-joins-holtzman-vogel-josefiak-

torchinsky/ (last visited Dec. 20, 2019); *see also, e.g.,* ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████.

By statute, many of the actions taken by the FEC require a vote of four of the

commissioners. *See, e.g.*, 52 U.S.C. § 30109(a)(2); 11 C.F.R. § 111.9(a). Without a quorum of four

---

[4] The FEC did not disclose ██████ ████████████████████ to this Court or to
Plaintiff in any of its filings in this matter, ████████████████████████████
████████████. *See* Peterson Dep. at 116:17-117:25; Kitcher Dep. at 143:22-144:2.

Commissioners, almost no official business, including consideration of enforcement matters, can take place. *See, e.g.*, 52 U.S.C. § 30109(a)(2) (requiring vote of four commissioners to find reason to believe violation of FECA has occurred); FEC, Directive 10, https://www.fec.gov/documents/41/directive_10.pdf (last visited Dec. 20, 2019) (requiring chair to call a recess in absence of quorum). Although the FEC still had a quorum of commissioners █

██████████████████████████████████████████████████████████████████████████

██████████ until September 1, ████████████████████████████████████████

██████████████████████████████. Peterson Dep. 116:22-24; Kitcher Dep. 147:4-9.

## LEGAL STANDARDS

## I.    Summary Judgment Standard[5]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party." *Shays v. FEC*, 424 F. Supp. 2d 100, 109 (D.D.C. 2006). To establish a genuine issue of fact, the non-moving party cannot rely on "mere unsupported allegations or denials" but must support its

---

[5] Defendant also seeks to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). To withstand a challenge under Rule 12(b)(6), "a complaint must set forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must "accept[ ] as true all of the factual allegations contained in the complaint and draw[ ] all inferences in favor of the nonmoving party." *Autor v. Pritzker*, 740 F.3d 176, 179 (D.C. Cir. 2014) (quotation marks omitted). Moreover, "[a] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (first bracket added)).

opposition by "affidavits or other competent evidence setting forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324). "[O]n cross motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Id.* (relying on *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)). To meet its burden on summary judgment, each moving party must "inform[] the district court of the basis for its motion, and identify[] those parts of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 317; *see also* Fed. R. Civ. P. 56(c).

## II.    Contrary to Law Standard

Plaintiff is entitled to judgment as a matter of law where the undisputed facts show that the FEC has acted "contrary to law" by unreasonably delaying action on the underlying complaints. 52 U.S.C. § 30109(a)(8)(c). While FECA "does not require that an [enforcement action] be completed within a specific time period," *DSCC v. FEC*, No. Civ.A. 95-0349-JHG, 1996 WL 34301203, at *1 (D.D.C. Apr. 17, 1996), it does impose "an obligation to investigate complaints expeditiously." *Id.* at *4; *see also Common Cause v. FEC*, 489 F. Supp. 738, 744 (D.D.C. 1980) ("Where the issue before the Court is whether the agency's failure to act is contrary to law, the Court must determine whether the Commission has acted 'expeditiously.'").

In determining whether the Commission has acted "expeditiously," the court may look to "the credibility of the allegation, the nature of the threat posed, the resources available to the agency and the information available to it, as well as the novelty of the issues involved." *Common Cause*, 489 F. Supp. at 744. In addition, the court may consider the factors outlined in *Telecomm. Research & Action Ctr. v. FCC*, 750 F. 2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"):

(1) the time agencies take to make decisions must be governed by a "rule of reason[;]" (2) where Congress has provided a timetable or other indication of the

6

speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

Although the Commission's decision whether or not to investigate "is entitled to considerable deference, the failure to act in making such a determination is not." *DSCC*, 1996 WL 34301203, at *4.

## ARGUMENT

I.   **The Commission Has Failed to Act Expeditiously To Determine Whether** ███████ ███████████████████████████████ .

The Commission has failed to act expeditiously to determine whether ███████████ ██████ the National Rifle Association, its affiliates, the Trump campaign, and the respondent Senate campaigns violated FECA ███████████████████████ . "[T]he FEC's obligation is to act reasonably in processing administrative complaints." *Id.* Applying the *Common Cause* and *TRAC* factors, the Commission has failed to do so here. The underlying complaints are credible; the conduct described therein poses a substantial threat that goes to the heart of FECA's regulation of campaign finance activity; and the Commissioners ███████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ .

