# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GIFFORDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 19-1192 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | REPLY AND OPPOSITION |
| | ) | |
| Defendant. | ) | |

## FEDERAL ELECTION COMMISSION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

January 10, 2020

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

/s/ Seth Nesin
Seth Nesin
Attorney
snesin@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC  20463
(202) 694-1650

# TABLE OF CONTENTS

**Page**

BACKGROUND ...................................................................................................2

ARGUMENT.....................................................................................................12

I.      THIS CASE SHOULD BE DISMISSED UNDER RULE 12(b)(6) OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT SHOULD BE GRANTED TO THE COMMISSION, ████████████████████ ████████████.......................................................................................12

      A.     Legal Standards Under Federal Rules 12(b)(6) and 56 ....................12

      B.     ████████████████████████████████.....................13

                1.    ████████████████████████████████████████.....................................14

                2.    ███████████████████████████████.....................19

                3.    ████████████████████████████.................22

                4.    ███████████████████████████.............24

      C.     ████████████████████████████████.....................24

                1.    ███████████████████████████████████.....................24

                2.    ████████████████████████████████████████.....................25

3. ██████████████████████████████████.............................26

4. ████████████████████████████████████
████████████████.....................................28

II.   CONCLUSION..........................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Hosp. Ass'n v. Price*, 867 F.3d 160 (D.C. Cir. 2017)............................................ 24, 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................ 12

*Citizens for Percy '84 v. FEC*, 1984 WL 6601 (D.D.C. Nov. 19, 1984)............................... 21, 23

*Citizens for Responsibility & Ethics in Wash. v. FEC*,
   892 F.3d 434 (D.C. Cir. 2018) ................................................................. 23

*Citizens for Responsibility & Ethics in Wash. v. FEC*,
   299 F. Supp. 3d 83 (D.D.C. 2018) ............................................................. 25

*Common Cause, et al. v. FEC,* 489 F. Supp. 738 (D.D.C. 1980) .................................... 12, 13, 22

*Democratic Senatorial Campaign Comm. v. FEC*, 1996 WL 34301203
   (D.D.C. Apr. 17, 1996).......................................................................... 19, 21

*Diamond v. Atwood*, 43 F.3d 1538 (D.C. Cir. 1995) .................................................. 12

*FEC v. Rose*, 806 F.2d 1081 (D.C. Cir. 1986)................................................. 15, 19, 21

*In re Barr Labs., Inc.*, 930 F.2d 72 (D.C. Cir. 1991)................................................. 20

*Level the Playing Field v. FEC*, 381 F. Supp. 3d 78 (D.D.C. 2019) ................................25-26

*Loving v. Dept. of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) ..................................... 21

*Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692 (D.C. Cir. 1974) ........................... 25

*Nat'l. Right to Work Comm. v. FEC*, No. 84-2955, slip op. (Oct. 31, 1984)........................... 22

*Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996)............................................................ 28

*Sierra Club v. Jackson*, 648 F.3d.848 (D.C. Cir. 2011)............................................... 12

*Telecom. Research & Action Ctr. v. FCC,* 750 F.2d 70
   (D.C. Cir. 1984)..................................................................................... 13, 14

**Statutes and Regulations**

52 U.S.C. § 30106(a)(1) ................................................................................................ 28

52 U.S.C. § 30109(a)(1) ................................................................................................ 29

52 U.S.C. § 30109(a)(2) ................................................................................................ 29

52 U.S.C. § 30109(a)(3) ................................................................................................ 29

52 U.S.C. § 30109(a)(4)(A)(i) ....................................................................................... 29

52 U.S.C. § 30109(a)(4)(B)(i) ....................................................................................... 29

52 U.S.C. § 30109(a)(4)(C) ........................................................................................... 18

52 U.S.C. § 30109(a)(6)(A) ........................................................................................... 29

52 U.S.C. § 30109(a)(8) ................................................................................... 2, 12, 25, 28

52 U.S.C. § 30109(a)(8)(C) ..................................................................................... 25, 26

52 U.S.C. § 30109(a)(12) ............................................................................................... 29

52 U.S.C. § 30109(d) .................................................................................................... 18

29 C.F.R. § 1601.28 ....................................................................................................... 27

**Miscellaneous**

Fed. R. Civ. P 12(b)(6) ................................................................................................. 12

Fed. R. Civ. P. 56(c) .................................................................................................... 12

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| GIFFORDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 19-1192 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | INDEX OF EXHIBITS |
| | ) | |
| Defendant. | ) | |

**INDEX OF EXHIBITS ACCOMPANYING FEDERAL ELECTION COMMISSION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Exh. 1: FEC's Counter-Statement of Disputed Facts

Exh. 2: Declaration of Charles Kitcher

Exh. 3: Excerpts of Transcript of Deposition of Jonathan Peterson

Exh. 4: Excerpts of Transcript of 30(b)(6) Deposition of FEC Through Its Designee Charles Kitcher

Exh. 5: *Nat'l. Right to Work Comm. v. FEC*, No. 84-2955, slip op. (Oct. 31, 1984)

The Federal Election Commission ("FEC" or "Commission") has moved to dismiss this case for failure to state a claim upon which relief can be granted, and alternatively for summary judgment, because plaintiff Giffords cannot prevail in its challenge to the FEC's purported failure to timely act upon four administrative complaints.  (*See* Mem. in Supp. of FEC's Mot. to Dismiss, or in the Alternative, for Summ. J. ("FEC Mem.") (Dec. 6, 2019) (Docket No. 42).).

