## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GIFFORDS, | |
| Plaintiff, | Civil Action No. 1:19-cv-1192 (EGS) |
| v. | REDACTED[1] |
| FEDERAL ELECTION COMMISSION, | |
| Defendant. | |

## PLAINTIFF'S *REDACTED* REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

J. Adam Skaggs*
David Pucino*
GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
223 West 38th St. #90
New York, NY 10018
(917) 680-3473
askaggs@giffords.org
dpucino@giffords.org

*Admitted *Pro Hac Vice*

Adav Noti (DC Bar No. 490714)
Mark P. Gaber (DC Bar No. 988077)
Molly E. Danahy (DC Bar No. 1643411)
CAMPAIGN LEGAL CENTER ACTION
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200
anoti@campaignlegal.org
mgaber@campaignlegal.org
mdanahy@campaignlegal.org

*Counsel for Plaintiff*

---

[1] This Brief, the Reply to Counterstatement of Facts, and the attached exhibits contain information covered by the Protective Order in this case, Doc. 16, which Plaintiff has redacted, pursuant to this Court's order, *see* Jan. 21, 2020 Minute Order.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INDEX OF EXHIBITS ............................................................................................ iv

INTRODUCTION ................................................................................................... 1

   I.    The FEC's Failure to Act on Plaintiff's Complaints is Unreasonable. ............................... 1

   II.   The Court Should Remand to the Commission to Conform Within 30 Days ................... 9

      A. The Balance of the Equities Favors Triggering the Private Right of Action. ............. 10

      B. Federal Courts Are Capable of Making Determinations on the Merits of Plaintiff's Claims and Promoting the Coherent Development of Campaign Finance Law. ...................................................................................... 11

      C. Federal Courts Are Capable of Providing Due Process of Law ████ ███████████████████ . ................................................................ 13

      D. The FEC's Interpretation of the Private Right of Action Conflicts with FECA's Text. ............................................................................................... 14

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*American Hospital Ass'n v. Price*, 867 F.3d 160 (D.C. Cir. 2017) ..........................................10

*CREW v. FEC*,
    299 F. Supp. 83 (D.D.C. 2018) ..........................................................................12

*\*Common Cause v. FEC*, 489 F. Supp. 738 (D.D.C. 1980) ........................................ 1-2, 2, 5

*\*Democratic Senatorial Campaign Committee v. FEC*, No. Civ. A 95-0349,
    1996 WL 34301203 (D.D.C. Apr. 17, 1996 ........................................1, 3, 4, 5, 6

*FEC v. Rose*, 806 F.2d 1081 (D.C. Cir. 1986)..............................................................1, 3

*In re Barr Labs., Inc.*, 930 F.2d 72 (D.C. Cir. 1991)................................................................9

*In re United Mine Workers of America International Union*,
    190 F.3d 545 (D.C. Cir. 1999).........................................................................6, 9

*Kessenich v. Commodity Futures Trading Comm'n*,
    684 F.2d 88 (D.C. Cir. 1982) ..................................................................................2

*Marbury v. Madison*, 5 U.S. 137 (1803)..............................................................................12

*Natural Resources Defense Council, Inc. v. Train*,
    510 F.2d 692 (D.C. Cir. 1974)........................................................................10, 11

*Recycling Solutions, Inc. v. District of Columbia*,
    175 F.R.D. 407 (D.C. Cir. 1997) ..............................................................................8

*\*Telecommunications Research & Action Center v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984).....................................................................2, 3, 10

*United States ex rel. Fago v. M&T Mortgage Corp.*, 235 F.R.D. 11 (D.D.C. 2006) ...............8

**Statutes**

52 U.S.C. § 30109(a)(2).........................................................................................................1

52 U.S.C. § 30107(a)(9).........................................................................................................3

52 U.S.C. § 30109(a)(8)(A) ....................................................................................................3

