UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GIFFORDS, | |
| Plaintiff, | |
| v. | Civ. Action No. 19-1192 (EGS) |
| | ~~CONTAINS HIGHLY SENSITIVE~~ |
| FEDERAL ELECTION COMMISSION, | ~~INFORMATION~~ |
| Defendant. | |

### MEMORANDUM OPINION

Plaintiff Giffords—a nonpartisan, nonprofit 501(c)(4)

organization headquartered in Washington, D.C.—brings this

lawsuit against Defendant the Federal Election Commission ("FEC"

or the "Commission") alleging that the Commission has failed to

act upon four administrative complaints filed with the agency

under the Federal Election Campaign Act ("FECA"), 52 U.S.C. §

30109(a)(8)(A). See Compl., ECF No. 1 ¶¶ 1-5, 8.[1] Pending before

the Court are FEC's motion to dismiss, or in the alternative,

for summary judgment, see Mem. Supp. Def. FEC's Mot. Dismiss,

Alternative, Summ. J. ("Def.'s Mot."), ECF No. 41-1; and

Giffords' cross-motion for summary judgment, see Mem. Supp.

Cross-Mot. Sum. J. & Opp'n ("Pl.'s Cross-Mot."), ECF No. 48.

---

[1] When citing electronic filings throughout this Memorandum
Opinion, the Court cites to the ECF page number, not the page
number of the filed document.

Upon consideration of the motions, the responses, the replies thereto, the applicable law, and the entire record, the Court **DENIES** FEC's motion and **GRANTS** Giffords' motion.

## I.   Background

### A. Statutory and Regulatory Background

#### 1.   FECA Enforcement

The FEC an independent agency with six Commissioners—is responsible for enforcing FECA. *See* 52 U.S.C. § 30106(b)(1). Congress enacted FECA to prevent money from corrupting or appearing to corrupt the positions taken by candidates for federal office and those candidates' actions while in office. *See Citizens United v. FEC*, 558 U.S. 310, 344 (2010). FECA provides the Commission with broad investigatory powers in service of that mission. *See* 52 U.S.C. § 30107.

Any person or entity may file a complaint alleging a violation of FECA with the Commission. *Id.* § 30109(a)(1). When a complaint is filed, the FEC notifies the respondents named in the administrative complaint within 5 days, and the respondents are then given an opportunity to respond to the allegations within 15 days. *Id.* § 30109(a)(1)-(2). After the response period has elapsed, taking into account any granted extensions of time to file, the FEC's Office of General Counsel evaluates the submissions and determines whether the matter should be referred to the agency's Alternative Dispute Resolution Office,

2

Administrative Fine Program, or Enforcement Division, or if it should be recommended for dismissal. Def.'s Mot., ECF No. 41-1 at 14. If a matter has been assigned to the Enforcement Division, the assigned staff attorneys prepare and send a report to the Commission recommending whether it should find that there is "reason to believe" that the FECA has been violated or whether it should dismiss the matter. 11 C.F.R. § 111.7. The FEC's Commissioners then vote on whether the complaint provides "reason to believe" a violation of the FECA has occurred. 52 U.S.C. § 30109(a)(1)-(2). If the Commission finds no reason to believe or otherwise terminates its proceedings, the Commissioners who voted against taking that action should issue a statement explaining their votes. *Common Cause v. FEC*, 842 F.2d 436, 449 (D.C. Cir. 1988). But if four or more Commissioners find reason to believe that FECA was or will soon be violated, then the Commission proceeds to investigate the alleged violation described in the administrative complaint. *Id.* § 30109(a)(2). The Commission is authorized to request answers to written questions, subpoena documents, and take depositions during its investigation. *Id.* § 30107(a)(1)-(5).

