# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GIFFORDS,

    Plaintiff,

       v.

FEDERAL ELECTION COMMISSION,

    Defendant.

Civil Action No. 1:19-cv-1192 (EGS)

**PLAINTIFF GIFFORDS'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NON-PARTIES THE NATIONAL RIFLE ASSOCIATION OF AMERICA AND NATIONAL RIFLE ASSOCIATION OF AMERICA POLITICAL VICTORY FUND'S MOTION FOR RELIEF FROM ORDERS AND JUDGMENT UNDER RULE 60(b)(4)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iv

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................3

    I.     Legal Background ...........................................................................................3

          A.     FECA and the FEC's Bipartisan Structure ...........................................3

          B.     The FEC's Enforcement Process ..........................................................4

          C.     The Effect of Commissioner Deadlocks ...............................................6

          D.     FECA-Required Confidentiality of Open FEC Enforcement Proceedings........7

          E.     Judicial Review of FEC Dismissals or Delay .....................................8

          F.     FECA Citizen Suits .............................................................................11

    II.    Procedural Background.................................................................................14

          A.     Giffords's FEC Complaints Alleging the NRA Violated FECA ...................14

          B.     Giffords Sues the FEC for Failing to Expeditiously Make a
                 Reason-to-Believe Determination........................................................15

          C.     The Court's September 30, 2021 Ruling Finding the FEC's Delay Contrary
                 to Law and Remanding to the Agency with Instructions to Conform ............16

          D.     The FEC Fails to Conform on Remand and Giffords Files a FECA
                 Citizen Suit Against the NRA and Other Defendants....................................18

          E.     The NRA's Intervention to Unseal the Judicial Record in this Case...............20

          F.     The NRA Files a FOIA Lawsuit Against the FEC ..........................................21

          G.     The FEC's August 2022 Dismissal and Public Release of the
                 Enforcement File................................................................................22

          H.     The NRA Moves Under Rule 60(b)(4) More Than Two Years
                 After Judgment..................................................................................23

LEGAL STANDARD.....................................................................................................23

ARGUMENT .................................................................................................................24

    I.    The NRA's Motion is Improper Because Non-Parties May Not File Motions
       Under Rule 60(b) .........................................................................................24

A.    The D.C. Circuit Has Not Adopted the *Grace* Exception and, Even if it Existed in this Circuit, it Would Not Apply to This Case ...............................25

B.    This Court's Obligation to Confirm Jurisdiction Does Not Authorize the NRA's Non-Party Motion..................................................................................28

II.    The Court's Judgment Is Not Void Under Rule 60(b)(4) Due to Mootness................30

A.    The February 23, 2021 Deadlocks Did Not Dismiss Giffords's Complaints ..31

B.    The February 23, 2021 Deadlocks Did Not Constitute the Reason-to-Believe "Determination" Giffords's Suit Sought..........................32

C.    Even if the February 23, 2021 Deadlocks Were "Statutorily Significant Action," This Court Properly Considered That Action on the Merits in Holding the FEC Failed to Act Expeditiously ................................................33

D.    *45Committee* Does Not Help the NRA's Mootness Argument ......................37

III.    There Was a Case and Controversy .............................................................................39

A.    Giffords and the FEC Were Adverse ..............................................................40

B.    This Court is Not Deprived of Subject Matter Jurisdiction Simply Because a Party Does Not Raise a Specific Argument....................................................42

CONCLUSION......................................................................................................................47

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Agudas Chasidei Chabad of United States v. Russian Federation*,
    19 F.4th 472 (D.C. Cir. 2021) .................................................................24, 25, 26, 29

*Agudas Chasidei Chabad of United States v. Russian Federation*,
    No. 1:05-CV-01548, 2020 WL 13611456 (D.D.C. Nov. 6, 2020) ..............................25, 28, 29

*Agudas Chasidei Chabad of United States v. Russian Federation*,
    No. 1:05-CV-01548, 2020 WL 13652608 (D.D.C. July 28, 2020)....................................26, 29

*Buckley v. Valeo*, 424 U.S. 1 (1976)..................................................................................3

*Campaign Legal Center v. 45Committee, Inc.*,
    118 F.4th 378 (D.C. Cir. 2024).................2, 5, 6, 7, 9, 10, 11, 13, 19, 31, 32, 33, 35, 38, 41, 45

*Campaign Legal Center v. FEC*, 312 F. Supp. 3d 153 (D.D.C. 2018)..........................................12

*Campaign Legal Center v. FEC*, No. 1:20-cv-0809-ABJ,
    2021 WL 5178968 (D.D.C. Nov. 8, 2021)......................................................10, 11, 12, 34, 45

*Campaign Legal Center v. Iowa Values*, 573 F. Supp. 3d 243 (D.D.C. 2021)............................10

*Citizens for Percy '84 v. FEC*, No. 84-2653, 1984 WL 6601 (D.D.C. Nov. 19, 1984)................35

*Citizens United v. FEC*, 558 U.S. 310 (2010) ..................................................................3

*Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71 (D.D.C. 2017)........................................44

*Combat Veterans for Congress Political Action Committee v. FEC*,
    795 F.3d 151 (D.C. Cir. 2015) ..................................................................................4

*Combat Veterans for Congress Political Action Committee v. FEC*,
    983 F. Supp. 2d 1 (D.D.C. 2013) ..................................................................................3

*Common Cause v. FEC*, 108 F.3d 413 (D.C. Cir. 1997) ...................................................9

*Common Cause v. FEC*, 489 F. Supp. 738 (D.D.C. 1980)........................................10, 33, 34, 35

*Common Cause v. FEC*, 842 F.2d 436 (D.C. Cir. 1988) ...................................................9

*CREW v. American Action Network*, 410 F. Supp. 3d 1 (D.D.C. 2019)........................................11

*CREW v. FEC*, 316 F. Supp. 3d 349 (D.D.C. 2018) .......................................................3

*CREW v. FEC*, 55 F.4th 918 (D.C. Cir. 2022) ..............................................................8

*CREW v. FEC*, 923 F.3d 1141 (D.C. Cir. 2019)..............................................................6

*CREW v. FEC*, No. 22-cv-3281-CRC, 2023 WL 6141887 (D.D.C. Sept. 20, 2023)...................5, 8

*Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312 (D.C. Cir. 2015) ......................47

*DCCC v. FEC*, 831 F.2d 1131 (D.C. Cir. 1987)................................................................12

*DSCC v. FEC*, No. CIV.A. 95-0349 (JHG),
    1996 WL 34301203 (D.D.C. Apr. 17, 1996) ........................................................34

*DSCC v. NRSC*, No. 1:97-cv-1493-JHG (D.D.C. June 30, 1997) .................................12

*Empagran, S.A. v. F. Hoffman-La Roche Ltd.*, 453 F. Supp. 2d 1 (D.D.C. 2006)..........26

*End Citizens United PAC v. FEC*, 69 F.4th 916 (D.C. Cir. 2023) ....................................5

*Fashion Valley Mall, LLC v. NLRB*, 524 F.3d 1378 (D.C. Cir. 2008) ...........................44

*FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27 (1981) .....................9

*FEC v. NRA Political Victory Fund*, 513 U.S. 88 (1994).............................................3, 4

*\*FEC v. Rose*, 806 F.2d 1081 (D.C. Cir. 1986)...........................................11, 33, 35, 45

*Federman v. Artzt*, 339 Fed.Appx. 31 (2nd Cir. 2009) .................................................26

*Giffords v. NRA, et al.*, No. 21-cv-2887 (D.D.C. Nov. 2, 2021) ....................................20

*Grace v. Bank Leumi Trust Company of New York*, 443 F.3d 180 (2d Cir. 2006) ............25, 26, 27

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375 (1980) ................39

*Heritage Action for America v. FEC*, 682 F. Supp. 3d 62 (D.D.C. 2023)......................46

*In re Carter-Mondale Reelection Committee, Inc.*, 642 F.2d 538 (D.C. Cir. 1980)........9

*In re National Congressional Club*, Nos. 84-5701, 84-5719,
    1984 WL 148396 (D.C. Cir. Oct. 24, 1984).....................................................9, 10

*INS v. Chadha*, 462 U.S. 919 (1983) .......................................................................42, 43

*Int'l Painters & Allied Trades Indus. Pension Fund v. D & S Custom Design, LLC*,
    No. CIV.A. 06-0028 (RJL), 2006 WL 2793181 (D.D.C. Sept. 28, 2006).........43, 44

*Lord v. Veazie*, 49 U.S. 251 (1850).........................................................................41, 43

*Maldonado v. D.C.*, 61 F.4th 1004 (D.C. Cir. 2023) ...................................................30

*Massaro v. United States*, 538 U.S. 500 (2003) ..........................................................23

*Moore v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 47 (1971) (per curiam)............40, 41, 43

*Muskrat v. United States*, 219 U.S. 346 (1911) ..........................................................40

*Niskey v. Mayorkas*, No. 21-5026, 2021 WL 2525724 (D.C. Cir. June 2, 2021) .........36

*Niskey v. Wolf*, No. CV 13-1269 (JDB), 2020 WL 8366838 (D.D.C. Dec. 10, 2020) ...36

*NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395 (4th Cir. 2022) ...40

v

*NRA, et al. v. FEC*, No. 22-cv-1017-EGS (D.D.C. Apr. 12, 2022)....................................14, 15, 21

*Ratner v. Bakery & Confectionery Workers International Union*,
  394 F.2d 780 (D.C. Cir. 1968) .............................................................................24

*Rogers v. Amalgamated Transit Union Loc. 689*, 98 F. Supp. 3d 1 (D.D.C. 2015) .....................27

*Seattle Opera v. NLRB,* 292 F.3d 757 (D.C. Cir. 2002) ..............................................44

*Spann v. Colonial Village, Inc.*, 899 F.2d 24 (D.C. Cir. 1990)......................................11

*Telecommunications Research & Action Center v. FCC*,
  750 F.2d 70, 80 (D.C. Cir. 1984) (*TRAC*) ...................................................10, 11

*U.S. v. Philip Morris USA Inc.*, 840 F.3d 844 (D.C. Cir. 2016)......................................24

*\*U.S. v. Windsor*, 570 U.S. 744 (2013).................................................40, 42, 43, 46

*U.S. Industries, Inc. v. Blake Construction Co.*, 765 F.2d 195 (D.C. Cir. 1985) .......................23

*\*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) .....................23, 30, 36, 43, 47

**Statutes, Rules, Regulations, and Constitutional Provisions**

11 C.F.R. § 5.4(a)(4) ..........................................................................................5

5 U.S.C. § 706(1) ................................................................................................9

52 U.S.C. § 30106(a)(1) ......................................................................................4

52 U.S.C. § 30106(c) ..................................................................................4, 8, 44

52 U.S.C. § 30107(a)(6) ...............................................................................4, 8, 44

52 U.S.C. § 30109(a)(1)..................................................................................4, 24

52 U.S.C. § 30109(a)(2)......................................................................................4

52 U.S.C. § 30109(a)(3)......................................................................................4

52 U.S.C. § 30109(a)(4)(A)(i) ............................................................................4

52 U.S.C. § 30109(a)(6)(A) ...............................................................................4

52 U.S.C. § 30109(a)(8)......................................................................................33

52 U.S.C. § 30109(a)(8)(A) .........................................................................2, 8, 9, 14

52 U.S.C. § 30109(a)(8)(C) .........................................................................8, 11, 27

52 U.S.C. § 30109(a)(12)(B) ..............................................................................7

52 U.S.C. § 30109(d)(1)(A) ................................................................................7

Fed. R. Civ. P. 24(a) ..........................................................................................27

Fed. R. Civ. P. 55(a) .................................................................................................43

Fed. R. Civ. P. 60(b) .................................................................................................36

Fed. R. Civ. P 60(b)(4) ...........................................................................................1, 23

Fed. R. Civ. P. 60(c)(1) .........................................................................................28, 36

U.S. Const. art. III, § 2 ..............................................................................................39

**Other Authorities**

Compl. *Giffords v. Nat. Rifle Ass'n Pol. Victory Fnd.*, No. 1:21-cv-02887 (LLA) (D.D.C. Nov. 2, 2021), ECF No. 1 ...................................................................................................28

FEC Certification MURs 7427, 7497, 7524, & 7553 (Aug. 31, 2022), https://perma.cc/275U-27HA ...................................................................................................................22

FEC Certification MURs 7427, 7497, 7524, 7553 & 7621 (Oct. 27, 2021), https://perma.cc/Z5MF-Z54Y. .........................................................................18, 23

FEC Public Record re: MUR 7427, *available at* https://www.fec.gov/data/legal/matter-under-review/7427/. ............................................................................................................22

FEC Public Record re: MUR 7497, *available at* https://www.fec.gov/data/legal/matter-under-review/7497/. ............................................................................................................22

FEC Public Record re: MUR 7524, *available at* https://www.fec.gov/data/legal/matter-under-review/7524/ .............................................................................................................22

