**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GIFFORDS,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>Defendant. | Civ. Action No. 19-1192 (EGS) |

**MEMORANDUM OPINION and ORDER**

## I. Introduction

In April 2019, Plaintiff Giffords—a nonpartisan, nonprofit 501(c)(4) organization headquartered in Washington, D.C.—brought this action against Defendant the Federal Election Commission ("FEC" or the "Commission") alleging that the Commission failed to act upon four administrative complaints filed with the agency under the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30109. *See* Compl., ECF No. 1 ¶¶ 1–5.[1] The relevant administrative complaints alleged that two National Rifle Association of America ("NRA") entities, the NRA Political Victory Fund ("NRA-PVF") and the NRA Institute for Legislative Action ("NRA-ILA"), made unlawful contributions to President Trump's 2016

[1] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF page number, not the page number of the filed document.

presidential campaign and to several Senate campaigns. *See* Compl., ECF No. 1 ¶ 10.

On September 30, 2021, the Court granted summary judgment in favor of Giffords, ordering the FEC to make a reason-to-believe determination within thirty days. *See* Mem. Op., ECF No. 88. When the Commission failed to conform to the Court's Order, the Court authorized Giffords to file a civil action against the administrative respondents pursuant to 52 U.S.C. § 30109(a)(8)(C), *see* Order, ECF No. 75; and entered final judgment in favor of Giffords, *see* Final Judgment, ECF No. 80.

Pending before the Court is a motion by the NRA and NRA-PVF (collectively, the "NRA")—non-parties to this lawsuit—seeking relief from the Court's Orders and Judgment pursuant to Federal Rule of Civil Procedure 60(b)(4). *See* Non-Parties' Mot. for Relief from Orders & J., ECF No. 90; Statement of Points & Authorities by the NRA in Support of Mot. for Relief from Orders and J. ("NRA Mot."), ECF No. 90-1. Upon consideration of the motion, the responses, the reply thereto, the applicable law, and the entire record, the Court **DENIES** the NRA's Motion.[2]

---

[2] Also pending before the Court is Giffords' Motion for Leave to File a Surreply "to address the D.C. Circuit's recent order in *Campaign Legal Center v. Heritage Action for America*, No. 23-7107, 2025 WL 222305 (D.C. Cir. Jan. 15, 2025). *See* Pl.'s Mot. for Leave to File Surreply, ECF No. 107; NRA's Opp'n to Pl.'s Mot. for Leave to File Surreply, ECF No. 110. Because the Court concludes that the NRA lacks standing to bring a Rule 60(b) motion and the D.C. Circuit's recent order would go to the

## II. Background

The Court's previous Memorandum Opinion sets forth the statutory framework and enforcement procedures of FECA. *See* Mem. Op., ECF No. 88 at 2–5. To provide context for the NRA's motion, the Court briefly restates the process following the filing of an administrative complaint with the FEC before stating the facts of the underlying lawsuit.

### A. FECA's Enforcement Procedures

After the respondents named in the administrative complaint are notified and given an opportunity to respond to the allegations in the administrative complaint, the FEC's Office of General Counsel evaluates the submissions and determines whether the matter should be referred to the agency's Alternative Dispute Resolution Office, Administrative Fine Program, or Enforcement Division, or if it should be recommended for dismissal. *See* 52 U.S.C. § 30109(a)(1)-(2). When a matter is assigned to the Enforcement Division, as Giffords' complaints were, the assigned staff attorneys prepare and send a report to the Commission recommending whether it should find "reason to believe" that FECA was violated or whether it should dismiss the matter. *See* 11 C.F.R. § 111.7. Then, the FEC's Commissioners vote on whether the administrative complaint provides "reason to

questions of jurisdiction, Giffords' Motion for Leave to File a Surreply is **DENIED**.

believe" a violation of the FECA has occurred. 52 U.S.C. § 30109(a)(1)-(2).