Nonetheless, although the underlying complaints in this matter have been pending for between twelve and sixteen months, the Commission has not yet ██████████████████████ ████████████████████████████████ . Further, the Commission has failed to take any meaningful action ███████████ ███████████████ . Such "excessive delay saps the public

confidence in an agency's ability to discharge its responsibilities." *Potomac Elec. Power Co. v. I.C.C.*, 702 F.2d 1026, 1034 (D.C. Cir. 1983), *supplemented*, 705 F.2d 1343 (D.C. Cir. 1983).

### A.    Plaintiff's Administrative Complaints Are Credible.

Plaintiff's administrative complaints are supported by substantial evidence demonstrating the credibility of the alleged FECA violations. In *Citizens for Percy '84 v. FEC*, Civ. A No. 84-2653, 1984 WL 6601, at *4 (D.D.C. Nov. 19, 1984), the court found that the Commission had failed to act reasonably on allegations of excessive contributions made in the form of coordinated expenditures because it did not make a reason to believe determination until five months after the complaint was filed. Applying the *Common Cause* and *TRAC* factors, the court found that the underlying complaints were credible because they contained "specific documentation of the amounts spent and the purposes of the spending, along with specific evidence of the linkage between the [person making the coordinated expenditure] and the [candidate] campaign." *Citizens for Percy*, at *3. So too here, where the evidence relied upon in Plaintiff's complaint includes, *inter alia*, the Commission's own records of the specific amounts of expenditures made by the NRA and its affiliates in support of the various candidates through the common vendor shell companies; publicly available information demonstrating the links between the shell companies used in the common vendor scheme, including records held by the states in which those companies are incorporated and do business; public statements by candidates and representatives of the common vendor; and records held by the Federal Communications Commission demonstrating the links between ad placements made by the common vendor shell companies on behalf of the NRA entities and the coordinated candidates, including evidence that the same individuals were placing ads on behalf of both entities. *See* Exs. 1-6 (Administrative Complaints). Nor has the Commission at any point "contended that the allegations [in the underlying matters] lack[] credibility." *DSCC*,

1996 WL 34301203, at *5; *see also Percy*, 1984 WL 6601, at *3 (finding the allegations credible

where "[t]he FEC makes no claim that the allegations were not believable").

 of Plaintiff's administrative complaints further

demonstrates their credibility. *See, e.g.*, *DSCC*, 1996 WL 34301203, at *5 (finding the underlying

allegations credible where ██████████████████████████████████████

████████████). When the Commission receives an administrative complaint, it is evaluated by the

enforcement division's Complaints Examination and Legal Administration team, which ████████

██████████████████████ takes into account the priority of the matter ████████████

████████, among other issues. Kitcher Dep. 26:21-27:25, 108:8-109:3; FEC Br. at 3.[6] Here, ████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████. The

FEC has refused to ██████████████████████████—asserting that the information

is protected by the "law enforcement," deliberative process, and attorney-client privileges, Kitcher

Dep. 33:13-34:3—but has ████████████████████████████████████████

██████████████████████████████████████████████████████████████.

Kitcher Dep. 122:23-123:22.

Additional evidence also supports the fact that ██████████   ██████████████.

The typical procedure is that after a complaint is filed and responses are received from the

---

[6] Matters are evaluated under the agency's Enforcement Priority System, and those determined to
be of "relatively higher priority" are assigned to the Enforcement Division and are activated once
all responses are received or the time to respond has elapsed. FEC Br. at 3 (citing FEC, *Guidebook
for Complainants and Respondents on the FEC Enforcement* Process, 10-11 (May 2012),
https://www.fec.gov/em/respondent_guide.pdf). An enforcement attorney is assigned, "as staff are
available and in consideration of case priority," to evaluate the complaint and to draft, in
coordination with supervisors, the FGCR. *Id.* at 4 (citing FEC, Responses to Questions from the
Committee on House Administration at 16, May 1, 2019), https://www.fec.gov/resources/cms-
content/docments/FEC_Response_to_House_Admin.pdf).