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

Plaintiff now focuses its case on the claim that the Commissioners have violated the law by not proceeding further since that time. ███████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Plaintiff fails to establish that the Commission's ordering of priorities, including closing a number of other complex matters involving the 2016 presidential candidates and matters involving foreign national allegations, was unreasonable.

There has been no unreasonable delay here under the deferential standards of review, particularly because the proper inquiry is based on the totality of what has transpired since the administrative complaints were filed in the latter half of 2018.  The agency has lost a quorum to

proceed with the matters, but the court's inquiry is not limited to the relatively short time period since that time, and only the President and Congress can remedy that problem. Even after taking unprecedented discovery into the agency's decision-making on these matters, plaintiff has failed to show that the agency's diligent overall handling of the matters has been contrary to law under 52 U.S.C. § 30109(a)(8). Thus, even if the Court finds that plaintiff has stated a claim, it should grant summary judgment to the Commission and deny it to Giffords.

[redacted]

**BACKGROUND**

[redacted] (FEC Mem. at 10-12; Peterson Dep. 19:4-19:25, FEC Ex. 3.)

Plaintiff now attempts to add to the record following the Rule 56(d) discovery it sought, but it presents facts that are in some respects incomplete or misleading.  (Pl.'s Mem. of P&A in Support of Cross Mot. Summ. J. and Opp'n to Def.'s Mot. to Dismiss or in the Alternative for Summ. J. ("Giffords Mem.") at 2-5 (Docket No. 45).)  Though plaintiff has failed to contravene the Commission's showing that summary judgment should be awarded to it based solely on ▮▮ ▮▮▮▮▮ and public records, supplemental testimony responsive to plaintiff's submissions is provided herewith, along with an update of events subsequent to July 1.  (*See* Declaration of Charles Kitcher ("Kitcher Decl."), FEC Ex.2.)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ (Kitcher Decl. ¶ 6.) ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ (Kitcher Dep.at 35:4-36-7, FEC Ex. 4.) ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ (*Id.*.)[1] ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮| (Kitcher Decl. ¶ 6.)

---

[1]    The agency sets as a goal having a case activated and formally assigned to a staff attorney within 90 days of having all responses to a complaint received, but by spring of 2019 was able to do so in only two-thirds of cases.  (Pl. Exh. 8 at 3.)



(Kitcher

Decl. ¶ 6.) ███████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████ (Peterson Dep. 37:4-38:16.)  His assignments as of

mid-September included: (1) drafting two major First General Counsel's Reports analyzing

whether the two major 2016 presidential campaigns and dozens of political party committees had

committed violations in connection with joint fundraising activity;[2] (2) drafting a First General

Counsel's Report analyzing two separate matters concerning whether a purported commercial

services provider was in fact operating as an unregistered political committee;[3] (3) an extensive

investigation of an entity found to have committed violations of FECA's registration and

reporting requirements for political committees;[4] and (4) investigation of a candidate's failure to

file a statement of candidacy and to disclose in-kind contributions and include disclaimers in

connection with a radio show.[5]

---

[2]      MUR 7304 (Hillary Victory Fund), https://www.fec.gov/data/legal/matter-under-review/7304/;
MUR 7331 (Hillary Victory Fund), https://www.fec.gov/data/legal/matter-under-review/7331/; MUR 7339
(Trump Victory), https://www.fec.gov/data/legal/matter-under-review/7339/; MUR 7597 (Texas
Democratic Party), https://www.fec.gov/data/legal/matter-under-review/7597/; MUR 7598 (Democratic
Party of South Carolina), https://www.fec.gov/data/legal/matter-under-review/7598/; MUR 7600 (Utah
State Democratic Committee), https://www.fec.gov/data/legal/matter-under-review/7600/.

[3]      MUR 7309 (CrowdPAC, Inc.), https://www.fec.gov/data/legal/matter-under-review/7309/; MUR
7399 (CrowdPAC, Inc.), https://www.fec.gov/data/legal/matter-under-review/7399/.

[4]      MUR 6538R (Americans for Job Security), https://www.fec.gov/data/legal/matter-under-
review/6538R/.

[5]      MUR 7073 (Meluskey for US Senate), https://www.fec.gov/data/legal/matter-under-
review/7073/.



[redacted] (Peterson Dep. at 28:7-13, 32:24-33:18.)

[redacted] (Peterson Dep. 29:10-12.) [redacted] (*Id.*)

[redacted] (*Id.*) [redacted]

[redacted] (*Id.*) All told, the administrative complaints with amendments and supplements are 501 pages long. (Pl. Exhs. 1-6.) [redacted] (Kitcher Decl.¶ 4.) [redacted]



(Peterson Dep. 40:4-40:10.)