*\*52 U.S.C. § 30109(a)(8)(C) .....................................................................................9, 10, 14

**Rules and Regulations**

Fed. R. Civ. P. 1 ...................................................................................................................13

Fed. R. Civ. P. 3 ...................................................................................................................13

Fed. R. Civ. P. 4 ...................................................................................................................13

Fed. R. Civ. P. 12 .................................................................................................................13

Fed. R. Civ. P. 12(b)(6).........................................................................................................13

Fed. R. Civ. P. 16(b) .............................................................................................................13

Fed. R. Civ. P. 26(f) ............................................................................................13

Fed. R. Civ. P. 56 .................................................................................................13

72 Fed. Reg. 12545 (Mar. 16, 2007) .....................................................................4

83 Fed. Reg. 66590 (Dec. 27, 2018) ......................................................................6

**Other Authorities**

Chair Ellen L. Weintraub, *The State of the Federal Election Comm'n 2019 End of Year Report* 2 (Dec. 20, 2019), https://www.fec.gov/resources/cms-content/documents/2019_State_of_the_FEC.PDF .........................................................14

FEC, *Nat'l Rifle Ass'n Inst. for Leg. Action*, https://www.fec.gov/data/committee/C90013301/ ........................................................ 1-2

## INDEX OF EXHIBITS

Exhibit 11: C. Kitcher Deposition Transcript Excerpts (30(b)(6) Representative)

Exhibit 12: J. Peterson Deposition Transcript Excerpts

## INTRODUCTION

Plaintiff Giffords is entitled to judgment as a matter of law because the Federal Election Commission ("FEC") has failed to act on Plaintiff's administrative complaints during the twelve-to-eighteen months in which they have been pending. In that time, the FEC has failed to ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████. The undisputed facts show that the FEC has acted "contrary to law" by unreasonably delaying action on Plaintiff's administrative complaints. The Court should therefore order the FEC to conform within 30 days.

## I.     The FEC's Failure to Act on Plaintiff's Complaints is Unreasonable.

An analysis of the relevant factors demonstrates that the FEC has acted contrary to law. *See FEC v. Rose*, 806 F.2d 1081, 1084 (D.C. Cir. 1986) ("[I]n determining whether the Commission's treatment of a complaint is 'contrary to law' . . . the court should apply the factors set forth in *Common Cause v. FEC*, 489 F. Supp. 738, 744 (D.D.C. 1980), and *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).").

To begin, the FEC does not even dispute that a number of factors favor a finding of unreasonable delay. The FEC does not deny that the underlying allegations are "credible" or that the "nature of the threat posed" by the allegations is significant.[2] *Common Cause v. FEC*, 489 F.

---

[2] The FEC disputes that this threat is "ongoing" but not that it is "substantial." FEC Reply at 19 n.14. ████████████████████████████████████████████████████

████████████ *Id.* It is not speculative to infer that a bad actor will continue to engage in bad acts if he faces no consequences. It is for precisely this reason that "threats to the health of our electoral processes . . . require timely attention [and] should not be encouraged by FEC lethargy." *Democratic Senatorial Campaign Committee v. FEC*, No. Civ. A 95-0349, 1996 WL 34301203 at *8 (D.D.C. Apr. 17, 1996). The NRA has a long history of making substantial political expenditures.  *See,   e.g.*,   FEC,   *Nat'l   Rifle   Ass'n   Inst.   for   Leg.   Action*,

Supp. 738, 744 (D.D.C. 1980). The FEC does not dispute that it has the information necessary █

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████; *see also*

*Common Cause*, 489 F. Supp. at 744 (listing availability of information as a consideration in

determining reasonableness of FEC delay). The FEC does not contend that the issues presented

are "novel." *Common Cause*, 489 F. Supp. at 744. Nor does the FEC dispute that Plaintiff is

prejudiced by its failure to act, *see Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80

(D.C. Cir. 1984) ("*TRAC*"), or that the circumstances surrounding the Commission's delay give

rise to at least the appearance of impropriety, thus posing a "concrete danger . . . to the perceived

integrity" of the FEC. *Kessenich v. Commodity Futures Trading Comm'n*, 684 F.2d 88, 97 (D.C.