At the conclusion of the investigation, the statute authorizes the FEC's General Counsel to recommend that the Commission vote on whether there is "probable cause to believe" that the FECA has been violated. *Id.* § 30109(a)(3). The General

3

Counsel prepares a report to the Commission recommending what action should be taken. 11 C.F.R. § 111.16. Based on the evidence and additional submissions from the respondents, the Commissioners then vote to determine whether there is "probable cause to believe" that a violation occurred. 52 U.S.C. § 30109(a)(3)-(4). If four Commissioners find "probable cause to believe" that a violation occurred, the General Counsel attempts to arrive at an agreement with the party accused of committing a violation. "This agreement typically involves an admission of violations, a plan for remedial action to correct any violations, and a provision for the payment of civil penalties." *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 164 F. Supp. 3d 113, 117 (D.D.C. 2015). If the General Counsel is unable to obtain an agreement, the FEC has the option of filing suit in federal district court to seek compliance and the imposition of penalties. 52 U.S.C. § 30109(a)(6).

If the Commission determines that no violation occurred or dismisses the administrative complaint for some other reason, the complainant has an opportunity to seek judicial review of that determination. *Id.* § 30109(a)(8)(A). A complainant may also seek judicial review should the Commission "fail to act" on a complaint within 120 days. *Id.* If the court finds that the Commission's dismissal or failure to act was "contrary to law,"

the court can "direct the Commission to conform with [that]
declaration within 30 days." *Id.* § 30109(a)(8)(C).

### B. Factual Background

The basic facts of this case are not in dispute. In the
latter half of 2018, Giffords filed four administrative
complaints with the Commission alleging "millions of dollars of
illegal, unreported, and excessive political contributions."
Compl., ECF No. 1 ¶ 1; Def.'s Mot., ECF No. 41-1 at 20-21; Pl.'s
Cross-Mot., ECF No. 48 at 9.

The Campaign Legal Center ("CLC") filed the first of the
four administrative complaints with the FEC on July 16, 2018.
*See* Compl., ECF No. ¶ 2. The administrative complaint was
amended on August 16, 2018, to include Giffords as a
complainant. *See id.* The FEC designated the first administrative
complaint as Matter Under Review ("MUR") 7427. *Id.* ¶ 56.
Giffords and CLC filed a second administrative complaint,
designated at MUR 7497, on September 17, 2018, *see id.* ¶¶ 3; and
they filed a supplement to the complaint alleging additional
facts on February 8, 2019, *see id.* They also jointly filed a
third administrative complaint, designated as MUR 7524, on
October 22, 2018. *Id.* ¶¶ 60-61. Giffords and CLC filed the
fourth and final administrative complaint, designated as MUR
7553, on December 7, 2018. *Id.* ¶¶ 62-63.

The administrative complaints each alleged that two National Rifle Association of America ("NRA") entities, the NRA Political Victory Fund ("NRA-PVF") and the NRA Institute for Legislative Action ("NRA-ILA"), made unlawful contributions to then-President Trump's presidential campaign and to several Senate campaigns.[2] See Def.'s Mot., ECF No. 41-1 at 20-21; Pl.'s Cross-Mot., ECF No. 48 at 9. In particular, Giffords alleged that "[s]ince at least the 2014 election cycle, the NRA-PFV and the NRA-ILA have coordinated with candidate campaigns to develop advertisements through a common vendor, using a shell company associated with political consulting firm OnMessage," and "[s]ince at least the 2016 election cycle, the NRA-PVF and the NRA-ILA have coordinated with candidate campaigns to place advertisements in complementary fashion, including on the same stations and programs, using shell companies associated with media strategy firm National Media." Compl., ECF No. 1 ¶ 32. Plaintiff alleged that "[b]y coordinating their advertising strategy in this manner, the NRA-PVF and the NRA-ILA have made up to $35 million in contributions to candidate campaigns since the 2014 election, in excess of the contribution limits, in violation of the source restrictions, and without the disclosure

---

[2] According to Giffords, the candidates for federal office included Thom Tillis, Tom Cotton, and Cory Gardner in 2014; Ron Johnson and Donald Trump in 2016; and Matt Rosendale and Josh Hawley in 2018. See Compl., ECF No. 1 ¶ 10.

required under federal law," including "up to $25 million in coordinated, illegal contributions to the Trump campaign in 2016." *Id.* ¶ 33.