FEC Public Record re: MUR 7553, *available at* https://www.fec.gov/data/legal/matter-under-review/7553/. ............................................................................................................22

FEC, Legislative History of FECA Amendments of 1976 (1977), https://perma.cc/G23G-SQ7T. .....................................................................11, 12

Joint Report and Proposed Scheduling Order, *NRA v. FEC*, No. 22-cv-1017-EGS (D.D.C. Aug. 15, 2022), ECF No. 19 .............................................................................................21

Joint Status Report, *Giffords v. NRA, et al.*, No. 21-cv-2887 (D.D.C. Dec. 2, 2024), ECF No. 78 ...................................................................................20

Minute Order, *Giffords v. NRA, et al.*, No. 21-cv-2887 (D.D.C. Dec. 17, 2024) ...........................20

Minute Order, *Giffords v. NRA, et al.*, No. 21-cv-2887 (D.D.C. Feb. 13, 2024) ...........................20

Office of Comm'r Ann M. Ravel, FEC, Dysfunction and Deadlock (2017), https://perma.cc/D95J-L7T9. ..........................................................................................12

Order, *Campaign Legal Ctr. v. FEC*, No. 20-CV-1778 (RCL), (D.D.C. Oct. 14, 2020), ECF No. 14 ......................................................................................44

Order, *Campaign Legal Ctr. v. FEC*, No. 21-CV-406 (TJK),
(D.D.C. March 25, 2022), ECF No. 16 ................................................................44

Press Release, FEC, Dara Lindenbaum sworn in as Commissioner (Aug. 2, 2022),
https://perma.cc/Q7U3-LJ85 .............................................................................22

Shane Goldmacher, *Democrats' Improbable New F.E.C. Strategy: More Deadlock Than Ever*,
N.Y. Times (June 8, 2021) ..................................................................................13

Statement of FEC Commissioner Ellen L. Weintraub On the Voting Decisions of FEC
Commissioners (Oct. 4, 2022), https://perma.cc/9LRY-3Z5E. ............................6, 7

Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the
Enforcement Process, 89 Fed. Reg. 19729-02 (Mar. 20, 2024) ("FEC Action Policy") ..........4

Stipulation of Settlement and Dismissal, *NRA, et al v. FEC*, No. 22-cv-1017 (D.D.C. Aug. 8,
2023), ECF No. 34 .............................................................................................21

Wright & Miller, Fed. Prac. & Proc. Civ. § 1350 Motions to Dismiss—Lack of Jurisdiction Over
the Subject Matter (4th ed.) ................................................................................29

## INTRODUCTION

More than three years ago, based on a careful and thorough review of the record and the parties' arguments, this Court issued its opinion and judgment in this case, finding that the Federal Election Commission ("FEC" or "Commission") had acted contrary to law in failing to make determinations regarding four complaints Plaintiff Giffords had filed with the agency. Those complaints detailed a strategy by two affiliates of the National Rifle Association to violate federal campaign financing law by coordinating expenditures with numerous candidates for federal office. The Court ordered the FEC "to conform to the Court's Order within 30 days . . . by making the reason-to-believe determination set forth in 52 U.S.C. § 30109(a)(2)." Mem. Op. at 31, ECF No. 88 ("Op."). When the FEC failed to conform, the Court issued judgment in Giffords's favor and against the Commission, which authorized Giffords to pursue a citizen suit.

Twenty-six months *after* the Court entered judgment, and having not participated as a party in this case, non-party movants the National Rifle Association and one of its affiliates, the National Rifle Association Political Victory Fund (collectively, "the NRA") appeared and requested an order vacating this Court's well-supported orders and judgment under Federal Rule of Civil Procedure 60(b)(4). The NRA's extraordinary request is procedurally improper and based on a profound misreading of the facts and law. It should be denied for at least three reasons.

First, the language of Rule 60(b) and the established law of this circuit do not permit non-parties to seek vacatur. Courts may only "relieve a party or its legal representative from a final judgment." Fed. R. Civ. P. 60(b). Courts in this District, as well as the Court of Appeals, abide by the plain text of this Rule and have, therefore, denied efforts by non-parties to seek this form of relief, even when the movant challenges the Court's subject matter jurisdiction. The NRA

concedes that it is not, and was not, a party to this case and provides no valid reason that it should nonetheless be able to make the instant motion. On this basis alone, the motion should be denied.

Second, the FEC's February 23, 2021 deadlocked "reason-to-believe" votes, of which this Court was aware and properly considered in its decision, did not moot this case, and the NRA's efforts to argue the contrary amount to an improper attempt to litigate the merits of this Court's decision. As the D.C. Circuit recently clarified in *Campaign Legal Center v. 45Committee, Inc.*, 118 F.4th 378, 382 (D.C. Cir. 2024), deadlocked reason-to-believe votes do not result in dismissal of administrative complaints nor represent the end of the Commission's review. The failed reason-to-believe votes at issue were neither the relief Giffords sought, nor were they type of agency action this Court ultimately ordered. Instead, this Court properly considered the Commission's deadlocked votes in its overall analysis of whether the Commission handled Giffords's complaints in accordance with well-established law. The NRA may disagree with the Court's decision, but its dissatisfaction goes to the merits of the case, and therefore does not support a motion under Rule 60(b)(4). And far from assisting the NRA's arguments, *45Committee* undermines their position that a failed vote necessarily moots a suit under 52 U.S.C. § 30109(a)(8)(A), and supersedes the handful of cherry-picked cases on which the NRA relies.

Third and finally, the NRA's novel argument that, although the FEC appeared and vigorously contested the claims in the Complaint, it secretly colluded with Giffords and thereby deprived this Court of jurisdiction is without basis in law or fact. The parties in this case had diametrically opposed interests throughout the litigation—Giffords sought a declaration that the FEC acted contrary to law in its handling of the relevant complaints and the Commission sought dismissal. Moreover, Article III does not require parties to maintain or contest any particular arguments or raise specific facts, and the FEC did not strip this Court of jurisdiction by not making

the (incorrect) argument the NRA now urges. To the extent that the NRA believes those arguments were material, it could have moved to intervene as a party.

For these reasons, explained more fully below, this Court should deny the NRA's belated and improper Motion for Relief from Orders and Judgment, ECF No. 90.

## BACKGROUND

### I.    Legal Background

#### A.    FECA and the FEC's Bipartisan Structure

The Federal Election Campaign Act ("FECA") regulates "federal political campaign financing, *inter alia*, by imposing limitations on contributions and requiring disclosure of persons contributing money for expenditures to influence federal elections." *Citizens for Resp. & Ethics in Washington v. FEC*, 316 F. Supp. 3d 349, 367-68 (D.D.C. 2018). The Act's contribution limits address the "concern that large contributions could be given 'to secure a political *quid pro quo*.'" *Citizens United v. FEC*, 558 U.S. 310, 345 (2010) (quoting *Buckley v. Valeo*, 424 U.S. 1, 26 (1976)). Its disclosure requirements also limit the risk of corruption while "enabl[ing] the electorate to make informed decisions and give proper weight to different speakers and messages." *Id.* at 371.

The FEC is "an independent agency of the United States government with exclusive jurisdiction over the administration, interpretation, and civil enforcement of [FECA]." *Combat Veterans for Cong. Pol. Action Comm. v. FEC*, 983 F. Supp. 2d 1, 5 (D.D.C. 2013) (citing 52 U.S.C. §§ 30106(b)(1), 30107(a), 30109). Because the FEC has exclusive jurisdiction over the civil enforcement of FECA, the agency has "independent litigating authority," outside the control of the Attorney General, to "initiate" and "defend" FECA lawsuits "through its general counsel."

*FEC v. NRA Political Victory Fund*, 513 U.S. 88, 91-92 & n.2 (1994) (quoting 52 U.S.C. § 30107(a)(6)).

Congress "designed the Commission to ensure that every important action it takes is bipartisan." *Combat Veterans for Cong. Pol. Action Comm. v. FEC*, 795 F.3d 151, 153 (D.C. Cir. 2015). The FEC thus consists of six commissioners, no more than three of whom "may be affiliated with the same political party," 52 U.S.C. § 30106(a)(1), and any "decision[] of the Commission" to "exercise . . . its duties and powers" must, at minimum, "be made by a majority vote of" Commissioners. *Id.* § 30106(c).

## B. The FEC's Enforcement Process

Any person may file an administrative complaint with the Commission alleging a violation of FECA. 52 U.S.C. § 30109(a)(1). After the FEC receives a complaint, "the only actions contemplated by FECA" are (1) "voting to find reason to believe" that a person has committed or is about to commit a FECA violation, or (2) voting "to dismiss." Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 89 Fed. Reg. 19729-02, 19730 (Mar. 20, 2024) ("FEC Action Policy").

If the FEC "determines, by an affirmative vote of 4 of its members, that it has reason to believe that a person has committed, or is about to commit, a violation . . . [t]he Commission shall make an investigation of such alleged violation." 52 U.S.C. § 30109(a)(2). After an investigation, if at least four commissioners vote to find there is "probable cause to believe" FECA has been or is about to be violated, the agency must first attempt to resolve the matter through conciliation. *Id.* § 30109(a)(3), (a)(4)(A)(i). If conciliation fails, "the Commission may, upon an affirmative vote of 4 of its members," file a *de novo* civil enforcement suit in federal district court. *Id.* § 30109(a)(6)(A). FECA's requirement that four commissioners vote to authorize an investigation

4

or enforcement action is more stringent than the default requirement that any agency action requires a majority vote since just four commissioners can make up a quorum. *45Committee*, 118 F.4th at 381 (citing Fed. Election Comm'n, Commission Directive No. 10 at 1 (June 8, 1978, amended Dec. 20, 2007), https://perma.cc/7ZMK-TYWS).

Alternatively, "the Commission at any time can dismiss a complaint." *45Committee*, 118 F.4th at 382 (citing 52 U.S.C. § 30109(a)(1), (a)(8)). The FEC can dismiss a complaint in two ways. *Id. First*, "four or more Commissioners can vote to find that there is '*no* reason to believe' a violation has occurred." *Id.* (citing 11 C.F.R. §§ 111.9(b), 111.20(a)). A successful "no reason to believe" vote "occasions dismissal of the complaint, whereas a failed 'reason to believe' vote does not." *Id. Second*, "a majority of sitting Commissioners can vote to 'dismiss' the matter . . . without rendering a four-vote decision on [the] merits." *Id.* (citing 52 U.S.C. § 30106(c); other citations omitted). The agency effectuates a non-merits dismissal by "vot[ing] to close [the] enforcement file." 11 C.F.R. § 5.4(a)(4). Contrary to the NRA's claim that the vote to close the file "merely serves as [the FEC's] authorization for the Office of General Counsel to" notify the administrative parties that a matter has been closed, Statement of Points and Authorities by the NRA in Supp't of Its Mot. for Relief from Orders and Judgment at 6 , ECF No. 90-1 ("NRA Br."), the "vote to close the file" is "a dismissal" under 52 U.S.C. § 30109(a)(8), *see End Citizens United PAC v. FEC*, 69 F.4th 916, 918 (D.C. Cir. 2023) ("In the absence of four votes to proceed, the Commission may dismiss the administrative complaint and close the file."); *Citizens for Resp. & Ethics in Wash. v. FEC*, No. 22-cv-3281-CRC, 2023 WL 6141887, at *6 (D.D.C. Sept. 20, 2023) ("The . . . vote to close the file was indeed a dismissal."); FEC Action Policy, 89 Fed. Reg. at 19730 (explaining that one way "the Commission has resolved Matters" is by "simply clos[ing] the file").

### C.    The Effect of Commissioner Deadlocks

"[T]he FEC's politically balanced composition, designed to avoid partisan domination, created a risk of political deadlock." *Citizens for Resp. & Ethics in Washington v. FEC*, 923 F.3d 1141, 1146 (D.C. Cir. 2019) (Pillard, J., dissenting from denial of rehearing en banc). The D.C. Circuit's *45Committee* ruling recently clarified the effect of such deadlocks on the agency's enforcement procedures. When the Commission is "deadlocked—that is, when no bloc of four Commissioners votes to find either reason to believe or *no* reason to believe," that deadlock "give[s] rise to a dismissal only if a majority of Commissioners separately votes to dismiss the complaint." *45Committee*, 118 F.4th at 382. Although the D.C. Circuit has previously used the "convenient shorthand" phrase "deadlock dismissal" to refer to an FEC dismissal resulting from a deadlocked reason-to-believe vote, the Court cautioned that this phase "should not be misunderstood to mean a deadlocked vote constitutes or automatically occasions a dismissal." *Id.*[1]

Despite a previous deadlock on whether to find reason to believe, a bipartisan Commission majority has "often" agreed to vote to dismiss the complaint. *45Committee*, 118 F.4th at 382. In many cases, the commissioners who voted to find "reason to believe" and pursue enforcement "held their noses" and joined their anti-enforcement colleagues in later voting to dismiss the case "on the theory that complainants had a shot at convincing a court that the Commission's dismissal action had been contrary to law, and the law could then be enforced." Statement of FEC

---

[1]    The D.C. Circuit's clarification in *45Committee* that reason-to-believe deadlocks do not dismiss FEC enforcement matters absent a separate majority-supported vote to dismiss supersedes statements to the contrary expressed in previous district court rulings heavily relied upon by the NRA. *See* NRA Br. at 2, 8-10, 17, 25-34 (citing *Campaign Legal Ctr. v. 45Committee, Inc.*, 666 F. Supp. 3d 1, 2-5 (D.D.C. 2023); *Heritage Action for Am. v. FEC*, 682 F. Supp. 3d 62, 74-76 (D.D.C. 2023); *Campaign Legal Ctr. v. Iowa Values*, 691 F. Supp. 3d 94, 105-08 (D.D.C. 2023)).