The voting Commissioners include "6 members appointed by the President, by and with the advice and consent of the Senate." *Id.* § 30106(a)(1). However, "[n]o more than 3 members of the Commission appointed under this paragraph may be affiliated with the same political party." *Id.* "All decisions of the Commission . . . shall be made by a majority vote of the members of the Commission." *Id.* § 30106(c). Given the makeup of the Commission, splits in votes, known as "deadlocks," occur more frequently than other agencies. *See Pub. Citizen, Inc. v. FERC*, 839 F.3d 1165, 1171 (D.C. Cir. 2016). "[The] FEC will regularly deadlock as part of its *modus operandi*." *Id.*

To begin an investigation, four Commissioners must vote in the affirmative, finding reason to believe "that a person has committed, or is about to commit, a violation of [FECA]." 52 U.S.C. § 30109(a)(2). In the alternative, the Commission can dismiss a complaint at any time in two ways: (1) "four or more Commissioners can vote to find that there is 'no reason to believe' a violation has occurred," *Campaign Legal Ctr. v. 45Committee, Inc.*, 118 F.4th 378, 382 (D.C. Cir. 2024); or (2) "a majority of sitting Commissioners can vote to 'dismiss' the matter, *id.* "[A] reason-to-believe vote resulting in a deadlock will give rise to a dismissal only if a majority of

Commissioners separately vote[] to dismiss the complaint[.]" *Id.* If the Commission finds no reason to believe or otherwise terminates its proceedings, the Commissioners who voted against taking that action issue a statement explaining their votes. *Common Cause v. FEC*, 842 F.2d 436, 449 (D.C. Cir. 1988).[3] The FEC's proceedings remain confidential until the proceedings are terminated. 11 C.F.R. § 111.20-21.

If the Commission determines that no violation occurred or dismisses the administrative complaint for some other reason, the complainant has an opportunity to seek judicial review of that determination. 52 U.S.C. § 30109(a)(8)(A). A complainant may also seek judicial review should the Commission "fail to act" on a complaint within 120 days. *Id.* If the court finds that the Commission's dismissal or failure to act was "contrary to law," the court can "direct the Commission to conform with [that] declaration within 30 days." *Id.* § 30109(a)(8)(c).

[3] Assuming a reason-to-believe vote receives the required four votes, and an investigation takes place, the FEC's General Counsel is then authorized to recommend that the Commission vote on whether there is "probable cause to believe" that FECA has been violated. 52 U.S. C. § 30109(a)(3). The Court detailed the process of finding probable cause to believe and the subsequent actions the Commission must take in its prior Memorandum Opinion. *See* Mem. Op., ECF No. 88 at 3-5. Since the pending motion concerns the failed reason-to-believe votes, the Court does not restate the additional steps in the FEC's review process here.

**B. Factual Background**

Throughout the second half of 2018, Giffords and the Campaign Legal Center ("CLC") filed four administrative complaints with the FEC against the NRA.[4] *See* Compl., ECF No. 1 ¶¶ 56, 60-63. On April 24, 2019, after the FEC failed to act on Giffords' complaints for over 120 days, Giffords filed this suit against the Commission, alleging that it failed to act on the complaints under 52 U.S.C. § 30109(a)(8)(A). *See id.* ¶ 1. In December 2019, the parties filed cross motions for summary judgment. *See* FEC's Mot. to Dismiss or in the Alternative for Summ. J., ECF No. 41; Pl.'s Cross-Mot. for Summ. J., ECF No. 48.

While the parties' cross motions for summary judgment were pending, the Commission deliberated on the relevant MURs. *See* FEC's Notice of Subsequent Developments ("FEC Notice"), ECF No. 84; FEC's Second Notice of Subsequent Developments ("FEC Second Notice"), ECF No. 85. On February 9, 2021, the Commission considered the MURs, and, at the conclusion of the discussion, a Commissioner moved to find that there was no reason to believe that a violation occurred in two of the MURs, 7427 and 7497. *See* FEC Notice, ECF No. 84. The vote failed, resulting in a 2-3 deadlock with one recusal. *Id.* At the following session, on

[4] The relevant Matter Under Review ("MUR") numbers include 7427, 7497, 7524, and 7553. *See* Compl., ECF No. 1 ¶¶ 56, 60-63.