respondents, a matter is "activated and assigned . . . as staff are available and in consideration of

case priority." FEC Br. at 4; *see also* Peterson Dep. at 38:24-4 ("Typically a matter gets activated,

meaning that the complaint and the response have been submitted and we're not waiting on any

additional information. At that point the matter proceeds with a staff attorney."). But, "in some

cases where it's necessary to process matters more quickly, [the FEC] will commence work

before" activation. Kitcher Dep. 61:21-62:12; *id.* at 60:3-8 (stating that it is customary to start

drafting the FGCR before a response is received "[i]n a matter where we're actively trying to get

the case moving along as fast as we can"). Here, ████████████████████████

█████████████████████████████████████████████████████████████

██████, Peterson Dep. 29:8-12, ████████████████████████████████,

Peterson Dep. 29:8-12. Once a case is activated, a "post-activation meeting" is held between the

staff attorney and the second-level reviewer to discuss "the factual and legal issues of the case and

the legal analysis," after which the FGCR is drafted. Peterson Dep. 39:11-17. ██████████

█████████████████████████████████████████████████████████████

███████████████.[7] Petersen Dep. 47:13-18. ██████████████████

█████████████████████████████████████████████████████████████

██████. Peterson Dep. 51:20-22. ███████████████████████████████

████████████████████████████████████████████. Peterson Dep. 52:4-6.

Further, ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████.

Kitcher Dep. at 20:19-24. Indeed, the evidence shows that the complaints ███████████

---

[7] Matters are only "activated" once the FEC has received responses from the respondents named in the underlying matter. Peterson Dep. 38:24-39:4. Once a case is activated, a deadline is set for the circulation of the First General Counsel's Report. Peterson Dep. 45:7-10.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████.

**B.      The Allegations that the NRA Made Millions of Dollars of Illegal, Unreported, Excessive In-Kind Contributions to Candidates for Federal Office Constitute a Substantial and Ongoing Threat.**

The allegations contained in Plaintiff's administrative complaint constitute a substantial and ongoing threat to the integrity of the election system. Illegal and excessive coordinated contributions threaten the fundamental fairness of American elections, particularly where there is a likelihood that the named entities will repeat their illegal conduct in subsequent elections— something that is a particular risk with the NRA, given its longstanding major expenditures on political campaigns. *See Percy*, 1984 WL 6601, at *3 (finding that "the significance of the threat to the integrity of [an] election" posed by $300,000 in alleged illegal coordinated contributions reported as independent expenditures "should have been obvious," particularly where there was a "likelihood" that the illegal activity would continue); *DSCC*, 1996 WL 34301203, at *5 ("The threat to the electoral system is highlighted not only by the amounts of money involved and the impact upon close elections, but by the serious threat of recurrence."); *see also* FEC, *Nat'l Rifle Ass'n Inst. for Legislative Action*, https://www.fec.gov/data/committee/C90013301/ (last visited Dec. 20, 2019) (showing one NRA affiliate's election spending of more than $50 million since 2012). Not only did Plaintiff's complaints demonstrate that the NRA entities had made up to $35 million in excessive, illegal, and unreported campaign contributions to federal candidates, but they also demonstrated that the NRA entities continued to make such contributions even after ████

████████████████████████████████████████████████. *See, e.g.*, Ex. 3 (Rosendale Compl. ¶ 14-15) (documenting coordinated expenditures made by the NRA entities and Matt

Rosendale for Montana after ███████████████████████████); FEC Statement of

Material Facts ("SMF") ¶ 22, 24, 27, 29-30 (████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████).

Furthermore, the nature of the threat is substantial where, as here, the conduct alleged is

contrary to one of the principal purposes of FECA. *DSCC*, 1996 WL 34301203, at *5 (finding that

the underlying matter involved a substantial threat when it "involve[d] allegations that illegal

contributions are being used to influence elections"). Enforcing contribution limits serves one of

the principal purposes of FECA: limiting contributions to candidates as a means of preventing *quid*

*pro quo* corruption or its appearance. *See McCutcheon v. FEC*, 572 U.S. 185, 192 (2014) (plurality

op.). And Plaintiff's administrative complaints demonstrate that the NRA entities have engaged in

repeated and sustained violations of FECA's contribution limits by coordinating massive

expenditures through a common vendor scheme. Exs. 1-6 (Administrative Complaints). Nor,

again, has the Commission at any time "contested the substantial nature of the threat." *DSCC*, 1996

WL 34301203, at *5.