In May 2019, the agency was diligently working through its enforcement docket, including many of the complaints that it received during the historically high fiscal year 2018. (FEC Facts 107.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Kitcher Decl.¶ 9.)  The Executive Session days typically last around five hours, sometimes longer.  (Peterson Dep. 95:21-96:5.)  Between its meeting on April 25, 2019 and the end of the May 9 meeting, the agency closed seventeen MURs, including one involving allegations that Paul Manafort had orchestrated a scheme to illegally funnel contributions from a political party in Ukraine to federal candidates.[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6]     MUR 7272 (Party of Regions), https://www.fec.gov/data/legal/matter-under-review/7272/ (alleged scheme of foreign national contributions by Paul Manafort); MUR 7529 (Molly C. Braswell), https://www.fec.gov/data/legal/matter-under-review/7529/; MUR 7517 (Mast for Congress), https://www.fec.gov/data/legal/matter-under-review/7517/; MUR 7509 (Tim Ryan for Congress), https://www.fec.gov/data/legal/matter-under-review/7509/; MUR 7499 (Cristina McNeil for Congress), https://www.fec.gov/data/legal/matter-under-review/7499/; MUR 7489 (Diehl for U.S. Senate), https://www.fec.gov/data/legal/matter-under-review/7489/; MUR 7488 (The Friends of Tracy Mitrano Committee), https://www.fec.gov/data/legal/matter-under-review/7488/; MUR 7487 (Courtney Tritch), https://www.fec.gov/data/legal/matter-under-review/7487/; MUR 7483 (Leonard for Minnesota), https://www.fec.gov/data/legal/matter-under-review/7483/; MUR 7481 (Matt Rosendale for Montana), https://www.fec.gov/data/legal/matter-under-review/7481/; MUR 7462 (Bob Rackleff for Congress Campaign), https://www.fec.gov/data/legal/matter-under-review/7462/; MUR 7440 (The New Pac), https://www.fec.gov/data/legal/matter-under-review/7440/; MUR 7439 (Philip A. Hart Democratic Club), https://www.fec.gov/data/legal/matter-under-review/7439/; MUR 7417 (Indivisible Washington's 8th District), https://www.fec.gov/data/legal/matter-under-review/7417/; MUR 7376 (Charlotte County Republican Committee), https://www.fec.gov/data/legal/matter-under-review/7376/; MUR 7225 (Jack Wu),

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ (Peterson Dep. 75:4-76:6;

Kitcher Dep. 111:8-117:20.[7]) █████████████████████████████████

██████████████████████████ (Peterson Dep. 81:13-81:21, 82:10-83:4.)

███████████████████████████████████████████████

██████████████████████████████████████ (Kitcher Decl. ¶ 12.)

Between May 10, 2019 and the end of the May 23, 2019 meeting, the agency closed seven

MURs.[8] █████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ (Peterson Dep. 96:17-

97:2.) ████████████████████████████████████████████████

---

https://www.fec.gov/data/legal/matter-under-review/7225/; MUR 7022 (Bernie 2016),
https://www.fec.gov/data/legal/matter-under-review/7022/.

[7]      Commissioners regularly have such deliberations involving substantive issues in relation
to timing considerations, including determinations such as whether to abate matters for a related
criminal proceeding, defer voting on matters pending a court decision on a related issue, expedite
matters in light of statute of limitations concerns, or consider together matters presenting similar
legal issues but different respondents.

[8]      MUR 7586 (International Council of Shopping Centers, Inc.),
https://www.fec.gov/data/legal/matter-under-review/7586/;  MUR 7505 (End Citizens United),
https://www.fec.gov/data/legal/matter-under-review/7505/;  MUR 7457 (Theresa Gasper for
Congress), https://www.fec.gov/data/legal/matter-under-review/7457/;  MUR 7435 (David Vitter
for U.S. Senate), https://www.fec.gov/data/legal/matter-under-review/7435/;   MUR 7418 (Fuse
Washington), https://www.fec.gov/data/legal/matter-under-review/7418/;  MUR 7287 (Russell
C. Fagg), https://www.fec.gov/data/legal/matter-under-review/7287/;  MUR 7267 (Hawley for
Missouri), https://www.fec.gov/data/legal/matter-under-review/7267/.



(Peterson Dep. 108:18-20, 110:21-111:6, 120:17-122:3.)

(Kitcher Dep. 122:7-124:6.)

(Kitcher Decl. ¶ 13.)

Between May 24, 2019 and the end of June 6, 2019, the agency closed thirteen MURs, including five overlapping matters alleging a variety of illegal coordination activity between Hillary Clinton's presidential campaign and Correct the Record PAC.[9]

(Kitcher Dep. 125:2-125:12.)

(Peterson Dep. 103:11-105:13.)