Cir. 1982); *cf. TRAC*, 750 F.2d at 80 (finding that delay can be unreasonable even where there is

no actual "impropriety lurking behind agency lassitude") (internal quotation marks omitted).

Nevertheless, the FEC argues that its failure to ██████████████████████████████████

████████ during the twelve-to-eighteen months in which the underlying complaints have been

pending is "reasonable." FEC Reply In Support of Mot. to Dismiss, or in the alternative, Summ.

J. and Opp'n to Pl.'s Cross-Mot. Summ. J. at 14, ECF No 56 ("FEC Reply"). It is not.

    *First*, the FEC suggests that because there is no statutory ceiling on when it must complete

*final* action on an enforcement matter, its failure to ████████████████████████████████

---

https://www.fec.gov/data/committee/C90013301/ (last visited Dec. 20, 2019). And, Plaintiff has
demonstrated that the NRA affiliates continued to engage in the conduct at issue
████████████████████████ the underlying complaints ███████████. *See* Pl.'s Br. at 11-12 (describing
coordinated expenditures made by the NRA entities and Matt Rosendale for Montana made in the
months after █████████████████████████████████ the first of the
underlying complaints]).

███████████ within a year and a half of receiving the first administrative complaint is necessarily reasonable. This argument misconstrues the applicable precedent, and ignores clear statutory intent. "[T]he time agencies take to make decisions must be governed by a rule of reason," and "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason." *TRAC*, 750 F.2d at 80. The fact that the Commission is not statutorily required to complete final action on a matter within 120 days, or even within a single election cycle, *see Rose*, 806 F.2d at 1092, does not mean that Congress was silent as to its expectations for agency action. Declining to impose a deadline for final agency action "is not the equivalent of [granting] unfettered FEC discretion to determine its own timeline." *DSCC, v. FEC*, No. Civ. A. 95-0349-JHG, 1996 WL 34301203 at *8 (D.D.C. Apr. 17, 1996) ("*DSCC*"). Rather, Congress evidenced an expectation that the Commission would act expeditiously by granting this Court jurisdiction to hear complaints based on the Commission's failure to act within 120 days of receiving a complaint. 52 U.S.C. § 30109(a)(8)(A); *cf. id.* § 30107(a)(9) ("The Commission has the power . . . to conduct investigations and hearings *expeditiously* . . . ." (emphasis added)). Thus, although "Congress did not impose specific time constraints upon the Commission to complete final action, . . . it did expect that the Commission would fulfill its statutory obligations so that [FECA] would not become a dead letter." *DSCC*, 1996 WL 34301203 at *7.

The Commission's failure to ████████████████████████████████ ███████ is unreasonable because it does not comport with Congress's expectation that the Commission will "process administrative complaints in a meaningful timeframe." *DSCC*, 1996 WL 34301203 at *8. Importantly, ████████████████████████████████

████████████████████████████████████████████

3

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████.[3] Whether the FEC should ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████. What is at

issue, therefore, is this: whether the FEC's now more than 500-day delay ████████████

███████████████ is contrary to law. It is. "Whatever deference an agency is due in resource

allocation decisions, it is entitled to substantially less deference when it fails to take any

meaningful action within a reasonable time period." *DSCC*, 1996 WL 34301203 at *5-6.