However,



███████ ██ ███████ ██████████ the Commission lost the required quorum necessary to vote on the matters. *Id.; see also* 52 U.S.C. § 30109(a)(2). Excepting a short period of time that lasted from June 5, 2020 to July 3, 2020, the FEC did not regain its quorum until December 2020. *See* Pl.'s Notice Regarding FEC Quorum, ECF No. 65 at 1-2.

Once it regained quorum, ████████████





### C. Procedural History

Plaintiff Giffords filed this lawsuit on April 24, 2019. *See* Compl., ECF No. 1. Giffords seeks declaratory and injunctive relief against the FEC for the alleged failure to timely act on four administrative complaints Giffords initiated in 2018. *Id.* ¶¶ 55-63. Giffords requests that the Court declare that the FEC's purported failure to act on its administrative complaints within 120 days was contrary to law under 52 U.S.C. § 30109(a)(8)(A). *Id.* ¶ 66. Giffords also seeks a court order compelling the FEC to conform with the declaration within thirty days after the entry of the Court's declaration. *Id.* at 20 ¶ 2.

On December 6, 2019, FEC filed a motion to dismiss, or in the alternative, for summary judgment. *See* Def.'s Mot., ECF No. 41. Giffords filed an opposition and cross-motion for summary judgment on December 23, 2019, *see* Pl.'s Cross-Mot., ECF No. 48; and FEC filed its reply and opposition on January 13, 2020, *see*

10

Def.'s Reply, ECF No. 55. Giffords filed its reply on January 21, 2020. Pl.'s Reply, ECF No. 60. On June 1, 2021, the Court granted Giffords' motion to expedite consideration of the parties' cross-motions for summary judgment. *See* Min. Order (June 1, 2021). The motions are ripe for adjudication.

## II. Legal Standard

"Because no material facts are in dispute, it is appropriate to resolve this matter on summary judgment." *Democratic Senatorial Campaign Comm. v. FEC (DSCC)*, No. 95-0349, 1996 WL 34301203, at *3 (D.D.C. Apr. 17, 1996). Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether a genuine issue of material fact exists, a court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In ruling on cross-motions for summary judgment, a court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *Shays v. FEC*, 424 F. Supp. 2d 100, 109 (D.D.C. 2006); *Winston & Strawn LLP v.*

11

*F.D.I.C.*, No. 061120, 2007 WL 2059769, at *3 (D.D.C. July 13, 2007).

### III.   Analysis

In the context of ruling upon cross-motions for summary judgment regarding a "failure to act" claim under Section 30109(a)(8), the Court must determine whether the Commission acted "contrary to law" in handling the administrative matters. 52 U.S.C. § 30109(a)(8). The standard for determining whether an agency's failure to act is contrary to law is whether its failure to take action is arbitrary and capricious. *Common Cause*, 489 F. Supp. at 744. "Factors the Court may consider in making its determination include the credibility of the allegation, the nature of the threat posed, the resources available to the agency, and the information available to it, as well as the novelty of the issues involved." *Id.*; *see also In re Nat'l Cong. Club*, Nos. 84-5701, 84-5719, 1984 WL 148396, at *1 (D.C. Cir. Oct. 24, 1984) (per curiam). In addition, it is appropriate for the Court to consider the guidelines the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") outlined in *Telecommunications Research & Action Center v. FCC (TRAC)*, 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling

statute, that statutory scheme may supply
content for this rule of reason;
(3) delays that might be reasonable in the
sphere of economic regulation are less
tolerable when human health and welfare are at
stake;
(4) the court should consider the effect of
expediting delayed action on agency activities
of a higher or competing priority;
(5) the court should also take into account
the nature and extent of the interests
prejudiced by delay; and
(6) the court need not find any impropriety
lurking behind agency lassitude in order to
hold that agency action is unreasonably
delayed.

*Id.* at 80 (citations and internal quotation marks omitted).