Commissioner Ellen L. Weintraub On the Voting Decisions of FEC Commissioners at 6 (Oct. 4, 2022), https://perma.cc/9LRY-3Z5E.

However, if the Commission cannot agree to "dismiss the complaint after a failed reason-to-believe vote, the case remains open," and the agency may conduct additional proceedings, including holding "further reason-to-believe votes" to attempt to reach a bipartisan consensus on the merits. *45Committee*, 118 F.4th at 382.

### D.      FECA-Required Confidentiality of Open FEC Enforcement Proceedings

Until the agency closes a case by dismissing the complaint, "there may be no public disclosure of th[e] votes or any other actions taken by the Commission with respect to the complaint . . . unless the target of the complaint consents to disclosure." *45Committee*, 118 F.4th at 382 (citing 11 C.F.R. § 111.21; 52 U.S.C. § 30109(a)(12)(A)). This confidentiality requirement applies to "any . . . person," including "[a]ny member or employee of the Commission," 52 U.S.C. § 30109(a)(12)(B), and imposes criminal penalties for knowing and willful violations, *see id.* § 30109(d)(1)(A). Only once the FEC dismisses the complaint, may "the Commission make[] public, among other things, the votes taken with respect to the complaint." *45Committee*, 118 F.4th at 382 (citing Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50702, 50703 (Aug. 2, 2016); 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. §§ 111.9(b), 111.20; *see also id.* §§ 4.4(a)(3), 5.4(a)(4)).

Because a deadlocked reason-to-believe vote does not dismiss a complaint, FECA's confidentiality requirements continue to apply even after such a vote and until a Commission majority votes to dismiss, or the target consents to disclosure. *See 45Committee*, 118 F.4th at 382-83 (casting doubt on the contrary holding in *Heritage Action for Am. v. FEC*, 682 F. Supp. 3d 62, 73-76 (D.D.C. 2023)—which the NRA heavily relies upon here—but concluding that the "question

is not before us in this appeal"); *see also CREW*, 2023 WL 6141887, at *10-11 ("respectfully disagree[ing]" with *Heritage Action*'s conclusion that a reason-to-believe deadlock is a dismissal that triggers the FEC's obligation to disclose the administrative record).

### E.    Judicial Review of FEC Dismissals or Delay

Recognizing that the FEC's bipartisan structure "creates a risk that partisan deadlock will prevent enforcement of campaign finance laws," Congress "accounted for that possibility with a judicial review provision." *Citizens for Resp. & Ethics in Washington v. FEC*, 55 F.4th 918, 923 (D.C. Cir. 2022) (Millet, J., dissenting from denial of reh'g en banc). That provision allows any administrative complainant "aggrieved by an order of the Commission dismissing a complaint . . . or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed" to seek review in this District. 52 U.S.C. § 30109(a)(8)(A). The district court hearing the suit "may declare that the dismissal of the complaint or the failure to act is contrary to law" and "direct the Commission to conform with such declaration within 30 days." *Id.* § 30109(a)(8)(C).

Once a complainant files a challenge to an FEC dismissal or delay, FECA does not allow the agency's nonpartisan Office of General Counsel to automatically appear in court to defend the Commission; instead, FECA requires at least four commissioners to authorize the defense of a suit under section 30108(a)(8)(A). *See* 52 U.S.C. §§ 30106(c), 30107(a)(6). This defense-authorization requirement means that in situations where the commissioners are deadlocked on whether to find reason to believe, the agency may not defend a resulting dismissal or delay lawsuit unless enough commissioners who want to pursue enforcement nevertheless choose to authorize a defense of their opposing colleagues' refusal to move forward in an act of bipartisan compromise. *See id.*

In a challenge to an FEC dismissal, the district court reviews the reasoning in the FEC's General Counsel's report to the commissioners in cases where a majority adopted the General Counsel's recommendation to dismiss. *See FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 38 n.19 (1981). Where a Commission majority rejects the General Counsel's recommendation to find "reason to believe" and votes to dismiss, the majority must issue a "statement of reasons" explaining their decision. *See Common Cause v. FEC*, 108 F.3d 413, 415 (D.C. Cir. 1997). Where dismissal follows an FEC reason-to-believe deadlock, the non-majority of commissioners who voted against reason to believe (thereby blocking the FEC from moving forward) must also issue a statement of reasons to "allow meaningful judicial review" of the dismissal, even though that statement is "not law" given its lack of majority support. *Common Cause v. FEC*, 842 F.2d 436, 449 & n.32 (D.C. Cir. 1988).

In a case like this (often called a "delay suit"), where there is a challenge to "a failure of the Commission to act on [the] complaint during the 120-day period beginning on the date the complaint is filed," 52 U.S.C. § 30109(a)(8)(A), "[t]he Commission's failure to act within that 120-day period or any other timeframe is not per se contrary to law," *45Committee*, 118 F.4th at 383. Instead, FECA "allows the Commission a maximum period of 120 days, beginning from the date the complaint is filed, in which to conduct its investigation without judicial intrusion." *In re Carter-Mondale Reelection Comm., Inc.*, 642 F.2d 538, 543 (D.C. Cir. 1980). Once 120 days has passed, the "cause of action to the complainant . . . ripens." *45Committee*, 118 F.4th at 383.

The D.C. Circuit has explained that "Congress appears to have intended that the unreasonableness of the Commission's delay in completing its task be tested under standards generally applicable to review of agency inaction" under the Administrative Procedure Act, 5 U.S.C. § 706(1). *In re Nat'l Cong. Club*, Nos. 84-5701, 84-5719, 1984 WL 148396, at *1 (D.C.

Cir. Oct. 24, 1984) (per curiam). For the last 40 years, the D.C. Circuit has therefore repeatedly instructed district courts—including most recently three months ago in *45Committee*—to "analyze the lawfulness of the Commission's challenged inaction under a set of factors laid out in *Common Cause v. FEC*, 489 F. Supp. 738, 744 (D.D.C. 1980), and *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (*TRAC*)." *45Committee*, 118 F.4th at 383 (citing *FEC v. Rose*, 806 F.2d 1081, 1084 & n.6, 1091-92 & n.17 (D.C. Cir. 1986)); *see also In re Nat'l Cong. Club*, 1984 WL 148396, at *1 (same; decided the same day as *TRAC*). Applying the *Common Cause* and *TRAC* factors, "[w]here the issue before the Court is whether the agency's failure to act is contrary to law, the Court must determine whether the Commission has acted expeditiously." *Common Cause*, 489 F. Supp. at 744 (internal quotation marks omitted); *see also Campaign Legal Ctr. v. Iowa Values*, 573 F. Supp. 3d 243, 252 (D.D.C. 2021) (same).

Under the *Common Cause* factors, the court may look to "the credibility of the allegation, the nature of the threat posed, the resources available to the agency, and the information available to it, as well as the novelty of the issues involved." 489 F. Supp. at 744. The *TRAC* factors consider:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold    that    agency    action    is    'unreasonably    delayed.'"

750 F.2d at 80 (internal citations omitted).

Under these factors, merely taking "some action" on an administrative complaint does not mean that the FEC has acted expeditiously. *Campaign Legal Ctr. v. FEC*, No. 1:20-cv-0809-ABJ,

2021 WL 5178968, at *7 (D.D.C. Nov. 8, 2021) (citing, *inter alia*, *Rose*, 806 F.2d at 1091). Instead, courts examine the FEC's entire "handling of [the] administrative complaint," including any votes taken and investigations conducted, for whether there was "prompt and sustained agency attention to [the] complaint and thorough consideration of the issues it raised." *Rose*, 806 F.2d at 1091.

### F.    FECA Citizen Suits

After review, if the district court declares that a dismissal or failure to act is contrary to law, it "may direct the Commission to conform with [that] declaration within 30 days." 52 U.S.C. § 30109(a)(8)(C). If the FEC fails to conform, the complainant may file a citizen suit, *i.e.*, "a civil action to remedy the violation involved in the original complaint." *Id.* To trigger FECA's private cause of action, a complainant must exhaust its administrative remedies by satisfying two nonjurisdictional claim-processing rules: (1) a court must declare that the FEC's dismissal was contrary to law, and (2) on remand, the FEC must fail to conform with the court's declaration within 30 days. *45Committee*, 118 F.4th at 386-88.

FECA's citizen-suit provision—which is "a feature of many modern legislative programs," *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 30 (D.C. Cir. 1990)—represents Congress's attempt to provide an escape valve for agency inaction and deadlock. In enacting FECA, Congress was aware "that partisan deadlocks were likely to result" from the "six-member Commission be[ing] split down party lines." *Citizens for Resp. & Ethics in Wash. v. Am. Action Network*, 410 F. Supp. 3d 1, 6 (D.D.C. 2019), *reconsidered on other grounds*, 590 F.Supp.3d 164 (D.D.C. 2022). Congress thought enforcement "cannot be left to a commission that is under the thumb of those who are to be regulated." FEC, Legislative History of FECA Amendments of 1976 at 72 (1977) (statement of Sen. Clark), https://perma.cc/G23G-SQ7T. It feared the FEC would become a "toothless lapdog" rather than the "active watchdog" required to "restor[e] [] public confidence in the election

process." *Id.* at 75 (statement of Sen. Scott). Judicial review and possible private enforcement when the agency deadlocks on partisan lines exist "to assure that the Commission does not shirk its responsibility to decide" whether to pursue or dismiss a complaint. *DCCC v. FEC*, 831 F.2d 1131, 1134 (D.C. Cir. 1987) (quoting 125 Cong. Rec. S. 36,754 (1979) (statement of Sen. Pell)).

Even though FECA citizen suits are not new, *see, e.g.*, *DSCC v. NRSC*, No. 1:97-cv-1493-JHG (D.D.C. filed June 30, 1997), the NRA characterizes the filing of three such suits since 2019 as a "blitz" arising from an alleged "scheme" by Democratic commissioners. NRA Br. at 8. But the circumstances resulting in these suits are not some nefarious scheme; instead, they are simply the logical result of the statutory framework Congress created given the predictable (and now increasing) deadlock that inherently arises from the agency's bipartisan six-commissioner structure. *See, e.g.*, Office of Comm'r Ann M. Ravel, FEC, Dysfunction and Deadlock (2017), https://perma.cc/D95J-L7T9; *see, e.g.*, *Campaign Legal Ctr. v. FEC*, 2021 WL 5178968, at *9 ("[T]he languishing of plaintiff's complaint and the failure of the agency to appear in this action are disturbing signs that the agency has been dysfunctional and broken for some time.").

As noted above, when the Commission deadlocks on whether to find "reason to believe" a FECA violation occurred, the commissioners who supported pursuing enforcement *may*—but are not required to—subsequently join their anti-enforcement colleagues in voting to dismiss the administrative complaint or authorize the General Counsel to defend that dismissal in federal court. *See supra* pp. 6-9. "Because of its bipartisan design," any deadlocks arising out of these three votes are merely "part of [the FEC's] *modus operandi.*" *Campaign Legal Ctr. v. FEC*, 312 F. Supp. 3d 153, 164 n.6 (D.D.C. 2018) (internal quotation marks omitted). Yet the NRA treats deadlocks arising out of these three votes with a blatant double standard: When commissioners vote against finding reason-to-believe, the NRA admits a resulting deadlock is merely "evidence of the

12

Congressional scheme working." NRA Br. at 5 (internal quotation marks omitted). But just three pages later, the NRA asserts that when other commissioners vote not to dismiss or defend their colleagues' refusal to pursue enforcement, the resulting deadlocks are suddenly a nefarious "scheme." *Id.* at 8-10. The Court should reject this slanted framing—the fact some commissioners unsurprisingly oppose dismissing or defending cases they would prefer to pursue is no more a "scheme" than their colleagues voting not to pursue those matters the first place. *See, e.g.*, Shane Goldmacher, *Democrats' Improbable New F.E.C. Strategy: More Deadlock Than Ever*, N.Y. Times (June 8, 2021) (quoting one commissioner as stating: "If I don't believe the case ought to be dismissed, why would I vote to dismiss?").