February 23, 2021, the FEC held a series of votes related to the four administrative matters at issue. *See* FEC Second Notice, ECF No. 85 at 1-2. By a vote of 3-2, the FEC deadlocked, failing to find reason to believe that a violation of law occurred in the four MURs at issue. *Id.* at 1. A second vote to find no reason to believe violations occurred in MURs 7524 and 7553 also deadlocked with a vote of 2-3 with one recusal. *Id.* at 1-2. Finally, by a vote of 2-3, the FEC rejected a motion to close the enforcement matters, which would have dismissed Gifford's administrative complaints. *Id.*

On September 30, 2021, the Court granted Giffords' Motion for Summary Judgment. *See* Mem. Op., ECF No. 88. The Court concluded that the FEC unreasonably delayed its consideration of Giffords' administrative complaints. *Id.* at 13. In reaching its conclusion, the Court found that the Commission's actions up until February 23, 2021, when the FEC deadlocked on the relevant MURs, were substantially justified. *Id.* at 30. However, given that the Commissioners had "already conducted one vote on all MURs at issue and two votes on two of the MURs—thereby demonstrating that the Commissioners [had] carefully considered and underst[ood] the facts, legal issues, and interests at stake—the Court [could not] find that the FEC's failure to take any action on the matters [during the 7 months following the February 2021 votes] [was] reasonable." *Id.* at 30-31.

Accordingly, the Court ordered the FEC to make a reason-to-believe determination as set forth in 52 U.S.C. § 30109(a)(2) within 30 days. *Id.* at 31.

When the FEC failed to conform within the 30-day period, the Court authorized Giffords to bring a civil action against the NRA, the administrative respondents. Order, ECF No. 75. On November 2, 2021, Giffords filed a citizen suit against the NRA, "mirror[ing] the legal theories set out in the complaints that Giffords had filed with the FEC." NRA Mot., ECF No. 90-1 at 23. Thereafter, the NRA moved for leave to intervene in this suit for the limited purpose of unsealing judicial records. NRA Mot. to Intervene for Limited Purpose & Mem. in Support, ECF No. 77. On December 13, 2021, the Court granted the NRA's motion to intervene and ordered the records to be unsealed. Minute Order (Dec. 13, 2021).

On August 29, 2022, the FEC voted to close the file, dismissing Giffords' administrative complaints, *see* Giffords' Opp'n, ECF No. 104 at 30 (citing FEC Certification MURs 7427, 7497, 7524 & 7553 (Aug. 31, 2022), https://perma.cc/275U-27HA); and on September 30, 2022, the FEC disclosed the matters' administrative files. *Id.*

Now, more than two years after this Court entered Final Judgment in favor of Plaintiff and after the FEC closed the administrative files, non-party NRA moves to vacate the Court's

September 30, 2021 Order, ECF No. 71; November 1, 2021 Order, ECF No. 75; and its Final Judgment, ECF Nos. 80, 81, pursuant to Rule 60(b)(4). *See* NRA Mot., ECF No. 90-1 at 8. The FEC filed a response to the NRA's motion on February 9, 2024. *See* FEC Response to Non-Party Mot. for Relief from J. ("FEC Response"), ECF No. 94.[5] On December 9, 2024, non-party NRA filed a supplemental statement of reasons, *see* NRA's Supplemental Statement of Points & Authorities in Support of its Mot. for Relief from Orders and J. ("NRA Supp. Brief"), ECF No. 102; to which the FEC responded on January 8, 2025, *see* FEC Response to Non-Parties' Supp. Statement ("FEC Supp. Response"), ECF No. 103. Giffords filed its opposition to the NRA's motion on January 10, 2025, *see* Giffords' Opp. to NRA's Mot. for Relief from Orders and J. Under Rule 60(b)(4) ("Giffords Opp."), ECF No. 104. The NRA filed it's Reply on January 17, 2025. *See* NRA Reply in Support of Mot. for Relief from Orders and J. ("NRA Reply"), ECF No. 106. The motion is now ripe for the Court's adjudication.