      C.     **The Commission's Failure ████████████████████████████
███████████████ Is Not Excused by Resource Constraints, Competing
Priorities, or Lack of Available Information.**

The Commission's failure ███████████████████████████████

████████████████████████████████████████████████████████████

| is not excused by resource constraints, competing priorities, or lack of available information. The

FEC correctly notes that it is "entitled to deference in the allocation of its resources to meet its

statutory obligations." FEC Br. at 18 (quoting *DSCC*, 1996 WL 34301203, at *5). But, "[w]hatever

deference an agency is due in resource allocation decisions, it is entitled to substantially less deference when it fails to take any meaningful action within a reasonable time period." *DSCC*, 1996 WL 34301203, at *5-*6 (declining to defer to the Commission's prioritization of resources where it fails to take "meaningful action ████████████████ within a reasonable time period"). Here, notwithstanding ███████████████████████████████████ ████████████████ and the FEC's statement to this Court that ████████████████████ ████████████████, FEC Br. at 12, ████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████ Kitcher Dep. 141:19-23.[8] Indeed, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████.

Kitcher Dep. 120:23-121:9, 125:2-12, 130:9-21, 141:19-23.

Although ████████████████████████████████████████, there is "no indication in the record, and the FEC has not so claimed, that a lack information" contributed to this delay. *DSCC*, 1996 WL 34301203, at *6. To the contrary, ██████████████████ ███████████████████████████████████. Peterson Dep. 73:6-74:8; 103:11-105:24; 107:11-14. While the Commission is obligated to wait for responses from the named parties to a complaint before making a reason to believe determination, ████████ ████████████████████████████████████, FEC SMF ¶ 80, and

<hr />

[8] Although ████████████████████████████████████████████ ████████████████████████. Peterson Dep. 96:17-97:2, 100:6-17, 110:8-17, 113:10-114:5, 117:11-19.

███████████████████████████████████████████. Furthermore, as discussed *supra*, the

underlying complaints contained evidence sufficient to establish the credibility of the allegations,

including substantial evidence that "could be verified from the FEC's own records." *Percy*, 1984

WL 6601, at *4.

    Not only has the FEC not explained *why* it ██████████████████████████

███████████████████████████████████. █████████████████████████

██████████████████████████████████████████████. Kitcher Dep.

131:15-22. ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ Peterson

Dep. 91:22-25, ███████████████████████████████████ Kitcher

Dep. 135:17-18. The witnesses ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████. Kitcher Dep.

134:24-150:22.[9] Although the FEC was willing to disclose that █████████████████

████████████████████████████████████████████████████

███████████████████████████████████████. Peterson Dep. 93:16-94:5. The FEC's

---

[9] The FEC also refused to provide any information about "██████████████████████████
███████████████████████████████████" and when asked to confirm that it was "the FEC's view that the
privilege extends to ███████████████████████████████████████████████████"
responded "yes." Kitcher Dep. 118:9-24.

counsel instructed the witness not to answer the question "█████████████████████ ██████████████ Peterson Dep. 93:11-14.

Notably, the FEC refused to disclose whether ███████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████. *See* Kitcher

Dep. 145:14-146:9 (FEC's counsel instructing witness not to answer whether ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████"). Ultimately, █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████. Peterson Dep. 108:17, 110:8-17, 113:10-114:5, 114:9-11.

The Commission's delay █████████████████████████ in these matters

contrasts significantly with other delay cases. The complaint in *FEC v. Rose* raised "novel and

complex issues," yet the Commission was able to █████████████████████████████

█████████████████████. 806 F. 2d 1081, 1082, 1091 (D.C. Cir. 1986). In *DSCC*, the

Commission delayed nearly two years in assigning the matter to an enforcement attorney, but again

was able ███████████████████████████████████████████████████████████████.

1996 WL 34301203, at *2. Similarly, in *Percy*, although the court found an unreasonable delay

when the Commission failed ███████████████████████████ until five months after

the complaint was filed, the Commission yet again was able to 

██████████████████████. 1984 WL 6601, at *1.

Moreover, the FEC's contention that the January 2019 government shutdown excuses its

delay in these matters is a red herring. ████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████ Kitcher Dep. 47:3-6, and ████████████████████████████

████████████████████████████████████. Peterson Dep. 47:13-18. Certainly, the

shutdown had no effect on ████████████████████████████████████████████

████████████████████.[10]

Likewise, the FEC's citation to its generally heavy workload as a justification for delay is

belied by the evidence. Chair Weintraub has publicly stated that

> [b]efore losing the quorum on September 1, the Commission was making progress
> to reduce its significant enforcement backlog (even despite the government
> shutdown that disabled the FEC for most of January). The year [2019] began with
> 344 matters on the enforcement docket, with 101 of those matters awaiting a
> decision requiring the participation of at least four Commissioners. By the time the
> quorum was lost in September, the backlog of cases pending before the
> Commission for a vote had been reduced from 101 to 63 matters. We resolved
> approximately 200 of the original 344 matters in the first eight months of the year.