---

[9]    MUR 7193 (Correct the Record), https://www.fec.gov/data/legal/matter-under-review/7193/; MUR 7160 (Hillary For America, et al.), https://www.fec.gov/data/legal/matter-under-review/7160/; MUR 7146 (Correct the Record), https://www.fec.gov/data/legal/matter-under-review/7146/; MUR 7097 (Correct the Record PAC), https://www.fec.gov/data/legal/matter-under-review/7097/; MUR 6940 (Correct the Record PAC), https://www.fec.gov/data/legal/matter-under-review/6940/; MUR 7552 (Scholten4Iowa Campaign Committee), https://www.fec.gov/data/legal/matter-under-review/7552/; MUR 7534 (William P. Huizenga), https://www.fec.gov/data/legal/matter-under-review/7534/; MUR 7416 (Unknown Respondents),  https://www.fec.gov/data/legal/matter-under-review/7416/; MUR 7399 (CrowdPAC, Inc.), https://www.fec.gov/data/legal/matter-under-review/7399/; MUR 7309 (CrowdPAC, Inc.), https://www.fec.gov/data/legal/matter-under-review/7309/; MUR 7264 (Todd Rokita), https://www.fec.gov/data/legal/matter-under-review/7264/; MUR 7263 (I Like Luke), https://www.fec.gov/data/legal/matter-under-review/7263/; MUR 7221 (Mepco Holdings, LLC), https://www.fec.gov/data/legal/matter-under-review/7221/.



(Kitcher Dep. 126:16-126:22.)

(Kitcher Decl. ¶ 14.)   Between June 7, 2019 and the end of the June 20, 2019 meeting, the agency closed 8 MURs.[10]

(Kitcher Dep. 130:9-131:14.)

(Kitcher Decl. ¶ 15.)   A MUR was closed at the meeting.[11]

(Kitcher Dep. 141:19-23, Peterson Dep. 103:11-105:13.)

(Kitcher Decl. ¶ 16.)   Between June 28, 2019 and the end of the July 11, 2019 meeting, the agency closed six MURs, including one alleging that two

---

[10]     MUR 7492 (Friends of Ben McAdams), https://www.fec.gov/data/legal/matter-under-review/7492/; MUR 7461 (Julio Gonzalez for Congress), https://www.fec.gov/data/legal/matter-under-review/7461/; MUR 7451 (Ring Power Corporation), https://www.fec.gov/data/legal/matter-under-review/7451/; MUR 7421 (Cramer for Senate), https://www.fec.gov/data/legal/matter-under-review/7421/; MUR 7391 (Jason Crow for Congress), https://www.fec.gov/data/legal/matter-under-review/7391/; MUR 7286 (Indivisible Kentucky, Inc.), https://www.fec.gov/data/legal/matter-under-review/7286/; MUR 7073 (Melusky for U.S. Senate), https://www.fec.gov/data/legal/matter-under-review/7073/; MUR 6865 (Jose Susumo Azano Matsura), https://www.fec.gov/data/legal/matter-under-review/6865/.

[11]     MUR 7293 (Zinke for Congress), https://www.fec.gov/data/legal/matter-under-review/7293/.

foreign nationals and an American citizen engaged in a scheme to funnel millions of dollars in

foreign money to the NRA and an associated entity for the purpose of financing independent

expenditures.[12] ████████████████████████████████████████████████████

████████████████████████████████ (Kitcher Decl.¶ 16; Kitcher Dep. 143:22-144:2.)

Vice Chairman Petersen subsequently resigned his position, leaving the Commission with only

three sitting Members and unable to constitute a quorum for purposes of making enforcement

determinations. (Kitcher Decl.¶ 17.)

During the time between the meeting on April 25, 2019 and the meeting on July 11,

2019, the FEC thus closed a total of 52 MURs, some of which were high profile and/or involved

complex legal or factual scenarios.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ In the third quarter of the

agency's 2019 fiscal year, from April 1 through June 30, the agency commenced fourteen

investigations.  (Pl. Exh. 8 at 4.)  That is the same or more, and in some cases three times more,

than the Commission opened in the entire fiscal *years* in 2013-2017.  (*Id.*)  In the next quarter,

from July 1 through September 30, Commissioners voted to open *another* fourteen

investigations.  (Q4 Report at 4.)  For the complete fiscal year ending in September 2019, the

---

[12]      MUR 7314 (NRA), https://www.fec.gov/data/legal/matter-under-review/7314/; MUR
7493 (Committee to Elect Suraj Patel), https://www.fec.gov/data/legal/matter-under-
review/7493/; MUR 7432 (John James for Senate, Inc.), https://www.fec.gov/data/legal/matter-
under-review/7432/; MUR 7412 (Denver Metro Chamber Leadership Foundation),
https://www.fec.gov/data/legal/matter-under-review/7412/; MUR 7336 (Mulvaney for
Congress), https://www.fec.gov/data/legal/matter-under-review/7336/; MUR 7292
(Representative Clifford Stearns), https://www.fec.gov/data/legal/matter-under-review/7292/.

Commission commenced 31 investigations, a number that is between approximately two to eight

times as many investigations as were opened in the preceding six fiscal years.  (*Id.*)  The agency

also concluded 84 conciliation negotiations (*id.*), the method preferred by Congress for

remedying violations of FECA, in fiscal year 2019, the most since 2007 (Kitcher Decl. ¶ 26.)

The conciliation agreements led to approximately $2.1 million in civil penalties, the most since

fiscal year 2008.  (FEC Enforcement Statistics 1997-2019,

https://transition.fec.gov/press/bkgnd/EnforcementStatistics.shtml (last updated Oct. 17, 2019.)