*Second*, the FEC contends that because Plaintiff's complaints are "legally and factually

complex," FEC Reply at 22, its delay in acting ███████████████████████████████

is reasonable. ███████████████████████████████████████████████

██████████████████████████████████████████████████

The fact that ██████████████ could be burdensome and time-consuming might be relevant to

how long that ██████████████ takes; it has no bearing on how long it should take the Commission

to decide █████████████████████████. Plaintiff's complaints do not simply allege a

"complex" and "complicated scheme" by the NRA and its affiliates to coordinate expenditures

with candidates for federal office; they demonstrate how the scheme operated, identify numerous

---

[3] The FEC contends that Plaintiff makes the "unjustified assumption that ██████████████████ will
ultimately be necessary" by the Commission. FEC Reply at 19. But the FEC does not explain how
this justifies its failure to ██████████████████████, or how speculation about
hypothetical future steps bears on the Commission's delay thus far.

specific instances of alleged coordination, and unravel the "complex" web of shell companies used to hide the coordinated activity by providing direct evidence of the links between the companies, the campaigns, and the NRA, including through the use of the Commission's own records. Plaintiff has credibly alleged substantial violations of FECA. *See Common Cause*, 489 F. Supp. at 744; Pl.'s Cross-Mot. Summ. J. at 8-11, ECF No. 48 ("Pl.'s Br."). The Commission does not dispute this, nor does it deny that despite the "complexity" of the underlying allegations, it has had the necessary information to ███████████████████████████████████████████ ██████ . *See Common Cause*, 489 F. Supp. at 744.

*Third*, the FEC suggests that ███████████████████████████████ ████████████████████████████████████████████████████ ██████████████████ , the Commission cannot be held to have unreasonably delayed by failing to act ███████████████ , no matter how long that delay lasts. FEC Reply at 16. The Commission provides no support for its contention that the reasonableness of an agency's actions depends on its "overall progress" and "overall diligence" with respect to the underlying complaints. *See id*. at 14. Nor is this supported by the case law. In *DSCC*, the Court found that the Commission had unreasonably delayed acting on the underlying complaint by failing to act until after the delay suit was filed, but that the FEC had acted reasonably in making a reason to believe determination and proceeding with the investigation after the suit was filed. *DSCC*, 1996 WL 34301203, at *9 (finding that the agency's "previous inaction was contrary to law"). And the court noted that the complainants could seek additional relief in the future "should the FEC fail to act reasonably in completing its investigation." *Id.* In other words, the court did not determine whether the agency had acted contrary to law based on its "overall progress" or "overall diligence" but rather by looking at the reasonableness of the agency's actions with respect to specific stages of

the enforcement process at specific periods of time. Under that standard, the Commission cannot

rely on ████████████████████████████████████████████████████████████

████████████████████████████████████████████ to excuse the delay ██████████████████████

███████████████████████████████████.

     *Fourth*, the FEC appears to contend that any delay is justified because it considered other

matters ████████████████████████████████████████████████████████. FEC

Reply at 19. It is true that the FEC is entitled to a certain level of deference in determining *how* to

allocate its resources, but that does not excuse the Commission's failure to █████████████

███████████████████████████████████████████████. *See DSCC*, 1996

WL 34301203, at *5-6. The mere fact that the Commission has other matters on its docket is not

enough to excuse its delay. *See In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 554

(D.C. Cir. 1999) ("However many priorities [an] agency might have, and however modest its

personnel and budgetary resources may be, there is a limit to how long it may use these

justifications to excuse inaction . . . ."). And as Plaintiff has demonstrated, the FEC's reliance on

its purportedly "heavy workload" as justification for its failure to act on the underlying matters is

belied by the evidence. Pl.'s Br. at 16. ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████.[4] ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

---

[4] The FEC's similarly novel and unsubstantiated claim that the Commission has been busy "drafting advisory opinions" and "promulgating new regulations," FEC Reply at 20, is particularly curious, considering how infrequently the Commission has engaged in such tasks. For example, the Commission has promulgated precisely *one* regulation that is not a technical amendment since 2012. *See* 83 Fed. Reg. 66590 (Dec. 27, 2018).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████, now pending for more than 500 days. The FEC

offers no other explanation for its failure to do so.