Although the FEC's decision whether or not to investigate "is

entitled to considerable deference, the failure to act in making

such a determination is not." *DSCC*, 1996 WL 34301203, at *4.

Upon consideration of the *Common Cause* and *TRAC* factors,

discussed below, the Court finds that the FEC has unreasonably

delayed its consideration of Plaintiff's administrative

complaints.[3]

### A. Credibility of the Allegations

The Court finds that the allegations in the administrative

complaints are credible. First, ███████████████████████

---

[3] The Court shall not address Plaintiff's arguments that the
Commission's delay gives rise to the appearance of impropriety
because the D.C. Circuit has explained that courts "need
not find any impropriety lurking behind agency lassitude in
order to hold that agency action is unreasonably delayed." *TRAC*,
750 F.2d at 80 (internal quotation marks omitted).



[4] Second, the administrative complaints contain "specific documentation of the amounts spent and the purposes of the spending, along with specific evidence" as to the violations alleged. *Citizens for Percy '84 v. FEC*, No. 84-2653, 1984 WL 6601, at *3 (D.D.C. Nov. 19, 1984); *see* Ex. 1 to Pl.'s Cross-Mot., ECF No. 50-4; Ex. 2 to Pl.'s Cross-Mot., ECF No. 50-5; Ex. 3 to Pl.'s Cross-Mot., ECF No. 50-6; Ex. 4 to Pl.'s Cross-Mot., ECF No. 50-7; Ex. 5 to Pl.'s Cross-Mot., ECF No. 50-8; Ex. 6 to Pl.'s Cross-Mot., ECF No. 50-9. Notably, the administrative complaints rely extensively on the FEC's own



records of the expenditures made by the NRA and its affiliates
through the common vendor shell companies in support of the
political candidates. *See Citizens for Percy '84*, 1984 WL 6601,
at *4 (finding delay unreasonable where "[m]uch of the
information in the complaint could be verified from the FEC's
own records"). The administrative complaints also include
"publicly available information demonstrating the links between
the shell companies used in the common vendor scheme, including
records held by the states in which those companies are
incorporated and do business"; Federal Communications Commission
records linking ad placements made by the common vendor shell
companies on behalf of the NRA entities and the political
candidates; and "public statements by candidates and
representatives of the common vendor." Pls.' Cross-Mot., ECF No.
48 at 15 (citing Ex. 1 to Pl.'s Cross-Mot., ECF No. 50-4; Ex. 2
to Pl.'s Cross-Mot., ECF No. 50-5; Ex. 3 to Pl.'s Cross-Mot.,
ECF No. 50-6; Ex. 4 to Pl.'s Cross-Mot., ECF No. 50-7; Ex. 5 to
Pl.'s Cross-Mot., ECF No. 50-8; Ex. 6 to Pl.'s Cross-Mot., ECF
No. 50-9). The administrative complaints appear to provide
sufficient evidence that would allow for the FEC to proceed
expeditiously with its enforcement process, and "▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉" *Citizens for Percy '84*, 1984 WL 6601, at *3. The

FEC also does not dispute that the allegations within the administrative complaints are credible. *See* Def.'s Mot., ECF No. 41-1 at 28 (assuming that Plaintiff's claims are credible); *see also DSCC*, 1996 WL 34301203, at *5 (noting that "[a]t no time has the FEC contended that the allegations in MUR 3774 lacked credibility"); *Citizens for Percy '84*, 1984 WL 6601, at *3 (finding allegations credible where, among other things, "[t]he FEC makes no claim that the allegations were not believable").