Despite the obvious incentives to deadlock, throughout the FEC's history, commissioners believing a complaint should be investigated have often chosen to vote to dismiss the complaint in an act of bipartisan compromise. But contrary to the NRA's suggestions, *see, e.g.*, NRA Br. at 6, 17, those choices did not calcify into a legal requirement that commissioners *must* dismiss enforcement matters that they would prefer to pursue, *see 45Committee*, 118 F.4th at 382 ("[A] reason-to-believe vote resulting in a deadlock will give rise to a dismissal only if a majority of Commissioners separately votes to dismiss the complaint.").[2]

---

[2]    The NRA's "scheme" framing relies heavily on pre-*45Committee* district court rulings that, to some degree, adopted the now corrected deadlock-dismissal theory and interpreted it to *require* commissioners to vote to close the file and disclose the record after a reason-to-believe deadlock had supposedly already dismissed the matter. *See* NRA Br. at 8-10 (citing *Heritage Action*, 682 F. Supp. 3d at 75-76 ("Because a deadlocked reason-to-believe vote is equivalent to a dismissal (or termination), such a vote requires prompt disclosure."); *Iowa Values*, 691 F. Supp. 3d at 99 (noting partisan-aligned commissioners' criticism of their colleague for "deliberately voting against administratively closing files")).

## II.     Procedural Background

### A.     Giffords's FEC Complaints Alleging the NRA Violated FECA

Giffords filed four administrative complaints with the FEC, from August 16 to December 7, 2018. Compl. ¶¶ 2-5, 55-63, ECF No. 1. The FEC designated those complaints as Matter Under Review ("MUR") Nos. 7427, 7497, 7524, 7553. *Id.* ¶¶ 56, 58, 61, 63. They demonstrate that since at least 2014, the NRA has engaged in an ongoing scheme to evade campaign finance regulations by using a series of shell corporations to surreptitiously and illegally coordinate advertising with at least seven candidates for federal office. *Id.* ¶¶ 2-5, 10-26, 32-54.

Through this scheme, two NRA affiliates—the National Rifle Association of America Political Victory Fund ("NRA-PVF") and the National Rifle Association of America Institute for Legislative Action ("NRA-ILA")—made up to $35 million in illegal, excessive, and unreported campaign contributions across the 2014, 2016, and 2018 elections, including to the Rosendale Campaign and the Hawley Campaign. *See id.* These coordinated contributions violate FECA's contribution limits, corporate contribution ban, and disclosure requirements. *See id.* ¶ 54.

### B.     Giffords Sues the FEC for Failing to Expeditiously Make a Reason-to-Believe Determination

After the FEC failed to act on Giffords's complaints for more than 120 days, Giffords filed this delay suit against the Commission on April 24, 2019 under 52 U.S.C. § 30109(a)(8)(A). *See* Compl., ECF No. 1. Despite not being required to do so, *see supra* pp. 8-9, a Commission majority authorized a defense of the agency against Giffords's suit.[3] Career attorneys in the FEC's

---

[3]     The NRA speculates that the FEC's defense authorization in this case must have authorized "something less than a full defense of this suit" because of the presence of redactions under FOIA Exemption 5 on an FEC vote certification. NRA Br. at 11-12. The NRA appears to have obtained this record during a FOIA suit it filed against the FEC and which it agreed to dismiss without challenging the FEC's redactions. *See* Stipulation of Settlement and Dismissal, *NRA, et al. v. FEC,*

nonpartisan Office of General Counsel appeared in the case and defended the agency. *See, e.g.*, ECF Nos. 12-14.

After Giffords conducted discovery, the parties cross-moved for summary judgment in December 2019. *See* ECF Nos. 41, 44-45. The FEC's motion for summary judgment argued that the "specific actions the agency has taken in these matters plainly shows that it has acted reasonably," and that "[t]here is no basis to find unlawful delay here." FEC's Mot. to Dismiss, or in the Alternative, for Summ. J. at 2, ECF No. 41-1. To support those contentions, the agency disclosed to the Court—under seal to maintain FECA-required confidentiality of open enforcement proceedings—the alleged actions it had taken in the administrative proceedings, including those since the suit was filed. *See id.* at 10-12, 24-26; *see also* FEC Resp. to Non-Party Mot. for Relief from J. at 2, ECF No. 94 ("FEC Resp. to NRA Mot.").

Giffords cross-moved for summary judgment. As the NRA acknowledges, "Giffords . . . sought summary judgment on the grounds that the FEC had failed 'to *determine* whether there is reason to believe [the respondents] violated FECA and should therefore be investigated.'" NRA Br. at 12 (emphasis added) (quoting Pl.'s Mem. Supp. Cross-Mot. Sum. J. & Opp'n at 14, ECF No. 48 ("Giffords MSJ")); *see also* Giffords MSJ at 7 (alleging that the FEC "has failed to act expeditiously to *determine* whether there is reason to believe the [respondents] violated FECA and should therefore be investigated" (emphasis added)); *see also id.* (objecting that "the Commission has not yet completed the initial stage of enforcement by making a *determination* of reason to believe" (emphasis added)).

---

No. 22-cv-1017 (D.D.C. Aug. 8, 2023), ECF No. 34. This Court should reject the NRA's supposition about what the agency's privileged materials do or do not say.

While the cross motions were pending, the FEC filed two notices of subsequent developments informing the Court of new facts regarding the FEC's ongoing handling of Giffords's administrative complaints. ECF Nos. 84-85. The first of those two notices stated that, on February 9, 2021, the Commission held a vote on a motion to find "no reason to believe" the violations alleged in two of the four complaints occurred. ECF No. 84 at 2-3. That vote failed in deadlock, 2-3, with one recusal. *Id.* All four of Plaintiff's administrative complaints were held over "for further consideration" at the Commission's next meeting. *Id.* The FEC's second notice of subsequent developments informed the Court that on February 23, 2021, the Commission held a vote to find "reason to believe," a vote to find "no reason to believe," and a vote to close the file, all of which also failed to receive the necessary four votes to pass and thus deadlocked. ECF No. 85 at 1-2.

In response to those notices, Giffords pointed out that "[t]hese votes have done nothing but extend the Commission's unlawful failure to act on the administrative complaints," because, due to the deadlocks, "an investigation of Plaintiff's administrative complaints cannot begin." Pl.'s Resp. to Def.'s Notice of Subsequent Developments at 2, ECF No. 86.

## C.    The Court's September 30, 2021 Ruling Finding the FEC's Delay Contrary to Law and Remanding to the Agency with Instructions to Conform

On September 30, 2021, the Court issued a memorandum opinion and order granting Giffords's motion for summary judgment. Op. The Court's 19-page analysis painstakingly applies the *Common Cause* and *TRAC* factors and concludes that "the FEC has unreasonably delayed its consideration of Plaintiff's administrative complaints." *Id.* at 13. The Court properly considered the entire factual record of the FEC's handling of the administrative complaints when applying the *Common Cause* and *TRAC* factors. The Court found that Giffords's allegations were credible, *id.* at 13-15, the "nature of the threat posed by the alleged violations is significant," *id.* at 16, the

availability of information had not delayed "the Commission's ability to expeditiously progress the matters," *id.* at 19, and "the FEC's failure to reach a reason-to-believe determination more than three years after the first administrative complaint was filed is prejudicial" given the threat posed by the allegations to the electoral system, *id.* at 22.

The Court's analysis also fully considered the significance of the FEC's February 23, 2021 deadlocked votes, and properly found those votes helped demonstrate that the FEC's delay was contrary to law. First, the Court found that the February 23, 2021 vote showed the commissioners had "a firm grasp on the complex issues at play" at that time, and thus that complexity could not have been "a significant factor in the Commissioners' failure to reach a decision during executive sessions in the approximately seven months since the February vote." Op. at 21.  Second, the Court found that the "last deadlocked vote on February 23, 2021" showed that the agency was able to consider Giffords's complaints despite a heavy workload and a government shutdown and loss of commissioner quorum that had occurred prior to that vote. *Id.* at 26.  The Court also noted the lack of "any action" since the February 23 vote and concluded that "the FEC cannot ignore its statutory obligations by allowing a matter to languish for months following an inconclusive vote." *Id.* at 26-27.

Finally, applying *TRAC*'s rule of reason, the Court concluded that the agency's handling of the matter "appear[s]" to have been "substantially justified" until its "inconclusive" votes on February 9 and 23, 2024. Op. at 30. But, the Court explained, "there is no evidence before the Court indicating that the FEC has taken any actions to discuss or to vote on the matters again during any subsequent executive session since February 23, 2021." *Id.* That delay was unreasonable especially given that the February 23 vote demonstrated that the Commissioners had already "carefully considered and underst[oo]d the facts, legal issues, and interests at stake." *Id.* at

30-31. Given that, the Court concluded that it "cannot find that the FEC's failure to take any action on the matters during the past 7 months is reasonable." *Id.* at 31.

The Court's memorandum opinion concludes by declaring the FEC's delay contrary to law and directing the FEC "to conform to the Court's Order within 30 days . . . by making the reason-to-believe determination set forth in 52 U.S.C. § 30109(a)(2)." *Id.*; *see also* Order at 1, ECF No. 71 (same). The Court also said it "shall retain jurisdiction over this matter until Defendant takes final agency action with respect to Plaintiff's administrative complaints." Op. at 31.

### D.   The FEC Fails to Conform on Remand and Giffords Files a FECA Citizen Suit Against the NRA and Other Defendants

More than 30 days later, on November 1, 2021, the Court held a status conference during which the FEC confirmed that it had failed to even vote whether to find reason to believe, let alone make the reason-to-believe determination the Court's September 30 Order required. FEC counsel reported that Giffords's administrative complaints "remain open," and that, "last week," the FEC attempted, but failed, to dismiss the matter by taking "an additional vote on whether to close the file.  That vote did not pass." Hr. Tr. at 6, ECF No. 89. FEC counsel's report during the conference was confirmed when, in September 2022, the FEC released its enforcement files for Giffords's complaints. Those files show that the agency held only a failed vote to close the file and no votes to find reason to believe during the 30-day conformance period. *See* FEC Certification MURs 7427, 7497, 7524, 7553 & 7621 (Oct. 27, 2021), https://perma.cc/Z5MF-Z54Y; *see also* FEC Resp. to NRA Mot. at 3 (FEC confirming, again, that "no additional vote was taken regarding reason to believe" during the conformance period).

FEC counsel also informed the Court at the November 1 conference that the commissioners who had previously voted in February 2021 not to find reason to believe had submitted their statement of reasons to the administrative record. ECF No. 89 at 6. Counsel stressed, however, that

18

the statement of reasons was still non-public and "will be released publicly when the files in the matters are closed" upon a successful, majority supported vote to dismiss. *Id*. Only then would FECA's confidentiality provision (and its potential criminal penalties) no longer prohibit disclosure of the administrative file. *See supra* pp. 7-8.

Given the FEC's failure to conform, counsel for Giffords asked the Court to "authorize th[e] private action" provided under FECA, *see* 52 U.S.C. § 30109(a)(8)(C). ECF No. 89 at 7. In response, the Court asked "how would the Court have known . . . but for the status conference today that there had been a vote and the results of the vote?  How would the plaintiffs have known that?" *Id*. FEC counsel responded that the FEC would have notified the administrative parties if the FEC's vote to dismiss succeeded, but otherwise the parties would remain "unaware." *Id.* at 7-8. Given counsel's answer, the Court then asked when the FEC would close the matter and whether closure is a "condition preceding the filing of [Giffords's] private action." *Id.* at 8. FEC counsel responded that he had no information on when the file would be closed. *Id.* Before FEC counsel could describe "[e]xactly what constitutes" the conditions precedent for filing a citizen suit, the Court stated: "Let me get you off the hot seat. Maybe that should be an issue to be litigated on the public record" later in the private action. *Id.* at 8-9.  As detailed above, *see supra* pp. 8-11, closure is not a condition precedent for a FECA citizen suit: After remand, the citizen suit ripens if the FEC fails to conform with the Court's "contrary to law" declaration within 30 days. *45Committee*, 118 F.4th at 386-88. That occurred here, given the FEC's failure to make the reason-to-believe determination required by the Court's September 30, 2021 order. Accordingly, after the November

19

1, 2021 conference, the Court entered an order finding the FEC failed to conform and authorizing Giffords's citizen suit. ECF No. 75.[4]

On November 2, 2021, Giffords filed a FECA citizen suit against the two NRA affiliates, the NRA-PVF and the NRA-ILA, and other defendants. *See Giffords v. NRA, et al.*, No. 21-cv-2887 (D.D.C. Nov. 2, 2021). The defendants filed motions to dismiss in January 2022. In February 2024, those motions were stayed pending the D.C. Circuit's resolution of *45Committee*. *See* Minute Order, *Giffords v. NRA, et al.*, No. 21-cv-2887 (D.D.C. Feb. 13, 2024). After *45Committee* was decided, the NRA and its co-defendants requested that the stay be extended pending this Court's resolution of the NRA's instant Rule 60 motion. *See* Joint Status Report, *Giffords v. NRA, et al.*, No. 21-cv-2887 (D.D.C. Dec. 2, 2024), ECF No. 78. Giffords opposed that request, arguing in part that the Rule 60 motion "is unlikely to succeed" for reasons repeated herein. *Id.* at 6-9. The NRA's stay request was denied and the court ordered the parties to propose a new briefing schedule "[i]n light of . . . *45Committee*." *See* Minute Order, *Giffords v. NRA, et al.*, No. 21-cv-2887 (D.D.C. Dec. 17, 2024).