[5] The FEC's response "takes no position on the merits of [the NRA's] motion, but file[d] [its] response to controvert any insinuation of impropriety by agency counsel and to highlight certain relevant information in the record." FEC Response, ECF No. 94 at 1.

**III. Legal Standard**

Federal Rule of Civil Procedure 60(b) allows a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" if the judgment is void. Fed. R. Civ. Proc. 60(b)(4). "Rule 60(b)(4) applies 'only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or a violation of due process that deprives a party of notice or the opportunity to be heard.'" *United States v. Phillip Morris USA Inc.*, 840 F.3d 844, 850 (D.C. Cir. 2016) (quoting *United Student Aird Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)).

**IV. Analysis**

The NRA asserts that the Court should vacate its September 30, 2021 and November 1, 2021 Orders as well as its Final Judgment pursuant to Rule 60(b)(4) for two reasons. First, the NRA argues that this case was moot when the Court entered the Orders and Final Judgment, thereby rendering each void for lack of subject matter jurisdiction. *See* NRA Mot., ECF No. 90-1 at 32–43. Second, also asserting that the Court did not have subject matter jurisdiction, the NRA contends that this case lacked a sufficient adverse interest as required by Article III. *Id.* at 43–49.

### A. As a Non-Party, the NRA Lacks Standing to Bring a Rule 60(b) Motion

Before the Court addresses the merits of its motion, the Court must determine whether non-party NRA has standing to seek relief under Rule 60(b). The NRA argues that it is a proper movant under Rule 60(b) because it "is 'strongly affected' by the Orders and Judgment . . . [which] were entered as a direct result of the FEC's deception." NRA Mot., ECF No. 90-1 at 50 (citing *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006)). Emphasizing the plain text of Rule 60(b), Giffords asserts that relief under Rule 60(b) is only available to a party or its legal representatives, neither of which the NRA is here. *See* Giffords Opp'n, ECF No. 104 at 33–34. Moreover, even if this Circuit recognizes the *Grace* exception for "strongly affected" non-parties, Giffords argues that it would not apply here. *Id.* at 34–35.

The Court concludes that the NRA lacks standing to bring a Rule 60(b) motion in this case. The text of Rule 60(b) explicitly limits relief to parties and their legal representatives. Fed. R. Civ. Proc. 60(b); *see Ratner v. Bakery & Confectionery Workers Int'l Union of Am.*, 394 F.2d 780, 782 (D.C. Cir. 1968) ("Rule 60(b) by its own terms is available only to 'a party or is legal representative' seeking relief from a final judgment."). The NRA admits that it is not a party to this

lawsuit and does not contend that it is standing in as one of the parties' legal representatives. *See generally* NRA Mot., ECF No. 90-1 at 50. Rather, the NRA urges the Court to apply the Court of Appeals for the Second Circuit's ("Second Circuit") *Grace* exception, arguing that it may invoke Rule 60(b) because the Court's Orders and Judgment permitted Giffords to file a citizen suit against the NRA and were a result of the "FEC's deception." *Id.*

In *Grace*, the Second Circuit found that non-party Rule 60(b) movants were "sufficiently connected and identified with" the underlying stipulated settlement where "a judgment-proof, pro se defendant . . . inten[ded] at the time of the settlement to collect from [the movant]." *Grace*, 443 F.3d at 188. The court explicitly stated that its decision was limited to the facts of the case at hand. *Id.* Other circuits have allowed non-parties to bring Rule 60(b) motions on similar facts. *See, e.g.*, *Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992) (permitting nonparty employees affected by an EEOC settlement to contest the terms of the agreement); *Southerland v. Irons*, 628 F.2d 978 (6th Cir. 1980) (allowing a non-party's Rule 60(b) motion where the non-party alerted the court to fraud by an attorney).