Kitcher Dep. Ex. 9. The FEC confirmed that the sentiment and numbers in Chair Weintraub's

statement seemed correct. Kitcher Dep. 105:5-106:21.[11]

---

[10] Only one or two executive sessions would have been held by the commissioners in January but
for the shutdown, Kitcher Dep. 58:21-59:3, and following the shutdown "the executive sessions
were perhaps longer than they otherwise would have been" and "at least one session was added,"
56:17-21.

[11] In addition, the cited workload statistics demonstrate that the FEC's contention that its delay is
justified by its heavy enforcement docket is overstated. The statistics reflect that about a third of
the number of cases that are opened each year are "Dismissed Via ████████████████████
████████████████████████████████████. Kitcher Dep. 107:7-109:3. Moreover, most matters do not
make it very far through the statutory enforcement process. Only *three* matters have reached the

Finally, unlike in *TRAC*, the Commission has not "assured [the Court] that it is moving expeditiously" such that there is no need to determine whether it has unreasonably delayed. 750 F.2d 70, 80 (D.C. Cir. 1984); *see also DSCC*, 1996 WL 34301203, at *9 (declining to order the Commission to act within a specific time frame, despite finding that its delay in acting was contrary to law, because the Commission had acted expeditiously to advance the matter after the delay suit was filed). Instead, the Commission declined to disclose to this court that ████████████ ███████████████████████████████████████████████████. Nor can the Commission now make such assurances, because Commissioner Petersen's departure from the FEC ██████ ███████████████████████████████████████████ has deprived it of a quorum—a state of affairs that looks to remain unchanged for at least the near future. Thus, the Commission's failure to take meaningful action ████████    ████████████████ will continue indefinitely, vastly exceeding the 120 days contemplated by section 30109(a)(8).

### D.   The Underlying Complaints Do Not Raise Novel Issues.

Although the underlying complaints involve lengthy and detailed factual allegations regarding the nature of the common vendor scheme employed by the NRA and its affiliates, allegations about coordinated expenditures are not novel. *See Percy*, 1984 WL 6601, at *1 (finding that such allegations "appear to be the basis for much of the agency's workload"). The court in *Percy*, a case involving allegations of coordinated expenditures that was decided in 1984, explicitly

---

"probable cause" phase since 2013, and the number of closed investigations each year frequently is just a handful, and never higher than twelve since 2013. Only seventeen investigations have been commenced in 2019. Ex. 8 (2019 Q3 Statistics). And although the FEC's briefing implied that its inaction was connected to a budget proposal that included a decrease in staff, the FEC acknowledged at its 30(b)(6) deposition that those positions were already vacant and merely will not be backfilled, and "indeed [the FEC] added several enforcement attorneys recently." Kitcher Dep. 64:22-65:4, 65:11-12, 66:17-19. Certainly, the FEC's claim that it is busy is not a basis to dismiss the suit under Rule 12(b)(6), as the FEC contends. FEC Br. at 20.

found that although such allegations "involve[e] analysis of a number of factors, [they] are not novel." *Id.* at *4.The Commission cannot credibly argue that an activity for which regulations date back to 1977 constitutes a "novel" issue, *see id.* at *1, and indeed concedes that the underlying complaints raise "issues common to many FEC matters." FEC Br. at 18. The FEC's enforcement docket is replete with matters raising the same legal issues as plaintiff's complaints.  *See, e.g.,* MUR 7432 (John James for Senate), First General Counsel's Report (Mar. 18, 2019), https://eqs.fec.gov/eqsdocsMUR/19044473374.pdf (examining allegations of coordinated advertising activity between Senate campaign and outside entity); MUR 7167 (Blunt), First General Counsel's Report (June 2, 2017), https://eqs.fec.gov/eqsdocsMUR/18044441527.pdf (same); MUR 7124 (Katie McGinty for Senate), First General Counsel's Report (Mar. 1, 2017), https://eqs.fec.gov/eqsdocsMUR/17044414289.pdf (same).