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████  After the experience of a historic amount of incoming matters during fiscal year 2018 and

a lower number of budgeted full-time employees at the agency early in fiscal year 2019 (FEC

Facts 107-09), ███████████████████████████████████████████

███████████████████████████████████████████  In December 2018 and

early 2019, ███████████████████████████████████████████████

the agency diverted resources to the Enforcement Division through the hiring of additional staff

attorneys, despite the agency's overall plan not to backfill ten full-time equivalent positions.

(Kitcher Dep. 62:13-63:9, 64:6-66:10.)

**ARGUMENT**

## I.      THIS CASE SHOULD BE DISMISSED UNDER RULE 12(b)(6) OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT SHOULD BE GRANTED TO THE COMMISSION, ███████████████████████████████████████ ███████████████████████████████████████████████

### A.      Legal Standards Under Federal Rules 12(b)(6) and 56

As the Commission explained, dismissal of plaintiff's case is appropriate where,

accepting the factual allegations in the court complaint as true and drawing all reasonable

inferences in the plaintiff's favor, the allegations fail as a matter of law to state a claim on which

relief can be granted.  *See* FEC Mem. at 13; Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009); *Sierra Club v. Jackson*, 648 F.3d. 848, 854 (D.C. Cir. 2011); *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 558 (2007) ("A claim must be dismissed "when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief.").  In the alternative,

summary judgment is appropriate when the evidence shows that "there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."  *See*

FEC Mem. at 23; Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986);

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).

Whether the Court is considering the motion to dismiss or the cross-motions for summary

judgment, the Court must determine whether the Commission has acted "contrary to law" in

handling the administrative matters.  52 U.S.C. § 30109(a)(8).  As the Commission discussed in

its opening brief (FEC Mem. at 13-14), that determination involves an examination of four

factors articulated in *Common Cause v. FEC*:  "'[1] the credibility of the allegation, [2] the

nature of the threat posed, [3] the resources available to the agency, and [4] the information

available to it, as well as the novelty of the issues involved.'"  489 F. Supp. 738, 744 (D.D.C.

1980).  But the Court should also consider the six factors announced in *Telecommunications*

*Research & Action Center v. FCC*:

> (1) the time agencies take to make decisions must be governed by a
> rule of reason; (2) where Congress has provided a timetable or
> other indication of the speed with which it expects the agency to
> proceed in the enabling statute, that statutory scheme may supply
> content for this rule of reason; (3) delays that might be reasonable
> in the sphere of economic regulation are less tolerable when human
> health and welfare are at stake; (4) the court should consider the
> effect of expediting delayed action on agency activities of a higher
> or competing priority; (5) the court should also take into account
> the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency
> lassitude in order to hold that agency action is unreasonably
> delayed.

750 F.2d 70, 80 (D.C. Cir. 1984) (citations and internal quotation marks omitted) ("*TRAC*").

**B.** ████████████████████████████████████████████
████████████████████████████████████████

As the court of appeals has explained, the first factor to be considered in cases like this is

that "the time agencies take to make decisions must be governed by a rule of reason."  *TRAC*,

750 F.2d at 80 (internal quotation marks omitted). ██████████████████████████████

████████████████████████████████████████████████ (FEC Mem. at

14-27.)  Plaintiff now appears to suggest a more stringent standard by which the Court should

evaluate the Commission's actions – "whether the Commission has acted 'expeditiously.'"

(Giffords Mem. at 6-7 (quoting *Common Cause*, 489 F. Supp. at 744); *see also* Giffords Mem. at

19.)  But the D.C. Circuit in *TRAC* made clear that the proper standard was reasonableness, not

expeditiousness.  *TRAC*, 750 F.2d at 80.   And even the district court opinion on which plaintiff

relies — an opinion that predated *TRAC* — did not suggest that expeditiousness was one of the

factors courts should be consider in this context.  *See Common Cause*, 489 F. Supp. at 744.  This

Court should decline plaintiff's invitation to ratchet up the standard for what constitutes lawful

agency action.

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███ .

████████████████████████████████████████

███████████████████████████████ Plaintiff does not dispute that it initiated four

complex administrative matters in the latter half of 2018 identifying numerous respondents.

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████ (FEC Mem. at 14-27.)

1.  ████████████████████████████████████
    ████████████████████████████████████

As an initial matter regarding timing, a key factor indicating that the Commission's handling of these matters has been lawful — and one that plaintiff does not dispute — is that there is no "timetable or other indication," *TRAC*, 750 F.2d at 80, governing how quickly the Commission must act on administrative enforcement complaints.  (FEC Mem. at 15-16.)  Indeed, the court of appeals has made clear that the Commission is not required to act within the 120-day jurisdictional threshold for bringing a delay suit, nor even within a two-year election cycle.  *FEC v. Rose*, 806 F.2d 1081, 1091-92 (D.C. Cir. 1986).  Thus, the proper timing standard is the general one of reasonableness.