*Fifth*, the FEC contends that "Plaintiff's recitation of ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████." *Id.* at 16-17.[5] The Court should disregard this contention. First, ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████. *See* Kitcher Dep. 156:3-10 ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[5] Notably, as described above, the FEC's opposition brief relies extensively on a context-free recitation of the number of matters that were deliberated on or closed ████████████████ ████████████ at the same time that it accuses Plaintiff of engaging in only a "superficial" analysis of the agency's workload.

██████████████████████████████████████████████████████████████████ .

"Privilege cannot be used as both a sword and a shield." *Recycling Solutions, Inc. v. District of Columbia*, 175 F.R.D. 407, 408 (D.C. Cir. 1997).[6] The FEC may not rely upon an unsupported assertion the substance of which it claimed was privileged. Second, the record only reflects a single example of a ████████████████████████████████████████████████ . *See* Peterson Dep. 104:6-105:13. Third, the FEC's 30(b)(6) witness testified that he had no recollection of ████████████████████████████████████ . Kitcher Dep. 149:22-150:3. When a 30(b)(6) witness testifies he does not know of an event occurring, the party may not later claim the event occurred. *See, e.g. United States ex rel. Fago v. M&T Mortg. Corp.*, 235 F.R.D. 11, 24 (D.D.C. 2006) (noting that 30(b)(6) testimony is a binding admission of the party).

*Finally*, the FEC contends that any delay is tolerable because "human health and welfare" are not at stake. FEC Reply at 24 (citing *TRAC*, 750 F.2d at 80). Plaintiff Giffords contests the Commission's premise that illegal campaign contributions to federal candidates by the NRA have no impact on human health and welfare—the impact in lives lost to gun violence resulting from

---

[6] The deposition transcripts are rife with inappropriate assertions of privilege. *See* Peterson Dep. 76:11-77:4 ████████████████████████████████████████████████████████████████ ██████████ *id*. at 79:5-81:5 ████████████████████████████████████████████████ ████████████████████████████ *id*. at 92:7-94:5 ████████████████████████ ████████████████████████████████████████████████████ ; *see also* Pl.'s Br. at 14. The FEC's counsel even instructed the witnesses not to answer what they did to prepare for the depositions, including whether they looked at public documents, whom they spoke to, *etc*.—issues that are plainly not privileged. *See, e.g.*, Kitcher Dep. 10:22-15:5. The FEC notes that Plaintiff did not file a motion to compel with respect to the various inappropriate invocations of privilege. FEC Reply at 21 n.15. But this is a case about delay, and litigating over the FEC's inappropriate refusal to answer basic questions would only have delayed resolution of this case further. Suffice it to say, a party should not have to file a motion to compel to learn whether a deponent reviewed documents in preparation for a deposition, to whom he spoke in preparing for a deposition, or ████████████ ████████████████████████████████████████████ And these questions probe only actions and inactions, not the "mental processes" of the Commissioners, as the FEC contends. *Id.*

illegal campaign support to candidates opposed to adopting polices that may reduce gun violence

is, in fact, profound. But, assuming for these purposes that "[c]ampaign finance matters . . . involve

only economic and political issues," this factor becomes irrelevant because the underlying matters

are not, by definition, competing with FEC priorities that *do* involve human health and welfare.

*Cf. In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) (finding this factor irrelevant where

the competing priorities at issue each impacted human health and welfare); *see also United Mine*

*Workers*, 190 F.3d at 552 (finding that this factor does not carry much weight when an agency's

"entire regulatory agenda involves health and welfare concerns").

## II.      The Court Should Remand to the Commission to Conform Within 30 Days

FECA provides a private right of action to complainants when (1) a federal court declares

that the FEC's failure to act is contrary to law and (2) the FEC fails to conform to such declaration

within 30 days. 52 U.S.C. § 30109(a)(8)(C). The FEC argues that an order to conform is

inappropriate here because of the risk that the Commission will be unable to comply due to its lack

of quorum, and that Plaintiff will therefore be afforded a private right of action. FEC Reply at 24.