## B. Nature of the Threat Posed by the Alleged Conduct

The nature of the threat posed by the alleged violations is significant due to the size of the alleged illegal contributions and the "threat" that the illegal activity will continue if unchecked. *See Citizens for Percy '84*, 1984 WL 6601, at *3 ("The significance of the threat posed by this violation comes not only from the size of the alleged illegal contributions, but also from the possibility of recurrence in the subsequent general election."); *DSCC*, 1996 WL 34301203, at *5 ("The threat to the electoral system is highlighted not only by the amounts of money involved and the impact upon close elections, but by the serious threat of recurrence."). Plaintiff alleges in its administrative complaints that, since 2014, the NRA-PVF and the NRA-ILA "have made millions of dollars in excessive, corporate, and unreported contributions to candidates for federal office, including Thom Tillis, Tom Cotton, and Cory Gardner in 2014, Ron

16

Johnson and Donald Trump in 2016, and Matt Rosendale and Josh Hawley in 2018." Compl., ECF No. 1 ¶ 10. According to Plaintiff, by coordinating with candidate campaigns to develop advertisements through a common vendor using shell companies associated with OnMessage and National Media, the NRA entities "have made up to $35 million in contributions to candidate campaigns since the 2014 election, in excess of the contribution limits, in violation of the source restrictions, and without the disclosure required under federal law." *Id.* ¶ 33. Included within that amount is "up to $25 million in coordinated, illegal contributions to the Trump campaign in 2016." *Id.* If Plaintiff's allegations are true, the threat to the integrity of the electoral process is "obvious." *Citizens for Percy '84*, 1984 WL 6601, at *3. Moreover, Plaintiff's series of complaints also demonstrated to the FEC a threat of recurrence. For example, one of Plaintiff's subsequent administrative complaints documented allegations of coordinated expenditures by the NRA entities and Matt Rosendale for Montana ███████████████████████████ ███████████████████████████████. *See* Pl.'s Cross-Mot., ECF No. 48 at 18-19. Other than pointing out that the complaints concern "economic and political issues" and not "the health or welfare of plaintiff or any other person," the FEC does not seriously contest Plaintiff's characterization of the nature of the threat posed by the alleged conduct. But as discussed

17

further in Part III, Section F, "threats to the health of our
electoral processes also require timely attention." *DSCC*, 1996
WL 34301203, at *8. The Court thus finds that this factor weighs
in Plaintiff's favor.

### C. Availability of Information

As discussed above in Part III, Section A, Plaintiff
provided sufficient evidence to the FEC to establish the
credibility of its administrative complaints, and the FEC does
not contend that the availability of information has in any way
hampered ███████████████████████. "[I]nformation in the
complaint[s] could be verified from the FEC's own records,"
*Citizens for Percy '84*, 1984 WL 6601, at *4; and other
information concerning the link between shell companies used in
the common vendor scheme was also in the public domain and
similarly accessible. ████████████████████████████████████

████████████  ████████████████████████████████████████████
████████████████████  ████████  ████████  ████████████
█████████████████████████████████████████████████████████
███████████████████████████████████████████████████    ███
██████████████████████████████████████    ████    ██
█████████████████████████████████████████████████████████
████████  ██████████████████████████████████████████████
███████████████████████████    ████████████████████████
██████████    ██  ████████  Thus, there is nothing in the record to

18

suggest that the availability of information has contributed to any delay in the Commission's ability to expeditiously progress the matters.

### D. Complexity of the Case or Novelty of the Issues

Plaintiff's administrative complaints involve allegations concerning "millions of dollars in excessive, prohibited corporate, and unlawfully unreported contributions to federal candidates by coordinating political ad spending through the use of common vendors operating through a network of corporate shells." Def.'s Mot., ECF No. 41-1 at 20 (citing Compl., ECF No. 1 ¶ 10). Such allegations are not "novel": according to the FEC, the administrative complaints raise "issues common to many FEC matters." *Id.* at 29; *see also* Pl.'s Cross-Mot., ECF No. 48 at 25 (listing matters raising the same legal issues on the FEC's enforcement docket). Moreover, the regulations underlying Plaintiff's claim date back to the late 1970s. *See Citizens for Percy '84*, 1984 WL 6601, at *4 (finding, in 1984, that claims of coordinated spending were not novel because "[t]he regulations governing this activity were proposed and relied upon prior to the 1976 elections, and were formally promulgated in April, 1977").

Though not disputing that the issues presented are not novel, the FEC does contend, however, that the allegations "describe numerous complicated campaign finance law matters."