**E.    The NRA's Intervention to Unseal the Judicial Record in this Case**

Eleven days after this Court found that the FEC failed to conform, on November 12, 2021, the NRA moved to intervene in this case—not as a party, but for the limited purpose of moving to unseal the judicial record after the NRA agreed to waive FECA's confidentiality protections. ECF

---

[4]    The NRA's alternative theory of what was at issue in the above exchange between the Court and FEC counsel, NRA Br. at 16, has no basis in fact and is obviated by *45Committee* in any event. The NRA claims "there was uncertainty" as to whether the citizen-suit preconditions were satisfied because the FEC's February 23, 2021 reason-to-believe deadlock and the submission of a statement of reasons suggested that the matter was really closed. *See id.* But the NRA's "deadlock dismissal" theory—now debunked by *45Committee*—was not discussed at the November 1, 2021 conference. *See generally* ECF No. 89. Instead, FEC counsel accurately reported that the matter remained open notwithstanding the deadlock and submission of documents to the (still open) enforcement file.

No. 77. Final judgment was entered six days later, on November 18, 2021. ECF No. 81. On December 13, 2021, the Court granted the NRA's motion and unsealed the record. *See* Minute Order dated Dec. 13, 2021. Once the record was unsealed, the NRA obtained access to the documents the FEC filed in the case evidencing its alleged actions on Giffords's complaints, including the FEC's February 23, 2021 reason-to-believe deadlocks. *See* ECF No. 85.

### F.    The NRA Files a FOIA Lawsuit Against the FEC

Four months later, on April 12, 2022, the NRA filed a Freedom of Information Act ("FOIA") suit against the FEC, seeking premature, pre-dismissal access to the FEC's administrative file. *See NRA, et al. v. FEC*, No. 22-cv-1017-EGS (D.D.C. Apr. 12, 2022). As the NRA's Rule 60 briefing demonstrates, *see* NRA Br. at 18-19, that lawsuit was also based on mistaken adherence (by the NRA and by three partisan-aligned FEC commissioners) to the "deadlock dismissal" theory that *45Committee* rejected. In August 2022, the FEC voluntarily produced more than 1,000 pages of material to the NRA and withheld other materials subject to FOIA exemptions. *See* Joint Report and Proposed Scheduling Order at 2, *NRA v. FEC*, No. 22-cv-1017-EGS (D.D.C. Aug. 15, 2022), ECF No. 19. The NRA agreed to dismiss the action in August 2023 without moving the Court to require the FEC to produce withheld material. *See* Stip. of Settlement and Dism., *NRA, et al. v. FEC*, No. 22-cv-1017 (D.D.C. Aug. 8, 2023), ECF No. 34.

During the FOIA case, the FEC produced to the NRA a sample index of more than 3,600 items the agency withheld pursuant to FOIA exemptions. *See* NRA Br. at 21 (citing Exh. J). That index further demonstrates that this Court correctly decided the FEC's delay in this case was unreasonable. Out of those thousands of items, the NRA can point only to three emails exchanged between attorneys in the offices of the FEC's three Republican commissioners (who are not Office of General Counsel staff) as alleged evidence that "the FEC" was active between March and May

2021. NRA Br. at 20-22. Far from showing the FEC was acting expeditiously during this time, these three emails show only the interactions of staff for one non-majority bloc of commissioners, who were apparently preparing that bloc's statement of reasons for the (then still open) administrative file. As the FEC's response to the NRA's motion accurately states, "statements of reasons themselves are not 'action' on the administrative complaint—much less the mere drafting of them." FEC Resp. to NRA Mot. at 5. In any event, the FEC had already "promptly notified the Court at the November 1, 2021 status conference that certain Commissioners' statement of reasons was issued on October 26, 2021, so the Court had that information before it when" it held the FEC had failed to conform on November 1. *Id.* at 5-6.

### G.    The FEC's August 2022 Dismissal and Public Release of the Enforcement File

More than eight months after final judgment in this case, a new Democratic commissioner arrived at the FEC[5] and subsequently joined the three Republican commissioners opposed to enforcement in this case by voting to close the file, thereby dismissing Giffords's administrative complaints. FEC Certification MURs 7427, 7497, 7524, & 7553 (Aug. 31, 2022), https://perma.cc/275U-27HA. That dismissal triggered the FEC's September 30, 2022 disclosure of the matter's administrative file,[6] although much of the information contained therein had already been disclosed to the Court under seal. Among the documents the FEC released was the October 26, 2021 vote certification evidencing that the agency in fact had failed to conform to this Court's

---

[5]    *See* Press Release, FEC, Dara Lindenbaum sworn in as Commissioner (Aug. 2, 2022), https://perma.cc/Q7U3-LJ85.

[6]    *See generally* FEC Public Record re: MUR 7427, *available at* https://www.fec.gov/data/legal/matter-under-review/7427/; FEC Public Record re: MUR 7497, *available at* https://www.fec.gov/data/legal/matter-under-review/7497/; FEC Public Record re: MUR 7524, *available at* https://www.fec.gov/data/legal/matter-under-review/7524/; FEC Public Record re: MUR 7553, *available at* https://www.fec.gov/data/legal/matter-under-review/7553/.

contrary to law order. *See* FEC Certification MURs 7427, 7497, 7524, 7553 & 7621 (Oct. 27, 2021), https://perma.cc/Z5MF-Z54Y.

The administrative record was not "unlawfully withheld" prior to the FEC's August 28, 2022 successful vote to close the file, as the NRA claims, NRA Br. at 17, because, as *45Committee* makes clear, the FEC had not dismissed Giffords's complaint a year and a half earlier in February 2021 when it deadlocked on whether to find reason to believe. *See supra* pp. 6-7, 19.

### H.    The NRA Moves Under Rule 60(b)(4) More Than Two Years After Judgment

On January 26, 2024—more than 26 months after this Court's final judgment, 25 months after the NRA's intervention and the unsealing of this case's record, 24 months after the NRA filed a motion to dismiss in Giffords's citizen suit, 17 months after the FEC produced more than 1,000 pages to the NRA under FOIA, and 16 months after the FEC released the administrative file— non-party NRA filed the instant Rule 60(b)(4) motion.

## LEGAL STANDARD

"Both the judiciary and the parties in proceedings before the courts have a strong interest in the orderly process of litigation and in the finality of judgments." *U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 209 (D.C. Cir. 1985); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) (recognizing "the law's important interest in the finality of judgments"). "Rule 60(b) . . . provides an exception to finality that allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269-70 (2010) (internal citations and quotation marks omitted).

Under Fed. R. Civ. P 60(b)(4), a court may relieve "a party" from a final judgment if "the judgment is void." Rule 60(b)(4) applies "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party

of notice or the opportunity to be heard." *U.S. v. Philip Morris USA Inc.*, 840 F.3d 844, 850 (D.C. Cir. 2016) (quoting *Espinosa*, 559 U.S. at 271).

## ARGUMENT

**I.    The NRA's Motion Is Improper Because Non-Parties May Not File Motions Under Rule 60(b)**

Rule 60, the basis of the NRA's motion, affords relief in limited circumstances: "On motion and just terms, the court may relieve *a party or its legal representative* from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b) (emphasis added). Thus, "[r]ule 60(b) by its own terms is available only to 'a party or [its] legal representative.'" *Ratner v. Bakery & Confectionery Workers Int'l Union*, 394 F.2d 780, 782 (D.C. Cir. 1968) (quoting Fed. R. Civ. P. 60(b)); *see also Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 19 F.4th 472, 477 (D.C. Cir. 2021) (quoting *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989)) (affirming district court ruling that non-party was not entitled to Rule 60 relief "[b]ecause the Federal Rules of Civil Procedure are to be accorded 'their plain meaning'"). This is true even where a non-party's Rule 60(b) motion claims that the district court lacks subject-matter jurisdiction. *See Agudas*, 19 F.4th at 477.

The NRA is neither a party to this case nor the legal representative of any party to the case, and thus is not entitled to relief under Rule 60(b). *See Agudas*, 19 F.4th at 477. The NRA declined to attempt to fully intervene in this litigation, although it was certainly aware of the proceedings as a respondent to the underlying administrative proceeding (in the case of NRA-PVF)[7] and as an affiliate prominently named in the Complaint (in the case of the National Rifle Association). *See Agudas*, 19 F.4th at 477 (subject of a third-party subpoena was not entitled to seek vacatur of an

---

[7]    *See* 52 U.S.C. § 30109(a)(1)

("Within 5 days after receipt of a complaint, the Commission shall notify, in writing, any person alleged in the complaint to have committed such a violation.").

underlying default judgment because it was not party and had not participated in the "litigation resulting in the judgments it [sought] to have vacated."); *see also Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, No. 1:05-CV-01548, 2020 WL 13611456 at *9 (D.D.C. Nov. 6, 2020) (same).

The NRA nonetheless suggests this Court may depart from that language and grant the motion either (1) under an alleged exception described in a non-binding, out-of-circuit case, and (2) because the NRA's objections are allegedly jurisdictional. NRA Br. at 43-45. The NRA's arguments are without merit and the motion is improper.

### A. The D.C. Circuit Has Not Adopted the *Grace* Exception and, Even if it Existed in This Circuit, it Would Not Apply to This Case

The NRA does not dispute that it is not a party to this action. It nevertheless invites this Court to rewrite the Federal Rules of Civil Procedure to permit their motion because it claims to be "strongly affected" by the judgment, relying on a Second Circuit decision from 2006. *See* NRA Br. at 43 (citing *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180 (2d Cir. 2006)). The NRA's argument is misplaced: The D.C. Circuit has not adopted this exception and, even if such an exception existed, it would not apply here.

*First*, neither this Court nor the D.C. Circuit have adopted an exception for non-parties who are "strongly affected" by the judgment. *See* NRA Br. at 43. To the contrary, the D.C. Circuit has affirmed a district court ruling *rejecting* the *Grace* exception. *See Agudas*, 19 F.4th at 477. In *Agudas*, the district court expressly declined to adopt *Grace*'s "atextual third category of entities that may invoke Rule 60(b)" given both the plain text of Rule 60(b) and the D.C. Circuit's admonition that courts have no authority to "craft *ad hoc* exceptions" to the rules. *Agudas*, 2020 WL 13611456, at *10 (internal citations omitted). On appeal, the D.C. Circuit affirmed, stating that, "[a]s this court [has] recognized . . . 'Rule 60(b) by its own terms is available only to a party or [its] legal representative seeking relief from a final judgment.'" *Agudas*, 19 F.4th at 477 (quoting

*Ratner*, 394 F.2d at 782). The Court also found that, in any event, the plaintiff's "reliance on the narrow exception in *Grace* . . . is misplaced," since the Second Circuit's exception "does not apply" absent a showing of "fraud or deception of the court," in addition to an asserted interest in the judgment. *Agudas*, 19 F.4th at 477. Other decisions in this District have also declined to follow *Grace*. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n,* No. 1:05-CV-01548, 2020 WL 13652608, at *2 (D.D.C. July 28, 2020) ("Given the absence of binding precedent and the narrowness of *Grace*'s holding, this Court will follow the plain language [of Rule 60(b)]."); *Empagran, S.A. v. F. Hoffman-La Roche Ltd.*, 453 F. Supp. 2d 1, 7 n.6 (D.D.C. 2006) (declining to apply the *Grace* exception while observing that the Second Circuit "considered its holding to be limited to the particular circumstances of that case").

*Second*, even if the *Grace* exception applied in this Circuit, it would not apply here. As described in that decision, the Second Circuit created "an exceedingly narrow exception" to Rule 60(b) that the court "limit[ed] . . . to the facts of this case." *Grace*, 443 F.3d at 188; Specifically, that court held:

> where plaintiffs enter into a settlement agreement with a judgment-proof, pro se defendant with the intent at the time of the settlement to collect from a third party that allegedly received fraudulent conveyances, and further, they attempt to use the judgment as a predicate for a fraudulent conveyance action against the third party, the third party is "strongly affected" by the judgment and entitled to standing to bring a Rule 60(b) motion.

*Id.* The Second Circuit has since declined to extend Grace beyond its unusual facts. *See, e.g.*, *Federman v. Artzt*, 339 Fed.Appx. 31, 33-34 (2nd Cir. 2009) (summary order).

Plainly, nothing similar occurred here. There was no settlement, nor has any party alleged a fraudulent conveyance. The NRA resorts to allegations of the "FEC's deception," NRA Br. at 43, but that is belied by the record in this case and the FEC's response to the motion. *See infra* Section III; *see also* FEC Resp. to NRA Mot. at 5. And the judgment in this case was not the result of a

"process devoid of due process protections and marred by serious procedural shortcomings," *Grace*, 443 F.3d at 188.[8] *Grace*'s facts are a far cry from the proceedings in this case. See *supra* pp. 14-23.