While this Circuit has not explicitly rejected the *Grace* exception, it declined to apply it in *Agudas Casidei Chabad of U.S. v. Russian Fed'n*, 19 F.4th 472 (*Chabad II*) (D.C. Cir.

2021), *aff'g*, No. 05-cv-1548, 2020 WL 13611456 (*Chabad I*) (D.D.C. Nov. 6, 2020). In *Chabad II*, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") concluded that the *Grace* exception did not apply to a non-party movant where there was no fraud or deception on the court, and the non-party did not participate in the underlying litigation. *Id.* at 477. Accordingly, the non-party could not invoke Rule 60(b) to void the district court's judgment. *Id.*

Even assuming the D.C. Circuit would recognize the *Grace* exception in similar situations,[6] the Court concludes that it would not apply here. The NRA argues that the Court's Orders and Judgment were entered as a direct result of the FEC's deception as to the status of the relevant MURs, calling this litigation "collusive." NRA Mot., ECF No. 90-1 at 50. However, the record indicates that the FEC kept the Court, and the Plaintiff, informed on the voting and status of the MURs at issue at all relevant times. *See* FEC Response, ECF No. 94 at 5. There is no evidence establishing that Giffords and the FEC engaged in "collusive litigation," giving rise to a finding of fraud on the Court. Moreover, unlike the non-party movant in *Grace,* where the court's judgment effectively bound the movant to the underlying

[6] Notably, the D.C. Circuit has previously rejected supplementing rules containing precise terms with *ad hoc* exceptions not in the text. *See McKeever v. Barr*, 920 F.3d 842, 847 (D.C. Cir. 2019).

settlement agreement, the Court's Orders and Judgment in this case have no effect on the NRA other than the end-result of it having to defend itself in a citizen suit.

Finally, the NRA argues that its status as a non-party is irrelevant because the Court has an independent obligation to address challenges to subject matter jurisdiction. *See* NRA Mot., ECF No. 90-1 at 51 (citing *Jackks Pacific, Inc. v. Accavek, LLC*, 270 F. Supp. 3d 191, 196 n. 4 (D.D.C. 2017)). In response, Giffords argues that the D.C. Circuit's decision in *Agudas* made it clear that it is irrelevant whether the non-party movant is raising jurisdictional claims where the non-party lacks standing to bring a Rule 60(b) motion. *See* Giffords Opp'n, ECF No. 104 at 36–37. The Court agrees.

While the district court in *Chabad I* addressed the non-party's jurisdictional arguments even after concluding that it could not seek vacatur under Rule 60(b), 2020 WL 13611456, at *12–15; the D.C. Circuit ended its analysis after concluding that the non-party was not a proper Rule 60(b) movant, *Chabad II*, 19 F.4th at 477 (dismissing appeal for lack of jurisdiction). The D.C. Circuit doubled down when confronted with another appeal in the same case. *See Agudas Chasidei Chabad of U.S. v. Russian Federation*, 110 F.4th 242, 247 (*Chabad III*) (D.C. Cir. 2024). The Court reiterated that in *Chabad II* it held that "regardless of the district court's jurisdiction over [the

Defendant], [the non-party] could not invoke Rule 60(b) to void the judgments[.]” *Id.* (emphasizing that a non-party’s inability to attack a judgment through a Rule 60(b) motion does not foreclose it from ever raising jurisdictional arguments if it has the proper vehicle).

Because the NRA lacks standing to bring a Rule 60(b) motion as a non-party, the Court denies its motion for lack of jurisdiction.

## V. Conclusion and Order

For the reasons set forth above, it is hereby

**ORDERED** that non-party NRA’s Motion for Relief from Orders and Judgment, ECF No. 90, is **DENIED;** and it is further

**ORDERED** that Plaintiff’s Motion for Leave to File Surreply, ECF No. 107, is **DENIED.**

**SO ORDERED.**

**Signed: Emmet G. Sullivan**
**United States District Judge**
**April 22, 2025**