In any event, the fact that a matter may involve a "lengthy and detailed investigation" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, "while relevant to determining whether an investigation has been conducted in a reasonable time frame," is not relevant to the Commission's failure ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮. *DSCC*, 1996 WL 34301203, at *6; *see also* Kitcher Dep. 99:6-16 ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. That is, the FEC cannot rely upon the fact that an *investigation* might be expansive in order to justify a refusal to ▮▮▮▮▮▮▮▮▮▮▮▮.[12]

---

[12] The novelty or complexity of the underlying issues also is not grounds to dismiss the case under Rule 12(b)(6), but rather one factor to be balanced in determining whether the Commission's delay has been unreasonable. *See Common Cause*, 489 F. Supp. at 744.

### E.     The Commission's Delay Violates the "Rule of Reason," and Runs Contrary to Congress's Intent that the Commission Act Expeditiously.

The Commission's delay is unreasonable. Although "Congress did not impose specific time constraints upon the Commission to complete final action, . . . it did expect that the Commission would fulfill its statutory obligations so that [FECA] would not become a dead letter." *DSCC*, 1996 WL 34301203, at *7. Thus, although courts have declined to find that the Commission must act on a complaint within 120 days or within an election cycle, *see FEC v. Rose*, 806 F.2d 1081, 1092 (D.C. Cir. 1986), this "is not the equivalent of unfettered FEC discretion to determine its own timeline." *DSCC*, 1996 WL 34301203, at *8.[13] This is because "the deterrent value of the Act's enforcement provisions are substantially undermined, if not completely eviscerated, by the FEC's failure to process administrative complaints in a meaningful timeframe." *Id.*; *see also In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004) (finding that an agency's unreasonable delay "signals the breakdown of regulatory processes") (internal quotation marks omitted). ███████████ failure to take any action on the underlying complaints ████████████████████████████████ has triggered just such a regulatory breakdown. *See infra* Part I.F & II.

---

[13] The FEC contends that this case must be dismissed under Rule 12(b)(6) because the 120-day period is a jurisdictional floor, and not a requirement that the agency actually complete its work in that timeframe. In support of this argument, the FEC correctly notes that courts have found longer periods of delay to be reasonable under the factual circumstances of other cases. FEC Br. at 15-16. As the FEC acknowledges, however, determining whether delay is reasonable requires courts to apply two fact-intensive balancing tests with a combined ten factors. *See id.* at 13-14 (citing *Common Cause* and *TRAC*). The fact that a delay suit under § 30109(a)(8)(A) *can* lose on the merits if filed more than 120 days after the administrative complaint does not remotely suggest that all such suits *must* fail as a matter of law. Were the FEC correct, the statute would be rendered meaningless. Nor is Plaintiff contending that the FEC must *complete* its work in 120 days. ████

### F.     The Commission's Delay Prejudices Plaintiff and Gives Rise to the Appearance of Impropriety.

Not only does the Commission's failure, in the face of substantial credible evidence, ██

███████████████████████████████ undermine public confidence in our elections, it also

encourages bad actors to continue to violate campaign finance laws. *See supra* Part I.B.

(demonstrating that the NRA continued to engage in the same alleged violations even after ███

████████████████████); *see also DSCC*, 1996 WL 34301203, at *8 ("[T]hreats to the

health of our electoral processes . . . require timely attention [and] should not be encouraged by

FEC lethargy . . . ."). As such, Plaintiff Giffords, which faces yet another election cycle in which

it must compete politically with the NRA, will be "harmed where it plays by the rules and the other

side does not." *DSCC*, 1996 WL 34301203, at *8.

Furthermore, whether or not there is any actual impropriety in the Commission's delay, the

particular circumstances of this case reasonably give rise to at least the appearance of impropriety,

further undermining the credibility of our campaign finance enforcement system. *See Kessenich v.

Commodity Futures Trading Comm'n*, 684 F.2d 88, 97 (D.C. Cir. 1982) (explaining that the

appearance of impropriety can pose a "concrete danger" to the perceived integrity of an agency

and the court).[14] Despite ████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████. Peterson Dep.