Although the Commission's reasonableness is properly judged in total, ███████████

███████████████████████████████████████████████████████████████

███████████████████████████████████ (*See* Giffords Mem. at 2-4,

13-16 (focusing almost exclusively on the period █████████████████████).)  But

plaintiff's criticisms of the Commission during that period lack merit, and ██████████

███████████████████████████████████████████████████████████████

███████████████

     █████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ (Giffords Mem. at 9),

████████████████████████████████████████████████████

█████████████ (*id.* at 11).  ██████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ (*Id.* at 10.)  ██████████



[redacted] (Peterson Dep. 28:8-12.). [redacted] (Kitcher Decl.¶ 6.) [redacted] (Kitcher Dep. 41:22-25; FEC's Statement of Material Facts Not in Genuine Dispute ("FEC Facts") ¶¶ 37, 57, 77, 92.) [redacted] (Peterson Dep. 51:20-52.3; 52:4-6.) [redacted]

What plaintiff does focus on, however, is its allegation that [redacted] (Giffords Mem. at 11.) [redacted]



[redacted] (Giffords Mem. at 3, 13) is a superficial analysis that misses the point. [redacted] Commissioner Petersen left the agency at the end of August 2019. (Giffords Mem. at 4.)[13] [redacted]

13 [redacted]

██████████████████████████████████████████████████

██████████ (Giffords Mem. at 11); ████████████████████████

████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Plaintiff provides no support for its assertion that

"Congress created a private right of action to ensure speedy resolution of FEC enforcement

matters to remedy situations in which the FEC is … unable to act."  (Giffords Mem. at 21.)  And

plaintiff presents no reason to believe that Congress contemplated the current situation when

passing FECA more than 40 years ago.

The Commission is not responsible for the current lack of quorum or for any resulting

inaction.  Congress and the President could fill the open positions at the agency, some of which

have been vacant for years, but to date they have not done so.  If Congress is concerned with a

lack of enforcement by the FEC, then it has the power to fill the vacancies on the Commission.

On the other hand, if Congress is content to allow the current pause in administrative

enforcement matters, then the Court should take that fact into consideration in determining

whether Congress would believe that any delay is reasonable under the statute.  It is also

important to note that this situation does not affect criminal enforcement of FECA by the

Department of Justice.  52 U.S.C. § 30109(a)(4)(C), (d).   Of course, the lack of a quorum does

not insulate the Commission from a finding of unlawful delay in every situation.  However, at

this time there has been no such delay in the matters now before the Court.

Nor should the Court be persuaded by plaintiff's claims ██████████████

██████████████████████████████████ (Giffords Mem. at 2) ████████

███████████████████████████████████ (*id.* at 7).  ████████████

███████████████████████████████████████████████████

██████████████████████ (FEC Mem. at 24-27.) ███████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████[14]

████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████ (*See* FEC Mem at 24-27.)

**2.**   ████████████████████████████████████
████████████████████████████



The Commission has substantial discretion in determining how to prioritize the many

matters it considers.  Courts therefore afford deference to the Commission when reviewing its

handling of administrative complaints.  *Rose*, 806 F.2d at 1092.  The Commission's prior

---

[14]     Plaintiff also speculates about the future by arguing that the allegations in the
administrative complaint "constitute a substantial and ongoing threat to the integrity of the
election system" (Giffords Mem. at 11), relying on the *TRAC* factor regarding interests
prejudiced by delays, *see* 750 F.2d at 80.  ███████████████████████████
████████████████████████████████

memorandum cited public data showing the heavy enforcement workload the agency has

experienced during the time that the enforcement complaints at issue here have been pending.

(FEC Mem. at 18-27.)

Plaintiff acknowledges that the Commission is entitled to deference.  (Giffords Mem. at

12 (conceding that the "FEC correctly notes that it is 'entitled to deference in the allocation of its

resources to meet its statutory obligations.'" (quoting *DSCC v. FEC*, No. 95-0349-JHG, 1996

WL 34301203 at *5 (D.D.C. Apr. 17, 1996).) ██████████████████████████

████████████████████████████████████████████████

██████████ (Giffords Mem. at 12-16 (████████████████████████

████████████████████████████████████ ).)  But this distinction does

not exist in the law.  ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████ (Giffords Mem. at 12.) ██████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████

Thus, this Court should resist plaintiff's apparent invitation to place its matters "at the head of the queue" for Commissioner priorities.  *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).  The Commissioners who lead the agency, like the agency as a whole, are "in a unique — and authoritative — position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."  *Id.* at 76.  ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████ *Rose*, 806 F.2d at 1091 & n.17 ("[i]t is not for the judiciary to ride roughshod over agency procedures or sit as a board of superint[e]nce" because "[we] are not here to run the agencies.")

Plaintiff cites three cases from decades ago to support its claim that a ██████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████ (Giffords Mem. at 15-16 (citing *Rose*, 806 F.2d at 1082, 1091; *DSCC,* 1996 WL 34301203 at *2 (D.D.C. Apr. 17, 1996); and *Citizens for Percy '84 v. FEC*, No. 84-2653, 1984 WL 6601 at *1 (D.D.C. Nov. 19, 1984).  ██████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ [15]

**3.** ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████  Even plaintiff acknowledges that the four administrative complaints it has filed

"involve lengthy and detailed factual allegations regarding the nature of the common vendor

scheme employed by the NRA and its affiliates."  (Giffords Mem. at 17; *see also* Pl.'s Compl.

for Declaratory & Injunctive Relief ("Compl.") at 1 (Docket No. 1) (a "complex network of shell

corporations"); Compl. at 2 ("complicated scheme to coordinate" leading to "campaign finance