But the ongoing risk that the Commission will be unable to act on Plaintiff's complaints due to its

lack of quorum is precisely why Plaintiff seeks to enforce its statutory rights in this lawsuit and, if

necessary, in a subsequent action ████████████. *See* Pl.'s Br. at 21-22 ("The *only* way

the serious allegations set forth in administrative complaints . . . will be investigated and

adjudicated in any reasonable period of time is by this Court triggering FECA's private right of

action."). And most of the FEC's objections to a remand appear to arise out if its general distaste

for the private right of action Congress included in § 30109(a)(8)(C), rather than any concern for

its appropriateness in the context of the Commission's lack of quorum. But § 30109(a)(8)(C)

makes clear that Congress intended for complainants to have a private right of action when the

Commission both fails to act and fails to conform. The Court should order the Commission to conform under § 30109(a)(8)(C) to ensure that Plaintiff is able to obtain meaningful review of its complaints.

###### A.   The Balance of the Equities Favors Triggering the Private Right of Action.

The balance of the equities favors ordering the FEC to conform even though it may be unable to comply, thus potentially triggering the private right of action.[7] Although courts "may not require an agency to render performance that is impossible" through a writ of mandamus, *Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 167 (D.C. Cir. 2017), the equitable concerns underlying that prohibition do not apply to an order to conform under § 30109(a)(8)(C). The Commission does not suffer any harm or prejudice if it fails to comply with an order to conform under § 30109(a)(8)(C). The Commission's compliance is not compelled through contempt. *Cf. Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1974) ("The sound discretion of an equity court does not embrace enforcement through contempt of a party's duty to comply with an order that calls him to do an impossibility.") (internal quotation marks omitted). Nor would an order to conform under § 30109(a)(8)(C), in the absence of a quorum, require the Commission to spend money it does not have. *See Am. Hosp. Ass'n.*, 867 F.3d at 168 (declining to issue a writ of mandamus where compliance was impossible due to lack of funds). The only consequence of the Commission's failure to conform, whether due to lack of quorum or otherwise, is that the Plaintiff would then be entitled to bring a private action—an action to which the FEC would not even be a

---

[7] As discussed in Part I, *see also* Pl.'s Br. Part I, an order to conform is justified here because the factors outlined in *TRAC* and *Common Case* favor a finding that the Commission has acted contrary to law. *See, e.g., TRAC*, 510 F.2d at 79 (outlining factors for determining "whether [an] agency's delay is so egregious as to warrant mandamus").

party. It is neither "unreasonable" nor "unjust" to allow a plaintiff to take advantage of a statutory remedy provided by Congress. *Train*, 510 F.2d at 713.

Further, even if the Commission lacks a quorum when the order to conform is issued, that does not mean it will be impossible for the Commission to comply within 30 days. As the FEC acknowledges, the lack of quorum could be addressed at any time. FEC Reply at 17-18. Thus, it may be that the Commission will regain its quorum with sufficient time to conform. Indeed, "[i]f Congress [and the President are] concerned" that campaign finance matters will be left in the hands of private litigators because the FEC lacks a quorum, "[they have] the power to fill the vacancies on the Commission." *Id*. at 18. On the other hand, "if Congress [and the President are] content to allow" private litigators to enforce campaign finance violations during the Commission's "current pause in administrative enforcement," then no harm is done. *Id*.

The only party that is experiencing harm or prejudice by the "current pause" is Plaintiff— whose well-supported allegations remain unresolved and who, in the absence of any enforcement, faces another election cycle where it follows the law while its competitor flouts it. For this reason, the Court should reject the Commission's invitation to stay the case pending restoration of the quorum rather than issue an order to conform. Doing so would only exacerbate the harm that Plaintiff has already suffered due to the FEC's unreasonable delaying in acting on the underlying complaints.