19

Def.'s Mot., ECF No. 41-1 at 28-29. ██████████████



████████████████████ Plaintiff concedes

that "the underlying complaints involve lengthy and detailed

factual allegations." Pl.'s Cross-Mot., ECF No. 48 at 24. But

Plaintiff argues that the Commission has all of the information

it needs ████████████████████████████████████████

████████████████████████████████

██████████████████ ████████████████ █

██████████████ *Id.* at 25.

Here, the allegations presented in Plaintiff's four

administrative complaints are undoubtedly factually complex,

though not legally novel. *See Citizens for Percy '84*, 1984 WL

6601, at *4 (recognizing that coordinated contribution claims

involve "analysis of a number of factors"). Any consideration of

the allegations would also involve review of numerous lengthy

and detailed documents ████████████████████████████████

██████████ ██████████ ██████ █████: ████████████

████████████████████████████████ ██: █

██████████ ██████████████████: ████████████,

20

██████████████████████████████████████ ███████ *FEC v. Rose,*
806 F.2d 1081, 1091 (D.C. Cir. 1986). On the other hand,
however, the matters were not so complex ███████████████████
█████████████████████████████████████████████████
██████████████████████████████████████████ █████████████
███████████████████████████████████████████████ ██
███████████████ ██████ ██████████████ █████████ ██
██████████████████████████ █████████████████ ██
████████████████████████████ ███████ ██ ███
██████████████████████████████████████████████████
████████████████████████████████████████████ Thus,
the Court does not find that the complexity of the issues has
been a significant factor ████████████████ █████████ █████
██████████████████████████████████████████████████████████
█████████████████████████████.

### E. Prejudicial Effect and Propriety of the Delay

Defendant argues that "although Giffords makes claims
encompassing many actors over three federal election cycles,
these claims all raise economic (and political) issues common to
many FEC matters, not human safety or welfare issues." Def.'s
Mot., ECF No. 41-1 at 29. Defendant therefore contends that this
factor does not weigh in favor of a finding of unreasonable
delay. Assuming for present purposes that political issues do
not concern human safety or welfare issues, the Court agrees

21

that the D.C. Circuit has instructed that "agency delay is least
tolerable" in cases "in which human health and welfare are at
stake." *Rose*, 806 F.2d at 1092 n.17. But it does not follow, as
Defendant suggests, that Plaintiff's interests and the public's
interests are only prejudiced if there is an imminent threat to
health and safety. Rather, courts in this District have
recognized that "threats to the health of our electoral
processes also require timely attention." *DSCC*, 1996 WL
34301203, at *8. Here, the administrative complaints include
allegations of "millions of dollars of illegal, unreported, and
excessive in-kind contributions," in violation of the FECA.
Compl., ECF No. 1 at 1. In view of the significant amount of
money at issue and the potential harms that could result if
Plaintiff's allegations are proven true, the FEC's failure to
████████████████████████████████████████ more than three years
after the first administrative complaint was filed is
prejudicial.

Moreover, as Plaintiff points out, "the window in which the
FEC can act on [certain] violations is rapidly drawing to a
close." Pl.'s Mot. Expedite, ECF No. 69 at 2-3. "FECA itself
contains no explicit limitations period," and, "[a]s a result,
courts have applied the catch-all five-year limitations period
set forth in 28 U.S.C § 2462 to FECA enforcement actions brought
by the Commission." *Citizens for Responsibility & Ethics in*

*Wash. v. Am. Action Network*, 410 F. Supp. 3d 1, 23 (D.D.C. 2019). Here, "[t]o the extent the violations alleged in Plaintiff's complaints are considered individually, rather than as a pattern of illegal conduct by the NRA, the five-year limitations period for FEC enforcement may have elapsed for the violations committed during the 2014 cycle, and may be rapidly approaching for those committed during the 2016 cycle." Pl.'s Mot. Expedite, ECF No. 69 at 2-3. The FEC's delay in ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ thus also potentially prejudices Plaintiff if the FEC's delay ultimately contributes to a decision to dismiss Plaintiff's administrative complaints because the statute of limitations had expired or is about to expire. *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 892 F.3d 434, 438 (D.C. Cir. 2018).