*Third*, even if its description of the applicable law was correct—and it is not—the NRA is not "strongly affected" by the judgment in this case. The judgment does not require the NRA to do anything or to abstain from any act, and the underlying decision turns on FEC's conduct, not the NRA's. The only way in which the NRA can claim that it was affected by the judgment in this case is that it enabled Giffords to file its citizen suit, *see* NRA Br. at 43, which the NRA is defending— precisely the outcome Congress envisioned, *see* 52 U.S.C. § 30109(a)(8)(C). The NRA identifies no authority for the proposition that merely being named a defendant[9] in a lawsuit qualifies it for the Second Circuit's "exceedingly narrow" and atextual exception to Rule 60(b). Rather, the prejudice of having to defend oneself in a civil suit is "minimal." *Rogers v. Amalgamated Transit Union Loc. 689*, 98 F. Supp. 3d 1, 8 (D.D.C. 2015).

To the extent the NRA had an interest in the outcome of this case, the Rules of Civil Procedure provided an appropriate avenue for pursuing that interest—a motion to intervene. *See* Fed. R. Civ. P. 24(a). Despite now claiming to have such a profound interest in the judgment as to permit an exception to the Rules, the NRA sought only to intervene for the limited purpose of unsealing the judicial record, and did so after this Court had issued its decision on the merits and

---

[8]    Specifically, the Second Circuit found the judgment was the result of "no evidentiary hearings, no detailed affidavits, and no documentary evidence," that the underlying settlement was the result of a corporation appearing *pro se*, and that the non-lawyer who negotiated the settlement was acting in his own interest, which was adverse to the corporation. *Grace*, 443 F.3d at 193.

[9]    Notably, two other defendants to the citizen suit—Josh Hawley for Senate and Matt Rosendale for Montana—have neither filed independently nor sought to join the NRA's Rule 60(b)(4) motion, which has been pending for almost a year.

Giffords had commenced its citizen suit. ECF Nos. 77, 81, 88; Compl. *Giffords v. Nat. Rifle Ass'n Pol. Victory Fnd.*, No. 1:21-cv-02887 (LLA) (D.D.C. Nov. 2, 2021), ECF No. 1.

The NRA's claimed interest is further undermined by its extensive delay. Motions "under Rule 60(b) must be made within a reasonable time" and, in most instances, within a year. Fed. R. Civ. P. 60(c)(1). Even assuming this restriction does not apply to Rule 60(b)(4) motions, as the NRA claims, *see* NRA Br. at 23-24, the NRA's decision to sit on its hands until 2024—26 months after judgment—is at odds with its newly-asserted "strong[]" interest. NRA Br. at 43. Moreover, the NRA's extensive delay is prejudicial to Giffords and its interest in the finality of this court's judgment, which is now more than three years old. The NRA has done little to demonstrate that it has such an interest that this Court should run afoul of the D.C. Circuit's holdings and carve out an exception to Rule 60(b)'s plain text.

### B.    This Court's Obligation to Confirm Jurisdiction Does Not Authorize the NRA's Non-Party Motion

The NRA also seeks to avoid the plain text of Rule 60(b) by invoking this Court's independent obligation to determine whether it has jurisdiction. NRA Br. at 44-45. Here too, the NRA's purported justification is unpersuasive. At the outset, the NRA's argument fails because, as detailed *infra* Section II, the NRA's motion is in reality an improper attempt to challenge the merits of this Court's judgment under the guise of a jurisdictional challenge.

But even if the NRA's arguments were jurisdictional in nature, the D.C. Circuit has made clear that the NRA would still lack standing to seek relief under Rule 60(b). In *Agudas*, the Court of Appeals affirmed the district court's denial of a non-party's Rule 60(b)(4) motion because the movant was not a party to the judgment, 19 F.4th at 473, notwithstanding the non-party's argument that the district court had lacked subject matter jurisdiction to impose liability against the defendant, the Russian Federation. *See Agudas*, 2020 WL 13611456, at *9 (denying stay of

discovery pending appeal); *see also Agudas*, 2020 WL 13652608, at **1-2 (denying motion under Rule 60(b)(4)-(6)).

The NRA's claim that the D.C. Circuit addressed the non-party's subject matter jurisdiction arguments in *Agudas*, *see* NRA Br. at 44-45, is simply wrong. *See Agudas*, 19 F.4th at 472. The Court of Appeals affirmed the district court ruling denying the Rule 60(b) motion on non-party grounds without considering the arguments the movant sought to assert in that motion. *Id.* Although the *district court* discussed the non-party's jurisdictional arguments in a separate opinion denying the non-party's request to stay discovery pending appeal, it did so only to assess the appeal's likelihood of success, and in doing so, made clear that the movant's non-party status was an independent and sufficient reason to deny the Rule 60 motion:

> [Movant's] arguments about subject-matter jurisdiction are clearly wrong, as discussed below. But more fundamentally, [Movant] does not even have standing to deploy those arguments via a Rule 60(b) motion. Rule 60(b) states that "on motion ... the court may relieve a party or its legal representative from a final judgment." Fed. R. Civ. P. 60(b). So may anyone in the world make such a motion to secure relief for a party or its legal representative? No.

*Agudas*, 2020 WL 13611456, at *9. Far from supporting the NRA assertions, *see* NRA Br. at 44, *Agudas* is fatal to the NRA's claim there is a jurisdictional exception to Rule 60(b)'s party requirement.

The NRA's other citations offer it no help. The NRA quotes Wright and Miller out of context to suggest that interested parties may file Rule 60(b)(4) motions whenever they want. *See* NRA Br. at 44. The actual quotation, however, states an interested party may raise jurisdictional defects "either in the answer or in the form of a suggestion to the court prior to final judgment," 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1350 Motions to Dismiss—Lack of Jurisdiction Over the Subject Matter (4th ed.), neither of which the NRA filed. The NRA also relies on a footnote in a district court opinion pre-dating *Agudas* in a case not involving a Rule 60(b) motion.

*See* NRA Br. at 44 (citing *Jakks Pac., Inc. v. Accasvek, LLC*, 270 F. Supp. 3d 191, 196 n.4 (D.D.C. 2017)).

The NRA's motion should be denied because it is a non-party and not entitled to relief under Rule 60.

## II. The Court's Judgment Is Not Void Under Rule 60(b)(4) Due to Mootness

Even if a non-party could file a Rule 60(b)(4) motion in this Circuit, the NRA's motion—which claims that this case became moot before judgment—would still fail. "A judgment is not void" under Rule 60(b)(4) "simply because it is or may have been erroneous," according to the movant. *Espinosa*, 559 U.S. at 270 (internal citations and quotation marks omitted); *see also id.* ("A motion under Rule 60(b)(4) is not a substitute for timely appeal."). Instead, Rule 60(b)(4) applies "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271. Where a Rule 60(b)(4) motion "assert[s] a judgment is void because of a jurisdictional defect," courts "generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction." *Id.* at 271 (internal quotation marks omitted). An arguable basis is lacking for jurisdiction not merely where there has been "an error in the exercise of jurisdiction," but where there is a "[t]otal want of jurisdiction" such that the district court engaged in a "clear usurpation of power." *Id.* (internal quotation marks omitted).

"The heavy burden of proving mootness falls with the party asserting a case is moot." *Maldonado v. D.C.*, 61 F.4th 1004, 1006 (D.C. Cir. 2023) (internal citations and quotation marks omitted). A case becomes moot "'[o]nly when it is *impossible* for a court to grant any effectual relief.'" *Id.* (quoting *Decker v. Northwest Env. Defense Ctr.*, 568 U.S. 597, 609 (2013)).

The NRA cannot meet these stringent standards. The NRA claims that this case became moot when, "unbeknownst to the Court," the FEC acted on the administrative complaints on February 23, 2021 by deadlocking on whether to find reason to believe. NRA Supp. Br. at 1, ECF No. 101-2 ("NRA Supp. Br."). But this Court was aware of those deadlocked votes and they did not impede the Court's ability to grant Giffords effectual relief. Indeed, the Court expressly (and correctly) found that they help demonstrate that the FEC failed to act expeditiously. *See supra* pp. 17-18 (citing Op. at 21, 26-27, 30-31). Each of the NRA's various theories for why those deadlocked votes mooted this case fail. At bottom, the NRA's claims amount to nothing more than an improper and untimely request that this Court reconsider the merits of its September 30, 2021 ruling.

### A.    The February 23, 2021 Deadlocks Did Not Dismiss Giffords's Complaints

First, the February 23, 2021 deadlocked reason-to-believe votes were not final agency action that could have mooted the case by dismissing or otherwise ending the FEC's consideration of Giffords's complaint, contrary to the NRA's claims. In its pre-*45Committee* brief, the NRA asserted that the February 23, 2021 deadlocked votes either dismissed or effectively dismissed Giffords's complaints such that the FEC's "work here was done." NRA Br. at 34; *see also id.* at 5-6, 17, 19, 34-36. That brief also relies heavily on three district court rulings the NRA claims endorsed its "deadlock dismissal" theory. *See* NRA Br. at 26-34 (citing the *45Committee*, *Heritage Action*, and *Iowa Values* district court opinions).

But the D.C. Circuit subsequently rejected the NRA's deadlock-dismissal theory. As that Court explained in *45Committee*, "a failed reason to believe vote" does not "occasion[] dismissal of the complaint" or otherwise terminate an enforcement matter. 118 F.4th at 382. Instead, "a

reason-to-believe vote resulting in a deadlock will give rise to a dismissal only if a majority of Commissioners separately votes to dismiss the complaint." *Id.*

That did not occur here on February 23, 2021—the Commission did not dismiss the matter until August 2022. The February 2021 votes therefore did not dismiss or effectively dismiss Giffords's complaints and, tellingly, the NRA's post-*45Committee* supplemental brief does not claim otherwise.

**B.** **The February 23, 2021 Deadlocks Did Not Constitute the Reason-to-Believe "Determination" Giffords's Suit Sought**

Second, the February 23, 2021 deadlocked reason-to-believe votes also did not constitute the delayed FEC action Giffords's lawsuit sought, as the NRA claims. *See* NRA Br. at 13.

As the NRA acknowledges, Giffords sought summary judgment on the ground that the FEC had failed not merely to hold a reason-to-believe vote, but "'to *determine* whether there is reason to believe [the respondents] violated FECA and should therefore be investigated.'" *Id.* at 12 (quoting Giffords MSJ at 14 (emphasis added)); *see also* Giffords MSJ at 7 (arguing that the FEC "has failed to act expeditiously to *determine* whether there is reason to believe the [respondents] violated FECA and should therefore be investigated" (emphasis added)). Reflecting Giffords's request, this Court's September 30, 2021 Memorandum Opinion and Order declaring the FEC's delay contrary to law directed the FEC "to conform . . . by *making the reason-to-believe determination* set forth in 52 U.S.C. 30109(a)(2)," not merely by holding a vote. Op. at 31 (emphasis added); *see also* Order at 1 (Sept. 30, 2021), ECF No. 71. (same).

Ignoring this, the NRA claims that with the February 23 deadlocks, "the FEC did exactly what Giffords claimed the FEC had not done," NRA Br. at 13, and that the Court's September 30, 2021 Order "amounted to 'nothing more than an order directing the FEC to do what it has already done,'" NRA Supp. Br. at 5 (quoting *All. For Democracy v. FEC*, 335 F. Supp. 2d 39, 43 (D.D.C.

2004)). This is simply not true—the NRA's claims confuse a successful reason-to-believe vote that *determines* whether there is reason to believe (which Gifford sought), with a *failed* reason-to-believe vote that deadlocked (which is all that occurred in February 2021). *See 45Committee*, 118 F.4th at 382. At no point in this case did an FEC majority determine whether there is reason to believe the respondents violated FECA, and the NRA cannot claim otherwise.

### C.   Even if the February 23, 2021 Deadlocks Were "Statutorily Significant Action," This Court Properly Considered That Action on the Merits in Holding the FEC Failed to Act Expeditiously

Third and finally, unable to show that the February 2021 deadlocks were final action or the action Giffords's sought, the NRA falls back on asserting that those deadlocks were "statutorily significant 'action' in the 'failure to act' context of FECA section 30109(a)(8)." NRA Supp. Br. at 1. But even assuming *arguendo* that is true, the NRA's argument fails to demonstrate mootness and simply amounts to a claim—improperly asserted under Rule 60(b)(4)—that the court decided the merits incorrectly.