97:13-22, 101:9-102:2, 110:8-17, 113:10-114:5. This delay persisted until Commissioner Petersen

---

[14] In *Kessenich*, the D.C. Circuit granted a motion to disqualify an administrative respondent's counsel on appeal of an agency decision. The Court found that despite there being little evidence that respondent's counsel had obtained actual advantage due to his previous role as an agency employee handling the administrative complaint in question, disqualification was warranted due to the appearance of impropriety. 684 F.2d at 99.



deprived the Commission of a quorum to act ██████████ ██████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████. Peterson Dep. at 116:17-117:25; Kitcher Dep. at 143:22-144:2. In light of

the "significant potential harms from a credible threat to close electoral contests" by continued

violations by the NRA and its affiliates, *DSCC*, 1996 WL 34301203, at *8, and from the threat to

public faith in the Commission of even the appearance of impropriety, this Court should find the

Commission's failure to act unreasonable, and therefore contrary to law.

## II.    Congress Created a Private Right of Action to Address Delay in Cases Like This.

The Commission now lacks a quorum, with no sign that the President—████████████

████████████████████████████████████████████████—and Senate will act

anytime soon to fill the vacancies. Congress created a private right of action to ensure speedy

resolution of FEC enforcement matters to remedy situations in which the FEC is unwilling or

unable to act. Under FECA,

> [i]n any proceeding under this paragraph the court may declare that . . . the failure
> to act is contrary to law, and may direct the Commission to conform with such
> declaration within 30 days, failing which the complainant may bring, in the name
> of such complainant, a civil action to remedy the violation involved in the original
> complaint.

52 U.S.C. § 30109(a)(8)(C). The Commission's failure to ████████████████████ while it

still had a quorum ████████████████ was unreasonable and contrary to law as explained

above. That failure has been compounded by ████████████████████████████████████

████████████████████████████████ the lack of a quorum. And there

is no sign a quorum will be achieved any time in the near future—a committee hearing on a

nomination has not even occurred. The *only* way the serious allegations set forth in the

administrative complaints ███████████ will be investigated and adjudicated in any reasonable period of time is by this Court triggering FECA's private right of action. If this Court concludes that the Commission's failure to act has been unlawful, the Commission will be required to take action within 30 days. If the President and Senate use that opportunity to advance nominations to fill the vacant Commission positions, the Commission will have a quorum to determine whether to conform with this Court's order. If not, the lack of quorum will remain, the FEC will fail to conform with this Court's order, and Plaintiff will be authorized to file suit to enforce its administrative complaints. Notably, that outcome would *ease* the Commission's enforcement burden, and would avoid any concern about "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. If Plaintiff brings a civil action against the administrative respondents, the FEC can focus on other matters when and if it regains a quorum.

When Congress created a private right of action for cases of unreasonable delay, it sought to ensure that FEC dysfunction would not spell the end of enforcement of campaign finance laws. Whether that dysfunction happens because of agency neglect, improper partisan political influence, or the refusal of the President and Senate to ensure that the Commission has the quorum necessary to act, FECA's private right of action serves to ensure that our campaigns do not become a law-free zone.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment should be granted, and the FEC's motion to dismiss or in the alternative for summary judgment should be denied.[15]

---

[15] Plaintiff respectfully requests that the Court retain jurisdiction over this matter until Defendant takes final agency action with respect to Plaintiff's administrative complaints. *Cobell v. Norton*, 240 F.3d 1081, 1109 (D.C. Cir. 2001) (noting district court's discretion to "retain jurisdiction until

Dated: December 20, 2019                    Respectfully submitted,

J. ADAM SKAGGS*                             /s/ Adav Noti
DAVID PUCINO*                               ADAV NOTI (DC Bar No. 490714)
Giffords Law Center to                      MARK P. GABER (DC Bar No. 988077)
Prevent Gun Violence                        MOLLY E. DANAHY (DC Bar No. 1643411)
223 West 38th St. #90                       Campaign Legal Center Action
New York, NY 10018                          1101 14th Street NW, Suite 400
(917) 680-3473                              Washington, DC 20005
askaggs@giffords.org                        (202) 736-2200
dpucino@giffords.org                        anoti@campaignlegal.org
                                            mgaber@campaignlegal.org
*Admitted *Pro Hac Vice*                    mdanahy@campaignlegal.org


                    *Counsel for Plaintiff*

---

a federal agency has complied with its legal obligations" and to "compel regular progress reports
in the meantime"); *Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 917 F. Supp. 2d 1, 3 (D.D.C.
2012) (noting that court may retain jurisdiction in "cases alleging unreasonable delay of agency
action").