---

[15]    Plaintiff also suggests that it was improper for the Commission to invoke privilege at the depositions taken of its staff with respect to ██████████████████████████████████ ███████████████ (Giffords Mem. at 14-15).  As they previously put it, however, if they had an objection regarding a particular deposition response, their "remedy lies in standard discovery procedures," (Pl.'s Reply in Supp. of Mot. for Discovery under Rule 56(d) ("Giffords 56(d) Reply") at 9 (Docket No. 33)), and they failed to use such procedures. ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (Giffords 56(d) Reply at 9), a representation on which the Court relied (Minute Order, Sept. 25, 2019).  Counsel nevertheless spent much of their nearly eight hours of deposition questioning seeking to learn the content of individual, deliberative communications.  (*See, e.g.*, Peterson Dep. at 73:6-20, 76:11-77:4, 79:5-81:5; Kitcher Dep. at 117:10-119:15.)  There is no legitimate basis for the plaintiff to further invade the agency's privileged deliberations.  Plaintiff makes no attempt to explain why it is relevant ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ (Kitcher Decl. ¶ 12.) ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ (Kitcher Dep. 134:15-134:23, 136:12-136:23.)

violations of dramatic scale"); Compl. at 17 (an "elaborate scheme").)  Requiring more time to

consider the ██████████████████████████████████████████

while steadily progressing through dozens of other matters was eminently reasonable.  The

complicated nature of these matters is a critical factor demonstrating that the agency has acted

reasonably here.  *See Common Cause*, 489 F. Supp. at 744 (a factor is the information available

to the agency, including the novelty of the issues involved).  ███████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████

   Plaintiff argues nonetheless that the issues involved in these matters are not "novel," ███

███████████████████████████████████████████████████████

████████████████████████████████████████  (Giffords Mem. at 17-18.)

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████  (Giffords Mem. at 18 (quoting *Percy*, 1984 WL

6601 at *4).)

██████████████████████████████████████████████

█████████████████████████████████████████████████████

(Giffords Mem. at 18), ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

    **4.**   ████████████████████████████████████████████

       The Court should similarly decline to intervene in the Commission's enforcement of these administrative matters because of the nature of the matters.  *See TRAC*, 750 F.2d at 80 (delay is less tolerable "when human health and welfare are at stake").  Campaign finance matters are of course important, but they involve economic and political issues.  Allowing these matters to proceed in the ordinary fashion does not directly jeopardize the health or welfare of plaintiff or any other person.  In such a situation, that *TRAC* factor also plainly supports a finding that the Commission has acted lawfully.

    **C.**   ████████████████████████████████████████████████████████

    **1.**   ████████████████████████████████████████████████

The D.C. Circuit has repeatedly instructed that courts may not require an agency to render performance that is impossible. *American Hosp. Ass'n v. Price*, 867 F.3d 160, 167 (D.C. Cir. 2017) (reviewing a mandamus order). "[I]t is not appropriate for a court — contemplating the equities — to order a party to jump higher, run faster, or lift more than she is physically capable." *Id.* at 168. Before issuing an equitable remedy like a remand, "the Court should determine in the first instance whether, in fact, lawful compliance" will be possible. *Id.*



**2.**

Because the Commission currently lacks a quorum, this case differs from other cases alleging unlawful delay or dismissal under 52 U.S.C. § 30109(a)(8), counseling strongly against any order that could lead to a private right of action even if the Court does find unreasonable

delay.  In a typical case of this kind, a grant of summary judgment to plaintiff would at most result in a remand to the Commission.  If the Court were to determine that the Commission has acted contrary to law by unreasonably delaying action, or by unlawfully dismissing an administrative complaint, the Court may "direct the Commission to conform with such declaration within 30 days."  52 U.S.C. § 30109(a)(8)(C).  If the agency fails to act within the required 30-day period, plaintiffs obtain a private right of action to sue the respondents directly. *Id.*  That has rarely occurred because in almost all cases, the Commission has acted quickly to conform to such a judicial declaration.  *See, e.g.*, *CREW v. FEC*, 299 F. Supp. 3d 83, 92 (D.D.C. 2018) ("parties stipulated to dismissal of the claims" after FEC acted on remand); *Level the Playing Field v. FEC*, 381 F. Supp. 3d 78, 110 (D.D.C. 2019) (granting summary judgment to FEC after Commission acted on remand).

Here, however, an order that the Commission conform to a declaration that it acted "contrary to law" could result in a private right of action for Giffords not because the agency did not wish to comply with the order, but because the Commission simply lacked the required votes to do so.  Therefore, even if this Court were to find unreasonable delay, rather than remand the Court should await the restoration of a quorum and stay the case until that time.  Such an order is permissible under section 30109(a)(8)(C), which provides that the court "may" direct the Commission to comply with a declaration that it has acted contrary to law, but does not require that the court make that order, and certainly does not require that it be made under any specific time frame.