**B.**      **Federal Courts Are Capable of Making Determinations on the Merits of Plaintiff's Claims and Promoting the Coherent Development of Campaign Finance Law.**

Federal courts are capable of adjudicating a case alleging violation of federal law. The FEC suggests that it would be inappropriate to trigger the statutory remedy provided to complainants for the FEC's failure to act because ████████████████████████████████████

of Plaintiff's complaints,[8] FEC Reply at 25, and because leaving FECA's interpretation up to this court could lead to "haphazard" and "inconsistent" results, and "confusion in the regulated community." *Id*. at 27-28. The FEC's professed concern rings hollow in light of ████ ██████████████████████████████████████████████████████████████████████ the merits of the complaints when they had the chance. In any event, a federal district court is more than capable of evaluating the merits of Plaintiffs' claims, encouraging settlement where possible, and construing and applying federal law in a manner that is consistent with precedent and the "ordinary operation" of FECA, even without the Commission's participation. *Id*. at 28. Indeed, this is precisely what the private right of action contemplates. Furthermore, non-Commission entities acting as intervenors routinely "make legal arguments about the interpretation of FECA and Commission regulations that may be inconsistent with those of the Commission." *Id*. at 27-28; *see e.g.*, *CREW v. FEC*, 299 F. Supp. 83, 89 (D.D.C. 2018) (allowing intervention in a proceeding regarding whether the FEC acted contrary to law); *see also CREW v. FEC*, No. 1:18-cv-00945-CRC (D.D.C. Sept. 30, 2019) (proceeding in which the complainant brought a citizen-suit case under § 30109(a)(8) after the FEC failed to comply with an order to conform). Courts in such suits are perfectly able to "say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), without the FEC's assistance, so the extent to which such arguments either augment or undermine federal campaign finance law is unlikely to be substantially different in a private action than in one in which the Commission participates.

---

[8] The *reason* for this lawsuit is ███████████████████████████████████—a circumstance Congress anticipated in authorizing delay suits and a private right of action in the event the Commission fails to conform with a Court's order to end the delay.

**C.**     **Federal Courts Are Capable of Providing Due Process of Law to** ████
████████████████████████████.

Startlingly, the FEC appears to suggest that ██████████████████████ will be denied

due process of law if they are forced to litigate their claims publicly in federal court. FEC Reply

at 28-30. It contends that affording ███████████ the opportunity to defend their actions in an

adversarial setting before a federal judge would subject them to "unfair partisan activity." *Id*. at

28. It suggests that application of Federal Rules of Civil Procedure[9] rather than the FECA's

administrative enforcement procedures will give rise to "partisan law enforcement." *Id*. And it

suggests that a federal civil action will not provide procedural "safeguards" sufficient to ensure

"fairness not only to complainants but also respondents." *Id*. But a federal civil action provides

nearly every protection to a defendant that § 30109(a) provides to a respondent.[10] The only

significant difference is that FECA allows a respondent the option of maintaining the

confidentiality of the FEC proceeding during the course of an investigation. ████████████████
████████████████████████, Plaintiff's allegations against the ████████████████

---

[9] "These rules govern the procedure in all civil actions and proceedings in the United States district courts [and] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

[10] If Plaintiff Giffords were to commence a private right of action against ████████████
█████, the first step would be to file a complaint. Fed. R. Civ. P. 3. The next step would be to serve a summons and a copy of the complaint on the defendants. *Id*. 4. The defendants would then have an opportunity to respond, by filing either an answer or a motion to dismiss. *Id*. 12. The defendants can ask the court to rule on the sufficiency of the plaintiff's claims. *Id*. 12(b)(6). The plaintiff is not allowed to take discovery absent an order by the court, which typically will not be entered until after an answer is filed or a motion to dismiss is resolved. *Id*. 16(b); 26(f). After discovery is complete, the defendant may move for summary judgment. *Id*. 56. The court will grant summary judgment if the defendant shows that there is no genuine dispute as to any material fact and the defendant is entitled to judgment as a matter of law. *Id*. At any time the parties may engage in settlement, either privately or as facilitated by the court, and the court may order the parties to participate in mediation. If the court denies summary judgment, the plaintiff must then prove her claims at trial by a preponderance of the evidence, and the defendant is entitled to present his own defense at trial.