### F. Resources Available to the FEC and the Effect on Competing Priorities

The FEC contends that these factors weigh in its favor because it is "clearly entitled to deference in the allocation of its resources to meet its statutory obligations," Def.'s Mot., ECF No. 41-1 at 29 (quoting *DSCC*, 1996 WL 34301203, at *5); and it has "experienced a heavy workload and staffing pressures during the short period that [P]laintiff's matters have been pending," *id.* at 30. According to Defendant, the workload and pressures were even further exacerbated by the

partial government shutdown and by the FEC losing its quorum for over a year. *Id.* at 30-32; Def.'s Reply, ECF No. 55 at 25-27. Plaintiff acknowledges that the FEC is entitled to deference, but disputes that the government shutdown excuses the agency's delay. Pl.'s Cross-Mot., ECF No. 48 at 22-23. Plaintiff also argues that FEC's "citation to its generally heavy workload as a justification for delay is belied by the evidence." *Id.* at 23. For example, Plaintiff points to public statements by FEC Chair Ellen L. Weintraub that "[b]efore losing the quorum on September 1, the Commission was making progress to reduce its significant enforcement backlog (even despite the government shutdown that disabled the FEC for most of January)." *Id.*

The Court agrees that "[t]he FEC is clearly entitled to deference in the allocation of its resources to meet its statutory obligations, particularly in this era of shrinking resources." *DSCC*, 1996 WL 34301203, at *5. "It is not for the judiciary to ride roughshod over agency procedures or sit as a board of superintendence directing where limited agency resources will be devoted." *Rose*, 806 F.2d at 1091; *see also In re Barr Labs., Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991) ("[R]espect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities."). This is especially so when the Court views the present

litigation in the context of the circumstances the FEC has faced since Plaintiff filed its administrative complaints.

███████████████████████████ was first disrupted, even if minimally so, by the partial government shutdown that ran from December 2018 to January 2019. Def.'s Mot., ECF No. 41-1 at 30. In addition, the FEC lacked a quorum for approximately 16 months

████████████████████████████████████ ██

██████████████, rendering the agency unable to act on the issues during that time. See Notice Regarding FEC's Quorum, ECF No. 65. As a result, when the FEC regained its quorum in December 2020, it faced a considerable backlog of old and new administrative enforcement matters. See FEC's Notice Subsequent Developments, ECF No. 66 at 1 (noting that, as of September 30, 2020, there were 388 pending matters and a backlog of 200 reports pending with Commissioners). The Court thus does not doubt that the Commissioners have "experienced a heavy workload and staffing pressures" during the time since Plaintiff filed its administrative complaints with the agency. Def.'s Mot., ECF No. 41-1 at 30.

However, it is also true that "[w]hatever deference an agency is due in resource allocation decisions, it is entitled to substantially less deference when it fails to take any meaningful action within a reasonable time period." DSCC, 1996 WL 34301203, at *5; see also id. ("While the Court is mindful of

the discretion due the FEC and all agencies in allocating
resources, such discretion is not a shield from judicial review
of whether the agency has fulfilled its statutory ███████████████
obligations."). ████████████████████████████████████████

████████████████████████  ████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████

██████████████████████████████. After all, despite the unique
circumstances the FEC has faced since late 2018, ██████████████
███████████████████████████████████████████████████████████
██████████████████████  ███████████████████████████████████████
████████████████████████████  █████████████████████████████████
███████████████████████████████████████████. █████  ████████████
████████  ████████  ████████████████████████████████  ██████████
████████████  ████████  ████████████████████████████████████████
████████████  ████████  ████████  █████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████  ████████████████████████████
██████████████████████████████  █████  ████████████████████████
████████████████████████████  ██████████  Although the Court
acknowledges that the FEC has "more than one case on its docket"
to consider during its executive sessions, *Rose*, 806 F.2d at
1081; the FEC cannot ignore its statutory obligations by

allowing a matter to languish ████████████████

██████████████. Accordingly, the Court finds that this factor

weighs in favor of Plaintiff.