As detailed above, under 52 U.S.C. § 30109(a)(8), "[w]here the issue before the Court is whether the agency's failure to act is contrary to law," the Court must determine not whether the FEC has taken any conceivable action, but instead, "whether the Commission has acted expeditiously." *Common Cause*, 489 F. Supp. at 744 (quotation marks omitted); *see also 45Committee*, 118 F.4th at 383 (reaffirming *Common Cause*). The *Common Cause* and *TRAC* factors (the latter of which also apply to APA 706(1) cases) probe the FEC's entire "handling of [the] administrative complaint" for whether the agency unreasonable delayed or conversely if there was "prompt and sustained agency attention to [the] complaint and thorough consideration of the issues it raised." *Rose*, 806 F.2d at 1091.

Under this totality-of-the-circumstances analysis, merely taking "some action" on an administrative complaint does not automatically mean that the FEC has acted expeditiously, *Campaign Legal Ctr. v. FEC*, 2021 WL 5178968, at *7, let alone moot the case. In fact, just as in this case, courts have repeatedly found that FEC delays were contrary to law notwithstanding significant FEC action—including *successful* votes to find reason to believe—where the agency otherwise failed to act expeditiously.

For example, in *DSCC v. FEC*, the court found the FEC's two-year failure to act was contrary to law even though the agency took "significant action" during that time and *successfully* voted to find reason to believe six months after the suit was filed. No. CIV.A. 95-0349 (JHG), 1996 WL 34301203, at *4, *9 (D.D.C. Apr. 17, 1996). Under the NRA's theory, that vote—which was far more significant than the mere deadlocked votes here—should have mooted the case. But instead, the court rejected the FEC's argument "that the complaint is moot based upon the fact[] that . . . the Commissioners have since made their [reason-to-believe] determination," because "accepting this argument would provide the FEC with *carte blanche* to avoid judicial review by implementing a start-stop administrative process based on whether a complaint was pending in district court." *Id.* at *9.

Similarly, in *Common Cause*, during the FEC's more than three-year consideration of the complaint, the agency found reason to believe and probable cause to believe that "10 state medical PACs" had violated the Act and conducted a full investigation. *See* 489 F.Supp. 738 at 740-41, 745. Again, under NRA's theory, these acts should have mooted the case. But instead, the court said it was "disturbed about the inordinate length of time consumed by this investigation," and concluded that the FEC's delay would be contrary to law unless the FEC either "executed conciliation agreements with those PACs or institute[d] a civil action for relief" within 30 days of

34

the court's decision. *Id.* at 744-45; *see also Citizens for Percy '84 v. FEC*, No. 84-2653, 1984 WL 6601, at *4 (D.D.C. Nov. 19, 1984) (finding FEC's delay contrary to law where the FEC voted to find reason to believe a violation occurred two months after the delay suit was filed but had yet to take final action).

Indeed, if any interim, non-final action could moot an FEC delay case, as the NRA contends, it would be impossible for a court *ever* to conclude on the merits that an FEC delay was reasonable, since any agency actions supporting that conclusion would strip the court of jurisdiction. But that is not how the D.C. Circuit has decided FEC delay cases. For instance, in *Rose*, the D.C. Circuit ruled in favor of the FEC in a failure to act case where "the Commission acted on the complaint immediately upon receiving it," and seven months later had voted to find reason to believe. 806 F.2d at 1091. But the ruling was not on mootness grounds, it was on the merits: the Court concluded that FEC had not "unjustifiabl[y] delay[ed]" during its 20-month handling of the matter after applying the *Common Cause* and *TRAC* factors. 806 F.2d at 1091 n.17.

The D.C. Circuit's recent decision in *45Committee* is similar and only further confirms that a deadlocked vote does not moot a delay case. 118 F.4th at 382. During the district court's consideration of the delay suit, the FEC deadlocked on reason-to-believe twice: The first deadlock occurred in June 2020, before the district court declared the FEC's delay contrary to law (just like the February 23, 2021 deadlocks in this case). *Id.* at 383. The FEC deadlocked again on whether to find reason to believe in "December 2021—within the thirty-day period after the contrary-to-law order issued." *Id.* at 385. Under the NRA's theory of mootness, the first deadlock should have mooted the case. But instead, the D.C. Circuit held that the plaintiff's delay suit failed on the merits because the FEC's *second* deadlock conformed with the instructions of the district court's "contrary to law" declaration. *See 45Committee*, 118 F.4th at 392. The D.C. Circuit could not have

held that the FEC conformed with the district court's November 8, 2021 "contrary to law" order if the district court lacked jurisdiction to issue that order in the first place due to the FEC's preceding reason-to-believe deadlock in June 2020.

In the face of the above authority, the NRA is unable to cite to even a single holding that non-final action mooted an FEC failure to act case.

Because the significance of any particular non-final FEC action is only relevant to the merits of whether FEC delay is unreasonable, this Court properly weighed the February 23, 2021 deadlocks, among many other contextual facts, in deciding that the FEC failed to act expeditiously on Giffords's complaints. *See supra* pp. 17-18. Clearly, the NRA would have weighed the significance of the February 2021 deadlocks differently. But even if the NRA's reading of the record were the better one, the NRA's Rule 60(b)(4) motion must still fail, because the NRA's disagreement with the Court's decision goes to the merits, not jurisdiction. *See Espinosa*, 559 U.S. at 270. Indeed, the NRA gives up the game when it (falsely) claims that three emails exchanged between Republican commissioners' attorneys between March and May 2021 showed "anything *but* inaction" and "strongly suggests that the FEC *did* move expeditiously," without also claiming that these supposed actions mooted the case. NRA Br. at 22-23 (emphasis in original).

Given that the NRA's arguments weigh on the merits, their motion "simply seek[s] to relitigate" this case, "which sounds more like a challenge under Rule 60(b)(1) than 60(b)(4)," and "[s]uch a challenge is both untimely, *see* Fed. R. Civ. P. 60(c)(1), and without merit." *Niskey v. Wolf*, No. CV 13-1269 (JDB), 2020 WL 8366838, at *3 (D.D.C. Dec. 10, 2020), *aff'd sub nom. Niskey v. Mayorkas*, No. 21-5026, 2021 WL 2525724 (D.C. Cir. June 2, 2021).[10]

---

[10]    Even if it were true that evidence was not available to NRA prior to the judgment, the Rules provide the proper mechanism—a motion under Rule 60(b)(2). Here too, such a motion would be time-barred and only available to a party or their legal representative. Fed. R. Civ. P. 60(c)(1), (b).

### D.    *45Committee* Does Not Help the NRA's Mootness Argument

As discussed above, *45Committee* undermines the NRA's mootness theories because the D.C. Circuit there ruled in favor of the FEC on the merits even though the FEC held a reason-to-believe deadlocked vote during the case. The NRA claims that *45Committee* nevertheless supports its mootness claim because the decision's "*reasoning . . .* supports the premise that this Court lacked subject matter jurisdiction" due to the February 23, 2021 deadlock. NRA Supp. Br. at 1-2 (emphasis added). But the NRA's attempt to extrapolate from *45Committee*'s reasoning falls short.

First, it is impossible to square the NRA's claim that *45Committee*'s reasoning means that reason-to-believe deadlocks moot delay cases with the fact that *45Committee* itself did not find that case was mooted by the June 2020 reason-to-believe deadlock that occurred there. See *supra* p. 35. In effect, the NRA is claiming that the D.C. Circuit decided *45Committee* incorrectly under its own reasoning.

Second, it is also impossible to square the NRA's view with the fact that *45Committee* reaffirmed the D.C. Circuit's previous holding in *Rose*, that courts must analyze FEC delay cases using the analysis described in *Common Cause*. *45Committee*, 118 F.4th at 391. As detailed above, both *Rose* and *Common Cause* undermine the NRA's claim that reason-to-believe deadlocks moot FEC delay cases: Both cases involved not just deadlocks but successful reason-to-believe determinations, and yet in neither case did the court conclude that those votes had mooted the plaintiff's case. *See supra* pp. 34-35.

Third, *45Committee* may have rejected a delay claim, but that ruling is distinguishable from this case because, as the NRA acknowledges, "[t]he dispositive issue there was whether the FEC's holding of a failed reason-to-believe vote *during the 30 day conformance period* was an 'act,' . . . such that the district court had correctly dismissed the citizen suit for failure to meet the . . . citizen

suit preconditions." NRA Supp. Br. at 3 (citing *45Committee*, 118 F.4th at 390) (emphasis added). That question was not presented in this case, where the February 2021 deadlock at issue occurred *before* the FEC was ordered to conform, where no one disputed that deadlock was just one of a few FEC "acts," and where there is no dispute that the FEC did not vote on whether to find reason-to-believe after remand and during the 30-day conformance window.

Finally, *45Committee* is distinguishable for the additional reason that the plaintiff there argued that the FEC had unreasonably delayed by not acting *at all*, unlike here, where Giffords sought to compel not just any act, but a reason-to-believe determination. As *45Committee* makes clear, what qualifies as conforming FEC action in an FEC delay case hinges on the particular action the suit and the court's contrary-to-law order demands. As the D.C. Circuit explained, holding a deadlocked reason-to-believe vote is conforming action "[i]n the case of a contrary-to-law suit *alleging that the Commission has failed to take any action at all* on a pending complaint." *45Committee*, 118 F.4th at 390 (emphasis added). The allegation that the FEC had failed to act "at all" in *45Committee* reflected the unique circumstance in that case that the FEC had failed to appear and put forth evidence of any action whatsoever. *Id.* at 384. Consistent with the basis for the plaintiff's suit, the district court's contrary-to-law order directed the Commission "'*to act* on the complaint within thirty days.'" *Id.* (emphasis added) (quoting *Campaign Legal Ctr. v. FEC*, 2021 WL 5178968, at *9.).

In contrast here, the FEC appeared in the case and disclosed in its own motion, supporting declarations, and discovery regarding what actions it had allegedly taken on Giffords's administrative complaints. See *supra* p. 15. After learning what acts the FEC had claimed to have taken, Giffords sought summary judgment on the ground that the FEC had failed not just to act at all, but "to *determine* whether there is reason to believe [the respondents] violated FECA and

should therefore be investigated." Giffords MSJ at 7. Indeed, after the FEC disclosed that it had

taken a deadlocked reason-to-believe vote on February 23, 2021, Giffords's objected in response

that a mere deadlocked vote meant that "an investigation of Plaintiff's administrative complaints

cannot begin," since that would require a successful reason-to-believe determination. Pl.'s Resp.

to Def.'s Notice of Subsequent Developments at 2, ECF No. 86.

Accordingly, this Court's order declaring the FEC's delay "contrary to law" reflects

Giffords's allegations, by directing the FEC to conform not merely by taking any act, but

specifically "by making the reason-to-believe determination set forth in 52 U.S.C. 30109(a)(2)."

ECF No. 88 at 31; *see also* Order at 1, ECF No. 71 (same). As NRA does not dispute, at no time

did the FEC make the reason-to-believe determination in this case.

## III.    There Was a Case and Controversy

The NRA's final gambit is to argue, based on speculation, that the FEC threw the match

by not raising an argument that the NRA itself waited almost three years to bring to this court.

NRA Br. at 36-42. Therefore, the NRA contends, there was no "case or controversy" over which

this Court had jurisdiction. *Id.* This argument reflects a profound and bizarre misreading of the law

governing this Court's jurisdiction as well as the record in this case.

The federal judicial power extends "to all Cases, in Law and Equity, arising under this

Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their

Authority."  U.S. Const. art. III, § 2. "The purpose of the case-or-controversy requirement is to

'limit the business of federal courts to questions presented in an adversary context and in a form

historically viewed as capable of resolution through the judicial process.'" *GTE Sylvania, Inc. v.*

*Consumers Union of U.S., Inc.*, 445 U.S. 375, 382 (1980) (quoting *Flast v. Cohen*, 392 U.S. 83,

95 (1968)). However, "[w]henever the claim of a party under the Constitution, laws, or treaties of

the United States takes such a form that the judicial power is capable of acting upon it, then it has become a case. The term implies the existence of present or possible adverse parties, whose contentions are submitted to the court for adjudication." *Muskrat v. United States*, 219 U.S. 346, 357 (1911).

A controversy between such "present or possible adverse parties" may exist even when the parties agree on legal principles and arguments. *See, e.g.*, *U.S. v. Windsor*, 570 U.S. 744, 757 (2013); *see also NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 401 (4th Cir. 2022) ("According to *Windsor*, the push and pull of opposing legal argument is not the constitutional heart of adverseness."). Parties need not maintain "adverse arguments" so long as they maintain "adverse *interests.*" *NLRB*, 43 F.4th at 401 (emphasis in original). Federal courts are only deprived of jurisdiction in the rare instance in which "litigants desire precisely the same result." *Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47, 48 (1971) (per curiam).

## A.    Giffords and the FEC Were Adverse

Giffords and the FEC were adverse throughout this litigation. Giffords sued the FEC to obtain a declaration that the Commission's failure to make determinations in their administrative complaints was contrary to law under 52 U.S.C. § 30109(a)(8)(A) and to obtain an order requiring the Commission to conform with such a declaration. Compl. at 20, ECF No. 1; *see also supra* pp. 14-16. Giffords did not merely seek another deadlocked reason-to-believe vote, but an order requiring the Commission to make determinations—something which the Commission had consistently failed to do. *See supra* pp. 15-16. FEC appeared, ECF Nos. 12-24, and vigorously contested that outcome through final judgment. The FEC and Giffords thus plainly had adverse interests and sought diametrically opposed outcomes through the normal process of adversarial

litigation. *See Lord v. Veazie*, 49 U.S. 251, 255 (1850) ("there must be an actual controversy, and adverse interests.").