Plaintiff argues that Congress created the private right of action presumably so that an intransigent FEC "would not spell the end of enforcement of campaign finance laws."  (Giffords Mem. at 22.)  But as explained above, supra pp. 24-25, the situation at hand is not one in which

the FEC is refusing to comply with a judicial directive.  The Commission is incapable of acting

due to lack of a quorum, a situation that could potentially be resolved by Congress at any time.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

      **3.**      ████████████████████████████████████████████

The enforcement and regulatory procedures in FECA are intended to promote the interest

of evenhanded, non-partisan application of federal campaign finance laws.  By placing the FECA

civil enforcement power with a single administrative agency, Congress assured that penalties for

violations would not be haphazard, but could be effectively tailored so that more severe

violations would result in more severe punishments, and less serious violations would result in

less serious punishments.  The Commission's authority to determine whether to pursue an

enforcement matter, as well as the independent litigation authority granted to the Commission,

helps to promote coherent development of the law.  Congress granted the Commission

"exclusive civil jurisdiction."

While it is true that Congress granted a private right of action in limited circumstances,

Congress permitted such an action only after a remand to give the Commission an opportunity to

correct itself.  52 U.S.C. § 30109(a)(8)(C).  The requirement of a remand indicates that

Congress's intention was to limit the use of private rights of action to only those circumstances

in which the Commission refused to comply with a court order.  This situation stands in contrast

to other contexts in which a private right of action is available. *See. e.g.,* 29 C.F.R. § 1601.28

(entitling claimants to bring private discrimination lawsuits whenever the EEOC provides notice

of a right to sue due to a probability that the EEOC will be unable to process a complaint within

180 days).

The Commission may decide not to file a civil action against an administrative respondent if an investigation reveals a lack of probable cause of a violation, or because the respondent enters into a conciliation agreement with the Commission, or merely as a matter of prosecutorial discretion.  ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████  It would allow plaintiff to make legal arguments about the interpretation of FECA and Commission regulations that may be inconsistent with those of the Commission, leading to inconsistent judicial results and confusion in the regulated community.  Each of these outcomes would be inconsistent with the ordinary operation of the statutory scheme, under which Congress envisioned the FEC having an opportunity to fully consider each matter remanded in light of its priorities and procedures.

    **4.**  ██████████████████████████████
████████████████████

In passing FECA Congress was concerned not only with enforcement of the law, but also with assuring that respondents who were accused of breaking the law would be protected from unfair partisan activity and that respondents would benefit from confidentiality until the matter reached the end of the administrative process.  These concerns extend even to the composition of the Commission itself, which is comprised of six Commissioners, but cannot have more than three Commissioners from a single political party.  52 U.S.C. § 30106(a)(1).  ████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

(Compl. ¶ 8.)

This concern about partisan law enforcement is most evident in the numerous protections

for respondents built into the enforcement procedures in FECA, including the provision under

which Giffords has brought this case.  *See Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996) *(per

curiam)* (explaining that section 30109(a)(8) is "designed to ensure fairness not only to

complainants but also to respondents"). The Commission is not permitted to conduct an

investigation until after an administrative respondent has been notified and given an opportunity

to "demonstrate, in writing … that no action should be taken."  52 U.S.C. § 30109(a)(1).  An

investigation cannot begin until at least four Commissioners find reason to believe a violation

has occurred."  52 U.S.C. § 30109(a)(2).  After an investigation is completed, an administrative

respondent is afforded yet another opportunity to respond in writing to the recommendation of

the FEC's Office of General Counsel.  52 U.S.C. § 30109(a)(3).  At that point, at least four

Commissioners must agree that there is "probable cause" that a violation occurred before any

further action is taken."  52 U.S.C. § 30109(a)(4)(A)(i).  If four Commissioners agree that there

is probable cause, there is a mandatory conciliation period of between 30 and 90 days "to correct

or prevent such violation by informal methods."  *Id.*  Only if such conciliation is unsuccessful

can the Commission "institute a civil action for relief," and that step also requires "an affirmative

vote of 4 of its" Commissioners.  52 U.S.C. § 30109(a)(6)(A).  Finally, FECA requires

confidentiality (unless the respondent indicates otherwise in writing) while the matter is being

considered, investigated, and conciliated.  52 U.S.C. § 30109(a)(4)(B)(i); 52 U.S.C. §

30109(a)(12).



[redacted] Even if the Court does find unreasonable delay, this case should be stayed until a quorum has been restored in advance of any remand in order to be consistent with the scheme FECA contemplates.

## II. CONCLUSION

For all the foregoing reasons, plaintiff Giffords has failed to state a claim on which relief can be granted, and the Complaint should be dismissed. Alternatively, because there is no genuine dispute as to any material fact and the facts make evident that Commission is entitled to judgment as a matter of law, summary judgment should be granted to the Commission.

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov


January 10, 2020

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

/s/ Seth Nesin
Seth Nesin
Attorney
snesin@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC  20463
(202) 694-1650

**CERTIFICATE OF SERVICE**

I, Seth Nesin, an attorney of record, hereby certify that I caused a copy of the foregoing FEC's Reply in Support of Its Motion to Dismiss, or in the Alternative, for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment, to be filed under seal with the Clerk of the Court via its ECF system this 10th of January, 2020.  I also certify that I served a copy of the unredacted version of this motion to counsel for the plaintiff via electronic mail delivery this date pursuant to their consent to such service.

/s/ Seth Nesin_____
Seth Nesin