are a matter of public record. And to the extent defendants have a legitimate need for privacy, federal courts have many procedures in place to provide for confidentiality, such as protective orders, sealed filings, and *in camera* review of sensitive materials. Thus, even if Plaintiff is granted a private right of action and ████████████████ find themselves as defendants in a federal lawsuit, they will be afforded no less than the procedural protection that they would otherwise enjoy under § 30109(a). Moreover, it does not subject ██████ to any "partisan" activity to be in litigation before a neutral, nonpartisan federal judge; federal court actions in the United States are, by definition, not partisan activities. Indeed, the suggestion that the FEC will provide a *less partisan* forum that a federal court for the adjudication of this dispute is ironic at best, in light of the agency's recent history. *See, e.g.*, Chair Ellen L. Weintraub, *The State of the Federal Election Comm'n 2019 End of Year Report* 2 (Dec. 20, 2019), https://www.fec.gov/resources/cms-content/documents/2019_State_of_the_FEC.PDF   (noting partisan disagreements that disrupted "most of the last 11 years" of FEC enforcement activity).

### D.   The FEC's Interpretation of the Private Right of Action Conflicts with FECA's Text.

Finally, the FEC asserts Congress intended the private right of action for situations where the FEC *refuses* to conform to a court order, rather than when the Commission *fails* to conform. It offers no authority for this proposition, which conflicts with the text of the statute. *See* § 30109(a)(8)(C) ("[T]he court may declare that the . . . failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, *failing which* the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint.") (emphasis added). The plain text of the statute covers situations where the Commission is unable to conform with the Court's order. Nor would a contrary rule make sense: it would allow the President, ████████████████████

14

███████████ who is often a respondent in FEC enforcement matters, to entirely avoid civil enforcement of our nation's campaign finance laws by indefinitely declining to appoint Commissioners. Congress foresaw such a problem, and created the private right of action to avoid it.

\* \* \*

In the past twelve to eighteen months, the Commission has been unable to even ███████

████████████████████████████████████████████████████

█████████████████████████ That is unreasonable, and contrary to law. The Court should order the Commission to conform within 30 days. Perhaps that order will encourage the appointment and confirmation of new commissioners, and perhaps the Commission will conform. But this Court should not permit Plaintiff's administrative complaints to languish, subjecting Plaintiff to another year of electoral competition where its opponent gains an unlawful advantage consequence-free. Congress included a private right of action as a safety valve for circumstances like this to ensure campaign finance laws do not become a dead letter.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment should be granted, and the FEC's motion to dismiss or in the alternative for summary judgment should be denied, pursuant to the terms outlined in Plaintiff's proposed order filed with its motion for summary judgment.

January 17, 2020

J. ADAM SKAGGS*
DAVID PUCINO*
Giffords Law Center to
Prevent Gun Violence
223 West 38th St. #90
New York, NY 10018
(917) 680-3473
askaggs@giffords.org
dpucino@giffords.org
* Admitted *Pro Hac Vice*

Respectfully submitted,

/s/ Adav Noti
ADAV NOTI (DC Bar No. 490714)
MARK P. GABER (DC Bar No. 988077)
MOLLY E. DANAHY (DC Bar No. 1643411)
Campaign Legal Center Action
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200
anoti@campaignlegal.org
mgaber@campainglegal.org
mdanahy@campaignlegal.org