### G. Statutory Time Constraints

"Congress did not intend to create a presumption that delay

in excess of 120 days was unreasonable, per se, or that 120 days

was a deadline for final action on complaints." *Citizens for*

*Percy '84*, 1984 WL 6601, at *4. The D.C. Circuit has also

explained that the FEC is not required to complete final action

on an investigation within a two-year election cycle. *See Rose*,

806 F.2d at 1092 n.17 (stating two-year delay in completing an

administrative complaint was not "contrary to law"); *In re*

*National Cong. Club*, 1984 WL 148396, at *1 (explaining no

presumption that a two-year delay was "contrary to law").

However, although "Congress did not impose specific time

constraints upon the Commission to complete final action, . . .

it did expect that the Commission would fulfill its statutory

obligations so that the Act would not become a dead letter."

*DSCC*, 1996 WL 34301203, at *7. As the court in *DSCC* explained:

> [W]hile there are no specific deadlines to
> prod the FEC to forward administrative
> complaints to the Commissioners for "reason to
> believe" determinations, it is clear that the
> agency must nevertheless act reasonably,
> determination of which includes consideration
> of the underlying statutory purposes. The
> absence of a specific requirement in the Act
> that the Commissioners make their finding

27

> within a certain time period is not the
> equivalent of unfettered FEC discretion to
> determine its own time line. Public confidence
> in our democratic electoral system, which the
> Act seeks to protect, turns on investigations
> that are conducted within a reasonable time
> and on effective enforcement. The deterrent
> value of the Act's enforcement provisions are
> substantially undermined, if not completely
> eviscerated, by the FEC's failure to process
> administrative complaints in a meaningful time
> frame.

*Id.* at *8. Thus, although there is no statutory time limit placed on Defendant to complete its review of Plaintiff's matter, its actions cannot be unreasonable.

### H. "Rule of Reason"

Finally, Defendant argues that the "months during which the administrative complaints are alleged to have been pending are plainly not unreasonable periods." Def.'s Mot., ECF No. 41-1 at 27. Defendant notes that the agency's "goal" to complete most enforcement matters is "within 15 months" of receipt, with the expectation that some matters could take longer. *Id.* Defendant further argues that the Court must judge the Commission's reasonableness in total,



 *Id.* at

26.

In determining whether agency inaction is arbitrary and capricious, a rule of reason applies. *See DSCC*, 1996 WL 34301203, at *9.



. Per statute, the Commission was incapable of addressing Plaintiff's complaints while it was without a quorum for approximately 16 months. *See id.* at 24. Once it regained quorum in December 2020,



Neither has the FEC assured the Court "that it is moving expeditiously" to address the claims. *TRAC*, 750 F.2d at 80.

at stake—the Court cannot find that the FEC's failure ███████

█████████ on the matters ████████████████████ is

reasonable. "Such dilatory conduct is not explained and cannot

be condoned if the statute is to have any meaning." *Citizens for*

*Percy '84*, 1984 WL 6601, at *4.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's

motion and **DENIES** Defendant's motion. Pursuant to 52 U.S.C. §

30109(a)(8)(C), Defendant is hereby ordered to conform to the

Court's Order within 30 days of the entry of the Order by making

the reason-to-believe determination set forth in 52 U.S.C. §

30109(a)(2). The Court shall retain jurisdiction over this

matter until Defendant takes final agency action with respect to

Plaintiff's administrative complaints. *See Cobell v. Norton*, 240

F.3d 1081, 1109 (D.C. Cir. 2001); *Alegent v. Health-Immanuel*

*Med. Ctr. v. Sebelius*, 917 F. Supp. 2d 1, 3 (D.D.C. 2012). An

appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:**      **Emmet G. Sullivan**
               **United States District Judge**
               **September 30, 2021**