In this litigation, the FEC argued (1) that Giffords' complaint did not state a claim upon which relief could be granted and (2) that the Commission's handling of the administrative complaint proceeded at a reasonable pace and was therefore not contrary to law. FEC Mot. to Dismiss or, in the alternative, for Summ. J., ECF No. 41-1. The FEC included numerous arguments in support of the Commission's position that the relief Giffords sought, a declaration under 52 U.S.C. § 30109(a)(8) that the Commission had acted contrary to law under the relevant *Common Cause* and *TRAC* factors, *45Committee*, 118 F.4th at 383, and conformance order requiring the FEC to make determinations, were not warranted. *Id.* Giffords and the FEC both kept the Court informed of material developments while their cross-motions were pending. The FEC informed the Court of the steps it had taken in 2021 on the MURs at issue, including the extent of the Commission's deliberations, as well as the votes the Commission took on February 23, 2021. ECF Nos. 84, 85. In addition to contesting the merits of the case, the FEC also contested Giffords's efforts to obtain discovery, ECF No. 31, and during the limited discovery the Court permitted, raised frequent objections. *See generally* Kitcher Dep. Tr. (excerpted), ECF No. 44-14; Peterson Dep. Tr. (excerpted), ECF No. 44-15.

Throughout the case, Giffords pursued its interest in obtaining a declaration and judgment that the FEC acted contrary to law, thereby enabling them to file a citizen suit. The FEC consistently sought to avoid this outcome. This is more than sufficient adversity for purposes of Article III. *Cf. Moore*, 402 U.S. at 48.

**B. This Court Is Not Deprived of Subject Matter Jurisdiction Simply Because a Party Does Not Raise a Specific Argument.**

Although the FEC and Giffords plainly had adverse interests and sought opposing outcomes in this case, the NRA argues that the FEC failed to make an argument the NRA would have preferred, failed to inform the court of various events between February and September 2021, and that such failures are sufficient to remove jurisdiction. NRA Br. at 36. This argument is without purchase in the law or the facts of this case. First, there is no requirement under Article III that litigants raise or dispute specific issues. Second, even if not raising a particular argument could show a lack of adversity, the argument the NRA wanted the FEC to make lacks merit. Third, to the extent that the NRA wanted to raise such an argument, it could have done so itself by intervening.

*1. Article III does not require a party to raise or dispute particular arguments or facts*

Even accepting the NRA's factual premises, this Court is not deprived of jurisdiction merely because a party did not raise or dispute specific arguments or facts. *See* NRA Br. at 37 ("the parties were functionally aligned as to the dispositive legal question."). To the contrary, in *Windsor*, the Supreme Court held the parties were adverse even when they agreed on the fundamental question in the case—that section 3 of the Defense of Marriage Act was unconstitutional. 570 U.S. at 756-57. The Court explained that because the government was nonetheless withholding the relevant tax refund and would be subject to an order and judgment ordering payment, it retained a "stake sufficient to support Article III jurisdiction." *Id.* at 757. While the NRA characterizes *Windsor* as "relaxing" Article III's adversity requirement, that opinion makes clear that it is consistent with prior rulings, particularly *INS v. Chadha*, 462 U.S. 919 (1983). In *Chadha* the appellee-petitioner similarly challenged the constitutionality of a section of the Immigration and Nationality Act. *Id.* at 924. The INS ultimately agreed that the

relevant law was unconstitutional. The Supreme Court held there was a case or controversy under Article III, again noting that the agency, regardless of the legal position it took, was subject to an order that prevented it from deporting Chadha. *Id.* at 939-940.

Here, of course, the FEC fervently *disagreed* with Giffords' legal arguments. *See* ECF Nos. 41-1, 52-1. *Windsor* and *Chadha*, however, dispel any notion that Article III requires litigants to raise or maintain any specific arguments, even where they are available and material.[11],[12] The NRA's reliance on *Lord v. Veazie* is misplaced. In that case the litigants' *interests* were precisely aligned—they both sought the same opinion and judgment—and therefore there was no adversity. *Lord*, 49 U.S. at 254; *see also Moore*, 402 U.S. at 48.

The NRA's novel theory that a party may unilaterally remove the Court's subject matter jurisdiction by opting not to raise a legal position or present certain facts runs headlong into well-established practices in federal courts. Under Rule 55, courts are authorized to enter judgment when a party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Under the NRA's theory, however, federal courts could never enter this type of default judgment because, by operation of the defendant's failure to appear and present specific legal arguments or present certain facts, the matter would cease to be a "case" or "controversy," and the court would lose jurisdiction. This would both nullify Rule 55 and be contrary to well-established practice. *See Int'l Painters & Allied Trades Indus. Pension Fund v.*

---

[11]     In each case, another party intervened to defend the constitutionality of the relevant statute. *Windsor*, 570 U.S. at 754; *Chadha*, 432 U.S. at 930 n.5.

[12]     Both *Windsor* and *Chadha* also addressed prudential concerns arising from the parties' agreement over the central legal question in those cases. 570 U.S. at 759-61; 462 U.S. at 940. Even if the NRA was correct that the FEC's defense was deficient, this type of prudential argument would be the proper objection. *See Windsor*, 570 U.S. at 760 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962). Since, however, such an objection does not concern this Court's subject matter jurisdiction, it is not a proper argument for a Rule 60(b)(4) motion. *Espinosa*, 559 U.S. at 271.

*D & S Custom Design, LLC,* No. CIV.A. 06-0028 (RJL), 2006 WL 2793181, at *1 (D.D.C. Sept. 28, 2006) (citing *Keegel v. Key West & Caribbean Trading Co*., 627 F.2d 372, 375 (D.C. Cir. 1980)) ("A court is empowered to enter a default judgment against a defendant who fails to defend its case.")

 This issue arises in delay cases because FECA does not allow the agency's Office of General Counsel automatically to appear in court to defend the FEC but instead requires at least four commissioners to authorize the defense of a suit under section 30108(a)(8)(A). See 52 U.S.C. §§ 30106(c), 30107(a)(6). The Commission does not always appear and make such a defense. *See, e.g.* Order, *Campaign Legal Ctr. v. FEC*, No. 20-CV-1778 (RCL) (D.D.C. Oct. 14, 2020), ECF No. 14; *Campaign Legal Ctr. v. FEC*, 2021 WL 5178968; Order, *Campaign Legal Ctr. v. FEC*, No. 21-CV-406 (TJK), (D.D.C. March 25, 2022), ECF No. 16. In these cases, although FEC was in default, each court had an "affirmative obligation" to ensure it had subject matter jurisdiction. *Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71, 79 (D.D.C. 2017). And each court entered judgment, although the FEC had not appeared *at all* and had made *no arguments* that their failures to act were not contrary to law. Presumably, the NRA would contend that each court erred by not immediately dismissing these cases for want of subject matter jurisdiction, and that same concern would arise whenever a party waived or forfeited an argument. *But see Fashion Valley Mall, LLC v. NLRB*, 524 F.3d 1378, 1380 (D.C. Cir. 2008); *see also Seattle Opera v. NLRB,* 292 F.3d 757, 764 (D.C. Cir. 2002). All of this underlines the absurdity of the NRA's position. Litigants raise, or decline to raise, arguments for any number of reasons. The proposition that this could remove jurisdiction is completely unsupported.

### 2. *The argument the NRA said the FEC should have made lacks merit*

Even if the NRA's misreading of the law were correct, the FEC did not forego any "dispositive" or "material" argument, much less fail to defend itself so profoundly that this Court's jurisdiction was without an "arguable basis." The NRA criticizes the FEC for not arguing that "deadlocked reason-to-believe votes were acts under section 30109(a)(8)" and that Giffords could not be entitled to further relief. NRA Br. at 37-38. As described above, *supra* Section II.B., the mere existence of a deadlocked RTB vote does not resolve the actual question that was before the Court—whether the Commission acted expeditiously under the *Common Cause/TRAC* analysis. *45Committee*, 118 F.4th at 383. The Commission cannot be faulted for not raising a losing argument. The Commission did, however, present considerable information about the administrative steps it had taken on Giffords' complaints, including informing the Court of the February 2021 votes, but its arguments accurately reflected that no single action means the FEC acted expeditiously as required by law. *Rose*, 806 F.2d at 1091. Given that courts have long held that merely taking "some action" on a complaint is not sufficient, it is hardly "staggering" that the Commission did not file continuous updates for each email the commissioners' personal counsel sent *after* the parties filed their cross motions. *See Campaign Legal Ctr. v. FEC*, 2021 WL 5178968, at *9 (citing *DSCC* 1996 WL 34301203, at *9)); *see also* FEC Resp. to NRA Mot. at 5. As the FEC itself explained, agency counsel representing the Commission in this litigation provided "timely updates by agency counsel of all information that was relevant to the administrative process set forth in 52 U.S.C. § 30109(a) which is what was before the Court, *see*

*id.* § 30109(a)(8)(A)." FEC Resp. to NRA Mot. at 1; This Court considered the Commission's arguments at length in its memorandum opinion. Op.

The FEC's arguments were all the more appropriate since, as the NRA concedes, none of the district court cases on which it relies were issued until years after this Court's 2021 judgment. NRA Br. at 37 (citing *45Committee, Inc.*, 666 F. Supp. 3d at 1 (issued in 2023), *Heritage Action for Am.*, 682 F. Supp. 3d at 62 (issued in 2023); *Iowa Values*, 691 F. Supp. 3d at 94 (issued in 2023)). As the FEC points out, even in 2023, courts in this District remained divided as to whether a deadlocked reason-to-believe vote was the equivalent of a dismissal for purposes of judicial review under 52 U.S.C. § 30109(a)(8)(C). FEC Resp. to NRA Mot. at 6 n.3. Critical portions of the reasoning in even the cases the NRA cherry-picked have been superseded by the D.C. Circuit's opinion in *45Committee*, but the NRA nonetheless maintains that the FEC's omission of their preferred argument—which no court had yet endorsed—amounts to collusive litigation such that this Court lacked jurisdiction. Like the balance of the NRA's arguments, this rests on speculation that a "bloc" of Commissioners hatched a "scheme" to bring about Giffords's citizen suit. NRA Br. at 42. But three Commissioners cannot cause the agency to take any position or action, and deadlock that may occur is far from being the result of a nefarious scheme but, instead, inherent in the nature of the agency. *See supra* pp. 4, 6-8. More importantly, it is not relevant to whether there was sufficient adversity to maintain jurisdiction. Even if all six Commissioners aligned with Giffords' position on the merits, the FEC had not given Giffords the relief it requested—a determination of its complaints on the merits. This alone would be sufficient for Article III adversity. *See Windsor*, 570 U.S. at 757.

3. *To the extent the NRA wanted to raise other arguments, it could have intervened*

To the extent that the FEC did not make arguments or take positions that the NRA, three years later, believes to be important, the appropriate remedy for the NRA would have been timely intervention before judgment, not the NRA's current, belated effort to vacate an existing judgment. *See, e.g.*, *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (allowing respondent to intervene in challenge to FEC's dismissal where the FEC and respondent "disagree about" what arguments to make, explaining that "[the respondent] should not need to rely on a doubtful friend to represent its interests, when it can represent itself"). As is true with the procedural deficiency in the NRA's motion, see *supra* Section I, this Court should not permit a non-party to sit on their hands through the pendency of the case, only to show up years later and cry foul. *Espinosa*, 559 U.S. at 270 ("a motion under Rule 60(b)(4) is not a substitute for a timely appeal") (citations and internal quotation marks omitted).

This Court maintained subject matter jurisdiction throughout the pendency of the litigation. The NRA's arguments to the contrary are without merit and the motion should be denied.

## CONCLUSION

For the reasons stated herein, Plaintiff Giffords respectfully requests this Court deny Non-Parties the National Rifle Association of American and National Rifle Association Political Victory Fund's Motion for Relief from Orders and Judgment.

Dated: January 10, 2025

Respectfully submitted,

/s/ *Kevin P. Hancock*

J. Adam Skaggs*
David Pucino*
GIFFORDS LAW CENTER TO PREVENT
GUN VIOLENCE
244 Madison Ave., Ste. 147
New York, NY 10016
(917) 680-3473
askaggs@giffords.org
dpucino@giffords.org

Adav Noti
Kevin P. Hancock
Daniel Lenz**
CAMPAIGN LEGAL CENTER ACTION
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
anoti@campaignlegal.org
khancock@campaignlegal.org
dlenz@campaignlegal.org

*Admitted *Pro Hac Vice*
***Pro Hac Vice* application forthcoming

*Counsel for Plaintiff Giffords*